**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WAYNE WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 CV 1893 |
| | ) | |
| v. | ) | Honorable Andrea R. Wood |
| | ) | Magistrate Judge Maria Valdez |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| TYRONE HOOD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 CV 1970 |
| | ) | |
| v. | ) | Honorable Andrea R. Wood |
| | ) | Magistrate Judge Maria Valdez |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S RESPONSE TO PLAINTIFF TYRONE**
**HOOD'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**
**RESPONSIVE TO REQUEST FOR PRODUCTION NO. 25**

Defendant City of Chicago ("City"), by its attorneys, The Sotos Law Firm, P.C., responds to Plaintiff Tyrone Hood's motion to compel production of documents responsive to plaintiff's request for production No. 25 and states:

Plaintiff's motion to compel is premature and unnecessary in light of the parties' September 20, 2018 agreement to limit the universe of complaint register (CR) files to be produced, and the City's continued willingness to negotiate with Plaintiff on the scope of the files to be produced. Plaintiff's accusation that the City is changing its position and unilaterally prolonging the issue regarding *Monell* discovery related to the requested CR files is inaccurate and unwarranted, as a brief history of the production illuminates. Plaintiff's motion should be

denied, and the parties should continue their negotiations until either an agreement or an impasse is reached.

To be clear, the CR files at issue in Plaintiff's motion do not relate to the underlying substantive claims against the individual defendant officers on which the parties are concurrently conducting discovery, but rather to a *Monell* policy and practice claim against the City which will necessarily require expert reports and testimony. Plaintiff correctly informs the court that the City has already produced the CR files for the individual defendant officers responsive to Request No. 25. To also be clear, the City has not taken a position that it objects to producing *any* CRs of non-defendant officers. The debate between the parties is how to define the scope of the universe of non-defendant officers' CRs.

**The List of Detectives Assigned to Area One**

In addition to complaints against the Defendant Officers, Request No. 25 sought the production of documents relating to allegations or complaints against other police officers assigned to Area One for an eleven year period from January 1, 1986 to December 3, 1996. For purposes of this litigation, Area One refers to a detective division within the Chicago Police Department in which the majority of the Defendant Officers were assigned at the time of the homicide investigation at issue. Subject to and without waiving its objections to Request No. 25 relating to other police officers assigned to Area One for the eleven year time period, the City negotiated with Plaintiff in an attempt to narrow the scope of the request. Plaintiff offered to limit the personnel to detectives assigned to the Homicide and/or Violent Crimes Unit of Area One for an eight-year period (January 1, 1989 to December 31, 1996), conditioned upon the City not contesting that the number of CR files produced for these detectives constituted a

"statistically sufficient sample size" for Plaintiff to prove its *Monell* pattern and practice allegations. (*See* Plt's. Ex. 4).

Unwilling to accept Plaintiff's condition due to lack of specificity, the City continued to negotiate with Plaintiff and contacted the Police Department (CPD) to determine if such a list of detectives existed. Unfortunately, CPD does not maintain its personnel assignment records in a "yearbook" format by unit. In a good faith effort to comply with Plaintiff's original Request No. 25, the City asked CPD if such a list could be created, and worked with CPD to accomplish that task. The process was extremely time consuming, involving trial and error, but the City was able to produce a working list of approximately 300 detectives assigned to Area One during January 1, 1986 to December 31, 1996.[1] Because the City could not guarantee the accuracy of the working list given the process employed, it shared the working list with Plaintiff's attorneys, whose law firm has litigated cases against CPD detectives for decades, and asked them to review the list and suggest edits. Plaintiff suggested additional personnel which the City checked to confirm assignment history, and the parties reached an agreed list for this production in March 2018.

Based on the parties' agreed list, the City asked CPD for disciplinary histories for the approximately 300 personnel to determine the size of the CR universe that was being requested by Plaintiff. Obtaining and reviewing these histories was also a time consuming process. Based on this review, the City estimated it would need to produce 1900 to 2300 CR files to comply with Plaintiff's production request. The City advised Plaintiff of its estimate, renewed its

---

[1] The process did not allow CPD to narrowly search for detectives assigned to the Homicide and/or Violent Crimes Unit because CPD reorganized and/or eliminated some detective unit number designations during the January 1, 1986 to December 31, 1996 time frame. Thus, assignments to multiple detective unit numbers associated with Area One were searched. The process also could not specify how long the particular detective was assigned to a unit associated with Area One, only that he or she was assigned to such a unit during the eleven year time frame.

objections to the production of this many CR files, and expressed its willingness to continue negotiations with Plaintiff to further limit the requested production. Contrary to Plaintiff's assertion on page 5 of his motion, the City never agreed to gather the 1900-2300 CRs in advance of reaching an agreement with Plaintiff, and Plaintiff's reference to the emails in Ex. 8 do not support such an agreement. Indeed, the City has consistently stood on its objections to the undue burden, expense, and disproportionality of such an exercise.

**Plaintiff's Request for Accuracy**

Additionally, Plaintiff requested that the City check the accuracy of its production of CR files against available databases. The City has agreed to cross check the CRs listed in the complaint history databases reviewed to date against other available databases and search tools in an effort to ensure to the best of its ability that all CRs for the approximately 300 detectives on the list have been accounted for. This process is also time-consuming, and the effort to ensure accuracy cannot be sacrificed for the sake of expediency.

**The Statistically Sufficient Sample Size**

Plaintiff had always conditioned his offer to narrow the scope of this production on the City not contesting that the number of CR files produced would constitute a "statistically sufficient sample size" for Plaintiff to prove its *Monell* allegations. (See, Plt.'s Ex. 4, August 4, 2017 letter from Ms. Donnell to defense counsel). During the parties' negotiations, the City requested Plaintiff to explain what he meant by a "statistically sufficient sample size" in an effort to determine if the production could be narrowed on this basis. In his motion, Plaintiff contends that by doing so the City was using Plaintiff's offer against him, and placing an unreasonable burden on Plaintiff to hire an expert to explain the "statistically sufficient sample size."

Plaintiff's characterization of the City's intent is inaccurate. In reality, Plaintiff does not need to hire an expert to explain the statistically sufficient sample size because he has already retained such experts who have testified for Plaintiff's law firm in other cases involving similar *Monell* claims and issues. Because this production of CR files will foreseeably lead to expert reports and testimony, the City was not inclined to blindly agree to or not contest Plaintiff's "statistically sufficient sample size" condition without knowing its meaning, context, and purpose, nor without having some understanding of the methodology employed.

Given its importance and potential impact on expert discovery, the City did not view its position on the statistically sufficient sample size as unreasonable. It was the City's hope that Plaintiff would consult with its experts and give an explanation of what Plaintiff considered to be a "statistically sufficient sample size" so that the City could, in turn, confer with its consulting experts to determine if Plaintiff's proposed size and method were statistically appropriate. Because the parties would be conferring with consultants, neither side would be required to disclose them. Rather than take this approach, Plaintiff maintained its position and did not define or explain the "statistically sufficient sample size" for the City. Instead, without explanation, Plaintiff suggested a sample size of 200 CRs in an effort to, in his words, "placate the City." Random numbers without explanation as to their statistical significance or context do not further negotiations on what is meant by a "statistically sufficient sample size." The City, thus, did not accept Plaintiff's suggestion.

**The September 20, 2018 Agreement**

On September 20, 2018, the parties met and conferred again regarding this production. During this meeting, Plaintiff acknowledged that he could not provide an explanation for its

"statistically sufficient sample size" because Plaintiff's attorneys did not themselves know its meaning. In light of this admission, Plaintiff agreed to take its long-standing "statistically sufficient sample size" condition "off the table for the time being," and to explore other ways to limit the universe of the production. After discussing possible methods, the parties agreed to limit the production to CR files with incident dates occurring between the eleven-year period of January 1, 1986 to December 31, 1996 to determine if that would reduce the number of CR files to be produced, and to explore other possibilities if it did not.

The City recently completed its review of complaint histories for the detectives on the list to determine the universe of CR files with incident dates occurring within the eleven-year time frame. On October 30, 2018, the City advised Plaintiff an estimated 975 to 1700 CR files would need to be produced based on the incident date limitation.[2] Although the "incident date" limitation has reduced the initial universe of CR files to be produced, the City's position is that the number of CR files to be produced under that "limitation" is still unduly burdensome and otherwise objectionable. Nonetheless, the City has indicated to Plaintiff its willingness to continue negotiations to explore further limitations.

And the parties have continued to explore resolutions to this matter. For example, Plaintiff has proposed that the City produce all the CR files to Plaintiff (subject to the previously entered protective order) so that Plaintiff can review them for "relevance," and then the parties can challenge the other's relevancy determinations. See Motion at p. 6. Putting aside that

---

[2]    The reason for the estimated range is that one of the databases reviewed by the City does not list CR files by incident date. Nor does it search by the detective's star or employee number because it is phonetically based. Thus, the CRs listed for detectives with common surnames or similar surnames would have to be individually checked to determine the particular detective the complaint was lodged against. As noted above, other databases would need to be cross checked to determine the accuracy of the production.

Plaintiff has not defined or explained what he means by "relevance" in the context of the CR universe, this proposal ignores the fact that the City would still have to obtain, copy, bates-stamp, and produce an inordinate number of CR files, and before producing them review them for confidential material such as personal identifying information of police personnel (e.g., home address, SSN, etc.), mental health protected information, and juvenile information notwithstanding the protective order. Additionally, there would be no time saved because the City would still have to review the files afterward to assess Plaintiff's "relevancy" determinations, thus duplicating its efforts. While this proposal is not agreeable, the City is nevertheless open to other suggestions to come to a resolution that is proportional to the needs of the case, less costly, and not unduly burdensome. For instance, further limitation on the time frame of the incident dates of the CR files might result in an agreeable resolution.

**Conclusion**

Frankly, the City was surprised by Plaintiff's motion, since the parties had been continuing their dialog and exploring whether they could reach agreement on a response to request for production No. 25. In fact, that dialog has continued even after Plaintiff filed his premature motion. The parties may or may not be able come to an agreement, but in the City's view there is more room for discussion before that determination can be made.

As it has from the beginning, the City maintains this *Monell* discovery is unnecessary and wastes the time, money and effort of the parties and the Court. Discovery on the underlying claims against the individual officer defendants is still ongoing but nearing a foreseeable end, while *Monell* discovery is still in its relative infancy not because the City has intentionally delayed as Plaintiff baselessly charges, but precisely because the kind of *Monell* discovery

7

Plaintiff seeks is time-consuming and labor-intensive even in its initial stages of definition, much less in its actual production and further litigation. The issues underlying Plaintiff's motion proves that point perfectly.

Nevertheless, the City has continued to respond to Plaintiff's *Monell* requests and to negotiate in good faith. The City has not taken the position that it is unwilling to produce any CR files; its objections are to the size, scope and fairness of any such production. There is no doubt the present CR issue has been discussed between the parties for a long time, but both parties have contributed to the length of time involved, as has the very nature of Plaintiff's request. The parties are continuing their discussions, and the dispute has not yet reached an impasse.

In light of the foregoing, the City requests that Plaintiff's motion be denied, including Plaintiff's request for attorneys' fees and costs. The City further requests that the Court set this matter for further status in one month's time at which the parties can report whether their dialog has produced an agreement or they have reached an impasse so that the Court has a more definite position from which to decide this issue.

Dated: November 1, 2018                    Respectfully submitted,

                                           /s/ Joseph M. Polick
                                           JOSEPH M. POLICK, Atty. No. 6203682
                                           *One of the Attorneys for Defendant City*

James G. Sotos
Jeffrey N. Given
Joseph M. Polick
Sara J. Schroeder
David A. Brueggen
THE SOTOS LAW FIRM, P.C.
550 East Devon Avenue, Suite 150
Itasca, Illinois 60143
Tel: 630-735-3300
jpolick@jsotoslaw.com

## CERTIFICATE OF SERVICE

I certify that on November 1, 2018, I electronically filed the foregoing **Defendant City of Chicago's Response to Plaintiff Tyrone Hood's Motion to Compel Production of Documents Responsive to Request for production No. 25** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record on the below Service List.

| | |
|---|---|
| ***Attorneys for Plaintiff Tyrone Hood*** | ***Attorneys for Individual Defendants*** |
| Jonathan Loevy | Eileen E. Rosen |
| Arthur Loevy | Catherine M. Barber |
| Gayle Horn | James B. Novy |
| Katie Roche | Stacy A. Benjamin |
| Heather Donnell | Theresa B. Carney |
| Loevy & Loevy | Patrick Moran |
| 311 N. Aberdeen Street - 3rd Floor | Rock Fusco & Connelly |
| Chicago, IL 60607 | 321 N. Clark Street, Suite 2200 |
| (312) 243-5900 | Chicago, IL 60654 |
| jon@loeyy.com | (312)474-1000 |
| arthur@loeyy.com | erosen@rfclaw.com |
| gayle@loeyy.com | cbarber@rfclaw.com |
| katie@loeyy.com | jnovy@rfclaw.com |
| heather@loeyy.com | sbenjamin@rfclaw.com |
| | tcarney@rfclaw.com |
| | pmoran@rfclaw.com |

***Attorneys for Plaintiff Wayne Washington***
Steven H. Fine
Law Office of Steven H. Fine
53 West Jackson Boulevard, Suite 1260
Chicago, IL 60604
312-922-0855
sfinelaw@hotmail.com

Steven Allen Greenberg
Steven A. Greenberg, LRD
53 W. Jackson, Suite 1260
Chicago, IL 60604                              /s/ JOSEPH M. POLICK
312-879-9500                                   JOSEPH M. POLICK
greenberglaw@me.com