**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WAYNE WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 CV 1893 |
| | ) | |
| v. | ) | Honorable Andrea R. Wood |
| | ) | Magistrate Judge Maria Valdez |
| CITY OF CHICAGO, KENNETH BOUDREAU, JOHN HALLORAN, BERNARD RYAN, ROBERT LENIHAN, JOHN POLUSZNY, MICHAEL CLANCY, JOHN BALL, JAMES O'BRIEN, GERALD CARROLL, ELIZABETH SHINN, JOHN STOUT, AND UNKNOWN EMPLOYEES OF THE CITY OF CHICAGO, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| TYRONE HOOD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 CV 1970 |
| | ) | |
| v. | ) | Honorable Andrea R. Wood |
| | ) | Magistrate Judge Maria Valdez |
| CITY OF CHICAGO, KENNETH BOUDREAU, JOHN HALLORAN, BERNARD RYAN, ROBERT LENIHAN, JOHN POLUSZNY, MICHAEL CLANCY, JOHN BALL, JAMES O'BRIEN, GERALD CARROLL, ELIZABETH SHINN, JOHN STOUT, AND UNKNOWN EMPLOYEES OF THE CITY OF CHICAGO, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PARTIES' JOINT FILING**

The Parties submit the following joint filing stating their respective positions on the remaining discovery at issue for Plaintiffs' *Brady* claims and street file theory of *Monell* liability as wells their positions on whether partial summary judgment on these claims at this point in the litigation pursuant to the Court's Minute Order dated February 11, 2019. *See* Doc. 231.

I. **PLAINTIFF'S POSITION**

**Introduction**

After nearly three years, the Parties are in the final stages of fact discovery. This Court recently denied the City of Chicago's renewed motion to bifurcate Plaintiffs' *Monell* and clarified that the City's attempted self-help measure to stay discovery was unwarranted. The Parties are now able to complete all aspects of fact discovery, and move to expert discovery, summary judgment and trial. In Plaintiffs' view, redirecting the Parties' resources and time to focus on preparing and responding to a partial summary judgment on Plaintiffs' *Brady* claim would likely lead to further delay in completing fact discovery and the litigation of this case. In addition, a piecemeal summary judgment motion would be particularly inefficient here because Plaintiffs' *Brady* claims necessarily have overlapping facts with their fabrication of evidence and coerced confessions claims. In other words, any marginal benefit of resolving Plaintiffs' *Brady* claims at this point is strongly outweighed by the additional burden on the Court and the Parties to redirect their resources when all claims will be subjected to the scrutiny of dispositive motions in the near future.

A. **Plaintiffs' *Brady* Claims**

Plaintiffs have alleged that Defendants withheld exculpatory and impeachment evidence. At this juncture, the record includes the following evidence in support of Plaintiffs' *Brady* claims:

1. **Coerced and Fabricated Witness Statements by Jody Rogers, Michael Rogers (aka Kenneth Crossley) and Joseph West**

Defendants Boudreau and Halloran withheld and suppressed the information that they fed to Jody Rogers about the murder—namely where Marshall Morgan, Jr. was shot, what type of

caliber gun he was shot with, and what type of vehicle he was driving. Defendants Boudreau and Halloran withheld that they fed the facts of the murder known to them and unknown to Mr. Rogers, as well as the manner and the methods that they used to coerce Mr. Rogers into his false statement. The same is true of the fabricated witness statements that these same Defendants coerced from Michael Rogers and Joseph West, both of whom also were coerced into false and fabricated witness statements that implicated Plaintiffs. The threats, promises, and facts Defendant Boudreau and Halloran used to coerce the fabricated statements were withheld from both Plaintiffs. *Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001), *abrogated on other grounds by Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017) (violation of *Brady* for police to withhold "means" they used to influence two witnesses to identify plaintiff in a line-up).

Mr. Jody Rogers was deposed and testified as to the physical abuse and threats that Defendants employed to coerce his witness statement. Mr. Michael Rogers still needs to be deposed, and Mr. West died before Plaintiffs' criminal trials in 1996.

2. **Coerced Confession of Wayne Washington**

Plaintiff Hood also has a *Brady* claim with respect to Mr. Washington's coerced confession. Mr. Washington testified at his deposition as to the physical and psychological threats Defendants Boudreau and Halloran used to elicit his false confession. The Defendants never disclosed the manner in which they coerced and fabricated Mr. Washington's confession to Plaintiff Hood.

3. **Attempts to Put the Morgan Murder on Terry King and David Carter**

Prior to coercing the false statements from Messrs. Rogers, West and Washington, Defendants had tried, through the use of physical and verbal threats, to coerce confessions from Terry King and David Carter, two friends/acquaintances of Morgan. These threats were suppressed and withheld from Plaintiffs. *See, e.g., Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (in

determining materiality of *Brady* violations, courts consider the "cumulative effect" of the suppressed information, not item by item).

### 4. Evidence Suppressed Linking Marshall Morgan, Sr. to His Son's Murder

Two years after Morgan's murder, Michelle Soto, Marshall Morgan, Sr.'s girlfriend, was murdered in very similar fashion to his son. Morgan, Sr. was one of the last people to see Ms. Soto. Her body was found more than a week later in her abandoned vehicle –she had been shot in the face and hand, with her naked body wedged on the floor between the back seat of the car in a very similar fashion to how Morgan, Jr.'s body was found. Morgan, Sr. also financially benefited from her death, like his son's, through a life insurance policy of which he was the beneficiary. Morgan, Sr. was a lead suspect in the Soto homicide, repeatedly interviewed by Area Two detectives and failed a polygraph. During the deposition of Defendant Lenihan in this case, it came to light for the first time, that prior to Plaintiffs' criminal trials, one of the Area Two detectives spoke to him and inquired if Defendant Lenihan was certain that he had the right guys (*i.e.* Plaintiffs Hood and Washington), the reasonable inference being that the Area Two detectives thought there was a connection between the Soto and Morgan, Jr. homicides. That inter-department communication was never memorialized in a police report, reported or provided to Plaintiffs' criminal defense counsel. This was particularly damning because evidence of the connections between the Soto and Morgan homicides as well as Morgan Sr.'s insurance fraud was barred from Mr. Hood's trial because the court thought the connection between the murders was too tenuous and lacked a factual nexus with one other. Had it been reported and disclosed to Plaintiffs' trial counsels that CPD Area Two detectives thought there was a possible connection between the Soto and Morgan homicides and Defendant Lenihan had been informed about that, it would likely have altered the ability for Plaintiffs to put on evidence of the Soto homicide and

4

Morgan's insurance fraud in their defense, or, at the very least, provided fodder for counsel's cross examine Defendant Lenihan about his conversation with the Area Two detectives.

### 5. Photographic Array Shown to Emanuel Bob Suppressed

At Mr. Hood's criminal trial, Defendant Ryann testified that he showed a photographic array of nine African American males to Emanuel Bob, the State's eleventh-hour witness that came to light literally on the eve of Mr. Hood's criminal trial to implicate Mr. Hood. The photo array was never produced to Plaintiffs.

### B. Additional *Brady*-Related Discovery

At this time, Plaintiffs have identified the following *Brady*-related discovery that is outstanding and will be conducted in the next few months:

- Depositions:
    - Kenneth Crossley
    - Terry King
    - David Carter
    - Sharon Jakush
    - Eugenia Brown
    - Doreen Brown
    - Former ASAs – including Hon. Peggy Chiapas, Martin Head and Hon. James Brown
- Subpoena for documents provided to Area Two Detectives by Michelle Soto's sisters that allegedly implicated Morgan, Sr. in Michelle Soto's homicide;
- Follow-up discovery on Plaintiffs' Fourth Set of Interrogatory Requests related to the unusual stamping of the Morgan homicide permanent retention file.

### C. Street File-Related Discovery

As Plaintiffs explained in their response to the City's renewed motion to bifurcate, *see* doc. 201 at 10-12 & fn. 7, Plaintiffs proposal on the additional street file discovery in this case is very limited and places minimal burden on the City. Plaintiffs seek to rely on the street file discovery/evidence that has already been produced by the City in *Fields v. City of Chicago* and

5

*Rivera v. City of Chicago*. Accordingly, Plaintiffs and Defendants need only to meet and confer on the production of the relevant files and documents from those two cases in this case.

The only additional discovery that needs to be done pertains to 9 investigative files from 1990 to 1996 that were produced in the *Fields* case. Because that time period was not relevant given the particular facts of the *Fields* case, the corresponding public defender files were not sought for comparison with the investigative files to determine if all the information was disclosed. Plaintiffs now intend to subpoena the Cook County Public Defenders' Office for their corresponding nine files, which they can promptly issue. A minimal number of depositions relating to these files may be needed. However, all of this discovery can be completed within the time allocated for discovery of the rest of the fact and *Monell* discovery and will not require years of additional time.

To the extent that the Defendants continue to argue that no "street file" has been uncovered to date, Plaintiffs experience in other similar cases is that the missing reports or information often take years to locate and produce. For example, in *Klulppelberg v. Burge*, No. 13 cv 3963, the street file was discovered almost by chance on a pallet in the basement of the CPD warehouse over a year into the litigation. Plaintiffs have additional discovery to conduct regarding this very issue, such as follow up on the unusual stamping of the Permanent Retention File for the Morgan homicide investigation identified above, that should be permitted to go forward through the end of discovery.

In addition, Plaintiffs' street file claim is not contingent on a finding of a Defendants' liability for an underlying *Brady* violation. That is because, as the plaintiffs in *Rivera* and *Fields* proved, it is the City's policy and practice of creating a separate set of parallel files that causes the information in those files to be withheld. The actual withholding may be done for a number

6

of reasons and by a number of persons, notably many of whom are not defendants in this case: For example, as demonstrated in *Rivera*, there is a subpoena service unit that responds to requests for discovery by prosecutors and criminal defense attorneys. As a matter of practice and policy, the subpoena service unit did not consult with the individual detectives or seek the street file for any particular criminal investigation. As a result, the street file in this case could be withheld because the subpoena service unit did not know to produce it.

### D. Efficiency and Pragmatic Considerations

After nearly three years of litigation, these two cases are in the final months of completing discovery. Despite the Parties' diligence, a significant number of depositions remain to be taken, including at least three Rule 30(b)(6) depositions of the City's designated witnesses, several third-party witnesses, a handful of which will require out-of-town travel. And, the City is approximately 1/3 of the way through producing 1,600 CR Files, and it is unable to confirm when that production will be complete due to the size of the production and counsels' demands in other matters. Given all the outstanding discovery the Parties to complete, it is very reasonable to assume that diverting both sides' attention from completing fact discovery to briefing a partial summary judgment motion, will likely result in additional delay. Moreover, there will almost certainly be another round of full summary judgment briefing. Defendants are expected to move for summary judgment on Plaintiffs' other claims, which have overlapping factual basis and will require duplicative briefing, particularly with regard to Plaintiffs' fabrication claims, and duplicative rulings. Given that the Court and the Parties will be engaged in dispositive motions in the relative near future after expert discovery, it is reasonable, efficient and practical to have the Parties focus their efforts on completing the outstanding discovery without further delay,

conducting expert discovery and – if warranted – submitting all claims to this Court in a single round of summary judgment briefing.

### Plaintiffs' Conclusion

For the reasons set forth above, Plaintiffs respectfully request that the Court consider summary judgment on all Plaintiffs' claims at the end of fact and expert discovery.

## II. DEFENDANTS' POSITION

At a status hearing held February 11, 2019, this Court denied Defendant City of Chicago's renewed motion to bifurcate and stay discovery on Plaintiffs' *Monell* claims. The Court recognized, however, that the time-consuming, expensive, and extensive discovery that would be involved in litigating Plaintiffs' "street file" *Monell* claim could be avoided if there was no underlying constitutional violation of *Brady v. Maryland*. Thus, the Court has asked the parties whether "it may be appropriate for Defendants to move for partial summary judgment on that issue prior to completing fact discovery" and for their position on "what additional discovery, including discovery regarding 'street files,' is necessary" to brief such a motion." Dkt. 231.

Based on the present evidentiary record, Defendants believe it is appropriate to file a motion for partial summary judgment on whether Plaintiffs' constitutional rights were violated under *Brady*. Defendants require no additional discovery to file this motion, and in Defendants' view, Plaintiffs have exhausted all reasonable discovery regarding it.

With certain qualifications, a *Brady* violation occurs when the police fail to turn over to the prosecutor evidence favorable to the accused. *See Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006). In their Complaint, Plaintiffs allege that the Defendant Officers "systematically suppressed *Brady* material by intentionally secreting discoverable information in the clandestine

files commonly referred to as 'street files,'" and withheld these street files from both the Cook County State's Attorney's Office and Plaintiffs' criminal defense counsel.

More than three years after filing their Complaints, Plaintiffs have adduced no evidence that a street file, as they have defined it, exists in this case. When asked via interrogatory, "[w]hat do you allege is the 'street file' in this case and identify/describe those documents that you contend are contained in the street file," Plaintiffs failed to identify a single document and instead answered that "a 'street file' exists or existed for the Marshall Morgan, Jr. … homicide investigation[] based on the City's policy and practice of keeping 'street files,' which was demonstrated [in various other cases] which includes the time frame of the Marshall Morgan, Jr. homicide investigation." Plaintiffs have not supplemented that answer.

Plaintiffs' answer is based on flawed logic, not fact: even if, as Plaintiffs allege, the City has a policy of keeping "street files," Plaintiff can only *assume* one must exist in this case, even with no evidence that it does. During the pendency of their 1996 criminal trials and subsequent post-conviction proceedings, as well as the three years of this civil litigation, Plaintiffs have had the opportunity to conduct discovery to establish the existence of a "street file," and they have failed to do so. Consequently, without evidence of the suppression of exculpatory information in the manner in which Plaintiffs have alleged that it occurs, there is no question of fact that the Individual Defendants did not violate Plaintiffs' constitutional rights under *Brady*. Accordingly, this case is in a posture appropriate for Defendants to move for partial summary judgment on Plaintiffs' *Brady* claim.

Since Plaintiffs' assertion that a "street file" exists in this case is pure conjecture, Defendants anticipate that Plaintiffs will abandon their "street file" theory and rely on one or more permutations of it to attempt to establish a *Brady* violation. For example, Plaintiffs may

contend that a comparison of the Chicago Police Department Investigative File related to the homicide of Marshall Morgan, Jr. with the State's Attorney's litigation file shows that certain documents contained in the former are not found in the latter, and this discrepancy is therefore evidence that the Individual Defendants intentionally withheld these documents in violation of *Brady*. In this case, Defendants have produced to Plaintiffs a copy of the relevant Investigative File; Plaintiffs have inspected the original file; and the prosecutor's litigation file is part of the evidentiary record. And yet, to date Plaintiffs have not identified a single document in the Investigative File that is not in the prosecutor's file. Further, Plaintiffs' criminal defense counsel have been deposed and could not identify a single document that demonstrated a *Brady* violation. Defendants therefore believe the *Brady* issue is ripe for summary judgment, with no need for further discovery.

Alternatively, Plaintiffs may argue the Individual Defendants violated *Brady* simply by not volunteering to prosecutors that they engaged in the misconduct Plaintiffs allege (*e.g.*, fabrication of evidence, coercion of confessions), or testifying falsely during legal proceedings as to their conduct. Even if such alleged misconduct is taken as true for purposes of summary judgment, the officers' failure to disclose it to the State's Attorney does not state a viable *Brady* claim as a matter of law because "[t]he Constitution does not require that police testify truthfully." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029 (7th Cir. 2006) (original emphasis). Plaintiffs also may argue the Individual Defendants violated *Brady* by withholding information that Marshall Morgan, Sr. was under investigation in the 1995 Michelle Soto homicide in which some circumstances were similar to circumstances in the Morgan, Jr. murder with which Plaintiffs had been charged. This evidence also fails to state a viable *Brady* claim as a matter of law because police officers have no duty to create truthful exculpatory evidence. *See*

*Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003). In addition, this theory also fails to satisfy the third "basic element" of a *Brady* violation—that there is "a reasonable probability that prejudice ensued," *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008)—because Plaintiffs knew in advance of their criminal trials that Morgan, Sr. was a suspect in the Soto murder and argued at trial that he was the real killer of his son. In fact, Morgan Sr. testified at Plaintiffs' respective criminal trials. Accordingly, no further discovery on Plaintiffs' part is necessary to advance either theory that the Individual Defendants violated *Brady*.

As to Plaintiffs' "street file practice" *Monell* claim, if this Court grants summary judgment to the Individual Defendants on the alleged *Brady* violation, then as a matter of law the City also is entitled to summary judgment under *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Contrary to Plaintiffs' assertions, no evidence in the record supports their *Brady* claims. The Individual Defendants' purported "silence" about allegedly fabricating (or attempting to fabricate) false statements or confessions from various witnesses (Jody Rogers, Michael Rogers, Joseph West, Terry King, and David Carter) and Plaintiff Washington, by the use of coercion, does not constitute a *Brady* violation. *See Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015) (Seventh Circuit case law "makes clear that *Brady* does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution.") As explained above, the fact that Defendant Lenihan did not memorialize in writing information he learned about the Soto murder does not state a viable *Brady* claim. Finally, the issue of Defendant Ryan's trial testimony as to what photos were shown to Emanuel Bob was addressed at the criminal trial. After hearing arguments from Plaintiffs' defense counsel, the Court found no discovery violation had occurred.

11

Given the evidence of record and the applicable law, Defendants agree with the Court that if *Monell* is not to be bifurcated, it is a prudent and efficient alternative to proceed at this time with a motion for partial summary judgment on Plaintiffs' *Brady* claim while conducting the remaining discovery concurrently. For the reasons explained above, Defendants believe this motion is meritorious and that the early resolution of this discrete claim will save considerable time, expense, and effort. If this Court believes that filing such a motion now is not appropriate, or if such a motion is filed but denied, however, the City will then have to affirmatively disprove Plaintiffs' "street file practice" claim by conducting its own extensive discovery to establish that Plaintiffs cannot satisfy the "widespread and pervasive practice" element of a *Monell* claim. As the City previously has advised this Court, such discovery will involve obtaining and producing hundreds of closed homicide investigative files City-wide from 1990 to 1996; obtaining the corresponding State's Attorney's Office files for those cases for purposes of comparison; taking depositions of criminal defense attorneys; retaining experts to opine on this evidence; and moving for summary judgment on all the elements of proof of a *Monell* claim. Such litigation will be onerous, time-consuming, and expensive—prior experience litigating "street file practice" claims suggests that discovery alone will take at least one year. Moreover, Plaintiffs' attempt to minimize the extent and burden of conducting *Monell* discovery is misleading. At a minimum, the City anticipates it will challenge reliance on homicide files from other cases that fall outside the relevant time period. More important, regardless of Plaintiffs' intentions, the City will still engage in its own discovery described above. In sum, then, in the interest of judicial and litigation economy, adjudicating Plaintiffs' *Brady* claim by way of a motion for partial summary judgment, with the opportunity it presents to eliminate the need to litigate Plaintiffs' "street file practice" *Monell* claim, is a reasonable and pragmatic course of action in this case.

**Defendants' Conclusion**

For the reasons set out above, Defendants ask this Court to set a briefing schedule at this time on Defendants' Motion for Partial Summary Judgment on Plaintiffs' *Brady* violation claim.

Dated: March 1, 2019						Respectfully submitted,

| /s/ Heather Lewis Donnell | /s/ George Yamin |
|---|---|
| Jon Loevy | James G. Sotos |
| Gayle Horn | Jeffrey N. Given |
| Heather Lewis Donnell | Joseph M. Polick |
| Elizabeth Mazur | George Yamin |
| Scott Rauscher | David Brueggen |
| LOEVY & LOEVY | THE SOTOS LAW FIRM, P.C. |
| 311 N. Aberdeen Street, Third Floor | 141 W. Jackson Blvd. Suite 1240A |
| Chicago, IL 60607 | Chicago, IL 60604 |
| (312) 243-5900 | (603)735-3300 |
| *Attorneys for Tyrone Hood* | *Attorneys for the City of Chicago* |
| | |
| /s/ Steven A. Greenberg | /s/ Patrick Moran |
| Steven A. Greenberg | Eileen Rosen |
| 53 W. Jackson, Suite 1260 | Stacy Benjamin |
| Chicago, IL 60604 | Patrick R. Moran |
| (312)879-9500 | Catherine Barber |
| 53 W. Jackson, Suite 1260 | Rock Fusco & Connelly, LLC |
| Chicago, IL 60604 | 321 N Clark Street, Suit 2200 |
| greenberglaw@me.com | Chicago, IL 60654 |
| | (312) 494-1000 |
| Steven H. Fine | *Attorneys for Kenneth Boudreau,* |
| Law Office of Steven H. Fine | *John Halloran, Bernard Ryan,* |
| 53 W. Jackson Boulevard, Suite 1260 | *Robert Lenihan, John Poluszny,* |
| Chicago, IL 60604 | *Michael Clancy, John Ball, James* |
| 312-922-0855 | *O'Brien, Gerald Carrol, Elizabeth* |
| sfinelaw@hotmail.com | *Shinn, and John Stout* |
| | |
| *Attorneys for Wayne Washington* | |

## **CERTIFICATE OF SERVICE**

I, Steven Fine, hereby certify that I served the foregoing Joint Filing on all counsel of record via the Court's CM / ECF filing system on March 1, 2019.

          /s/ Steven H. Fine
*One of Plaintiff's Attorneys*