**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WAYNE WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 CV 1893 |
| | ) | |
| v. | ) | Honorable Andrea R. Wood |
| | ) | Magistrate Judge Maria Valdez |
| CITY OF CHICAGO, KENNETH BOUDREAU, | ) | |
| JOHN HALLORAN, BERNARD RYAN, | ) | |
| ROBERT LENIHAN, JOHN POLUSZNY, | ) | |
| MICHAEL CLANCY, JOHN BALL, JAMES | ) | |
| O'BRIEN, GERALD CARROLL, ELIZABETH | ) | |
| SHINN, JOHN STOUT, AND UNKNOWN | ) | |
| EMPLOYEES OF THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| TYRONE HOOD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 CV 1970 |
| | ) | |
| v. | ) | Honorable Andrea R. Wood |
| | ) | Magistrate Judge Maria Valdez |
| CITY OF CHICAGO, KENNETH BOUDREAU, | ) | |
| JOHN HALLORAN, BERNARD RYAN, | ) | |
| ROBERT LENIHAN, JOHN POLUSZNY, | ) | |
| MICHAEL CLANCY, JOHN BALL, JAMES | ) | |
| O'BRIEN, GERALD CARROLL, ELIZABETH | ) | |
| SHINN, JOHN STOUT, AND UNKNOWN | ) | |
| EMPLOYEES OF THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S MOTION TO STRUCTURE DISCOVERY**

Defendant City of Chicago, by its attorneys, moves this Court to structure discovery in this case "to secure [its] just, speedy, and inexpensive determination," Fed.R.Civ.P. 1, and to do so in a way consistent with the District Court's suggestion to conduct this litigation in phases. Specifically, the City asks this Court to direct the parties to defer *Monell* "street file" discovery

1

until all other fact discovery is completed, so that in the interval between these two phases of discovery, Defendants may move for summary judgment on Plaintiffs' *Brady* and *Monell* "street file" claims.

## **Introduction**

At the April 25, 2019, status hearing the District Court asked the parties to identify any "open items" in these cases. *See Transcript of Proceedings before Hon. Andrea R. Wood* (attached as Exh. A) at 4. In response, the parties primarily discussed Judge Wood's idea of Defendants filing a motion for partial summary judgment regarding Plaintiffs' *Brady* and *Monell* "street file" claims prior to the scheduled close of fact discovery, and whether the July 19, 2019, date for the close of fact discovery was realistic.

Plaintiffs objected to proceeding with partial summary judgment at this time as inefficient. According to Plaintiffs, the parties are trying to complete fact discovery, and briefing such a motion now would distract them from doing so by July 19. Plaintiffs also argued that unidentified disputed issues of material fact precluded Defendants from succeeding on their motion, adding that "if we were required at this point in time to reveal what our exact *Brady* theory is, it would be unfair. . . . " *Id.* at 8.

The City argued that a motion for partial summary judgment on this claim was ripe for filing, even before the close of fact discovery, because there is no evidence in this case that a street file exists, or that a *Brady* violation occurred. The City also addressed whether the July 19 close of fact discovery deadline was attainable. According to the City, that deadline was impractical even for non-"street file" discovery, but especially because discovery regarding Plaintiffs' *Monell* "street file" claim "is going to add another year at least." *Id.* at 7.

After considering the parties' comments, the District Court stated that it would treat the filing of a motion for partial summary judgment before the current deadline for fact discovery as "premature." *Id.* at 16. According to the Court, "plaintiff's counsel has made a colorable [Rule 56(d)] argument that they still have some additional discovery that needs to be completed before they could respond to a motion for partial summary judgment on the underlying claim . . . ." *Id.* at 15. "However," the Court continued, "if defense counsel can sort of wrap up that issue and tee it up through your discovery . . . then [Defendants] can go ahead and file the motion" at the close of fact discovery. *Id.* As to Plaintiffs' *Monell* "street file" claim, the Court acknowledged that if an extension of time to complete discovery is necessary, "it will be needed for the *Monell* purposes, particularly if there is a need for the street file [claim]." *Id.*

During its colloquy with the parties, the Court asked if they had "spoken to Judge Valdez about phasing discovery[.] Not bifurcating, but phasing so that you get the discovery on the underlying claims prioritized, and then focusing on the more strictly *Monell* discovery . . . once you've sort of completed the other individual theory liability discovery." *Id.* at 11. The City asks this Court to heed the District Court's recommendation that the parties conduct remaining fact discovery and *Monell* "street file" discovery in stages, in anticipation of Defendants moving for summary judgment on Plaintiffs' *Brady* and *Monell* "street file" claims, so that this litigation may proceed in a "just, speedy, and inexpensive" manner.

<u>**Argument**</u>

**Discovery Related to Plaintiffs' *Monell* "Street File" Claim Should Be Deferred Until the Close of All Other Fact Discovery, After Which Defendants Will Move for Summary Judgment on This Claim and Plaintiffs' *Brady* claim.**

Discovery related to Plaintiffs' *Monell* "street file" claim should be deferred until the close of all other fact discovery for two reasons. First, as the City has advised, conducting

3

discovery on this claim will be burdensome, expensive, and time-consuming, and it cannot be completed in the five weeks that remain for currently-scheduled fact discovery. Second, such discovery is unnecessary because there is no proof that the City or the Individual Defendants in these cases withheld from Plaintiffs any document containing material and exculpatory evidence in their underlying criminal cases, in violation of *Brady v. Maryland*. Without proof of a constitutional violation, there can be no *Monell* liability. *See, e.g.*, *Petty v. City of Chicago*, 754 F.3d 456 (7th Cir. 2014) ("But if no constitutional violation occurred in the first place, a *Monell* claim cannot be supported.") (citation omitted). And where there can be no *Monell* liability, it makes no sense to conduct *Monell* discovery.

### A. Conducting discovery on Plaintiffs' *Monell* "street file" claim will be burdensome, expensive, and time-consuming, and it cannot be completed in the time that remains to conduct fact discovery.

To understand the onerous nature of discovery related to Plaintiffs' *Monell* "street file" claim, one must understand what is required to prove this claim. As an initial matter, the term "street file" is a misnomer. In his Complaint, Plaintiff Hood alleges that Chicago Police Department ("CPD") detectives "systematically suppressed *Brady* material by intentionally secreting discoverable information in the clandestine files commonly referred to as 'street files,'" and that "[t]hese files are not inventoried and are instead kept in a file cabinet that purportedly contains 'open' police investigations." Dkt. No. 1 at ¶¶ 73-74. Pursuant to CPD policy since 1983, however, all documents containing information obtained in the course of a criminal investigation, including *Brady* material, must be preserved and included in CPD's official "investigative files," and these investigative files must be produced to prosecutors, pursuant to the *Brady* obligations of police officers. *See Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007) (police duty to disclose exculpatory evidence discharged if evidence disclosed to prosecution).

Hence, the parties cannot conduct discovery as to a "street file" practice claim simply by the City's production of actual "street files" because no such files existed in 1993 (the year of the homicide with which Plaintiffs were charged and convicted).[1] Instead, potential evidence in support of this claim must be discovered by comparing page-by-page the documents in the State's Attorney's Office ("SAO") file with the documents found in CPD's investigative file for the same murder case. The premise of this methodology is that any police reports and records maintained in CPD's files, but missing from the litigation files of the prosecutor, were allegedly withheld in violation of *Brady*.

Rather than rely on any *Monell* "street file" discovery that Plaintiffs may conduct, the City intends to defend against Plaintiffs' "street file" practice claim proactively by engaging in its own discovery. Subject to significant qualifications explained below, the City endorses this "file comparison" method of discovery, although it rejects the premise that documents missing from prosecutor files is *per se* a *Brady* violation. By its nature, and in light of the elements necessary to prove a *Brady* claim, the discovery the City will pursue must be conducted in the following stages, and each stage has its own significant burdens, costs, and delays.

First, the City must identify the investigative files maintained City-wide for homicide investigations conducted from 1989 through 1996 (the relevant time period for this case). Based on document production in other recent cases in which a "street file" practice claim has been litigated, the City estimates that the total number of investigative files within these parameters will be in the hundreds.

Next, for purposes of the document comparison described above, the litigation files from the SAO corresponding to CPD's investigative files must be obtained. Given the age of these

---

[1] To date, Plaintiffs have adduced no evidence of any such "clandestine" files in this case, and instead rely on a purely conjectural theory to support their allegation. *See infra* at 8-9.

files, it is unlikely that the SAO will be able to find many of its files from 1989 to 1996. Then, for each homicide case for which there is both an SAO file and a CPD investigative file, these files must be reviewed to determine if any documents in CPD's investigative files are not in the corresponding files of the prosecutors.

But Plaintiffs' "underproduction" theory—that miscellaneous pieces of paper found in CPD's investigative files were not also found in the litigation files of the SAO—alone does not prove a *Brady* violation. For *Brady* to be contravened, the evidence must be both exculpatory and material, as well as not discoverable by the criminal defendant in the exercise of reasonable diligence. *See Carvajal v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008 (citations omitted). Hence, to establish a *Brady* violation, an analysis of the material and exculpatory value of any particular document or record in a specific case must be performed (most likely by an expert), which may require also obtaining criminal case files from the Circuit Court of Cook County, transcripts of proceedings, and appellate court records.

Even then, the presence of exculpatory and material evidence in CPD's investigative files, but not in the files of the SAO, does not necessarily establish that the City withheld this evidence; for instance, this material may have been included in the original SAO file but is no longer present there. Hence, oral discovery must be conducted as to the completeness of the SAO files at the time of the criminal prosecution and trial (approximately twenty-five to thirty years ago), as well as to whether they now include all the documents they did at the time of trial, in order to prove with reasonable certainty that these documents were missing from the litigation files of the SAO at the time of the criminal proceedings in question.[2]

---

[2] If discovery as to an SAO file appears to indicate that exculpatory documents from an investigative file were missing from the SAO file, the parties then would have to conduct discovery as to the corresponding litigation files of the criminal defense counsel to determine if those documents were present there at the time of arrest, prosecution, and trial. If in fact those documents were available to counsel for the criminal

As an alternative to conducting "street file" discovery in this manner, Plaintiffs have proposed that the parties simply rely on discovery previously conducted in three cases in which a *Monell* "street file" claim was litigated—*Fields v. City of Chicago* (10 C 1168), *Rivera v. Guevara* (12 C 4428), and *Kluppelberg v. Burge* (13 C 3963). However, the fact that Plaintiffs have made such a proposal is beside the point, as the City will conduct its own "street file" practice discovery regardless of what Plaintiffs do. In addition, Plaintiffs' proposal is flawed. The arrest and conviction of plaintiffs in those other cases occurred in the 1980s, years before the arrests of Hood and Washington in 1993 and their convictions in 1996. Thus, the relevant time frame for discovery related to a *Monell* "street file" claim for those other three cases does not overlap with the relevant time frame in these cases. Further, the production of investigative files in *Fields*, *Rivera*, and *Kluppelberg* was limited to files maintained in specific Detective Division Areas, while the scope of production envisioned by the City in the cases at hand is City-wide. Finally, although fact discovery is currently set to close on July 19, Plaintiffs have not made the investigative files from those other cases part of the evidentiary record here, despite advising the District Court of their proposal multiple times.

In sum, proper discovery related to Plaintiffs' *Monell* "street file" claim will entail an enormous expenditure of time, money, and effort. At the outset, hundreds of CPD's investigative files must be identified, retrieved, copied, redacted and Bates-stamped. The SAO then must attempt to locate in its archives its corresponding litigation files, and it must review and produce those files that it finds, subject to the same preparation costs incurred by the City, with the added delay of creating an inevitable privilege log. Finally, the parties must engage in the labor-intensive and time-consuming tasks of (1) comparing these files for evidence of

---

defendants, the absence of those documents from the SAO files is of no significance for purposes of *Brady*.

"underproduction"; (2) analyzing documents found in an investigative file but not in a companion SAO file to determine if they constitute *Brady* material; and (3) analyzing those SAO files to establish their completeness both now and at the time of the criminal prosecution. Therefore, due to the time-consuming, expensive, and laborious nature of this process, this Court should direct that discovery related to Plaintiffs' *Monell* "street file" claim be deferred until the close of all other fact discovery.[3]

### B. Discovery related to Plaintiffs' *Monell* "street file" claim is unnecessary; there is no proof that Defendants withheld from Plaintiffs any document containing material and exculpatory evidence in their underlying criminal cases.

Discovery related to Plaintiffs' *Monell* "street file" claim is also unnecessary: there is no proof that the City or the Individual Defendants violated *Brady* in these cases by withholding from Plaintiffs any document containing material and exculpatory evidence in their underlying criminal cases. Under *Monell* law, a constitutional violation is the necessary predicate for establishing municipal liability. In the absence of such a violation, proceeding with discovery on a *Monell* claim is futile, and moving for summary judgment on that claim, as well as Plaintiffs' *Brady* claim itself, is timely and appropriate.

Almost three and one-half years after filing their complaints, Plaintiffs have failed to identify a *single* document (regardless of whether it constituted *Brady* material) in the investigative file for the homicide for which they were arrested and convicted that was not in the companion SAO file. When asked in an interrogatory from the City what he alleges is the "street file" in these cases, and to identify and describe the documents it contains, Plaintiff Hood answered "on information and belief" that a "street file" exists for the homicide investigation in question "based on the City's policy and practice of keeping 'street files'" in various other

---

[3] As the City has advised the Court, it has planned but not yet begun this massive endeavor in the hope that it could be avoided.

cases—an extraordinary example of circular reasoning. Hood then stated over the course of almost six pages that this hypothetical street file "*may* include" (emphasis added) documentation of virtually every act of alleged misconduct by the Individual Defendants that was not disclosed to the SAO or to Plaintiffs. *See Pl. Tyrone Hood's Objections and Responses to Def. City of Chicago's First Set of Interrogatory Requests* (attached as Exh. B) No. 2, at 2-9. Thus, Hood has not established in the first instance that a "street file" exists in these cases, let alone what documents it contains and were suppressed. According to Hood, a "street file" *must* exist in these cases simply because "street files" allegedly existed in other cases, but mere speculation that documents exist cannot be the basis for a *Brady* claim. *See United States v. Roberts*, 534 F.3d 560, 572 (7th Cir. 2008) ("[criminal] defendant must provide some evidence other than mere speculation or conjecture that evidence was exculpatory and suppressed by the Government"); *United States v. Parks*, 100 F.3d 1300, 1307 (7th Cir. 1996) ("speculation is not enough to establish that the Government has hidden evidence.").

In addition to Plaintiff Hood's non-responsive interrogatory answers, there are other bases for concluding that the City and the Individual Defendants did not withhold from Plaintiffs any material and exculpatory documents. Depositions of Hood's and Washington's criminal defense counsel have been taken in this matter, and neither attorney testified that exculpatory evidence had been withheld from him. Most significantly, although the SAO litigation file and CPD's investigative file in these cases are in their possession, Plaintiffs have not identified any potential *Brady* material that was in the latter and not in the former.

Thus, even assuming *arguendo* that Plaintiffs could establish that the City had a general "street file" practice, their *Monell* claim fails where, as here, Plaintiffs cannot show that any Defendant withheld material and exculpatory evidence from them in these cases, whether by

"intentionally secreting discoverable information in the clandestine files commonly referred to as 'street files'" or by any other means. Accordingly, Defendants are poised to move for summary judgment on Plaintiffs' *Monell* "street file" and *Brady* claims at the close of fact discovery.

In the interim, all parties may proceed toward the completion of non-"street file" fact discovery free of the "distraction" not only of simultaneously briefing a summary judgment motion but of conducting oppressive discovery on Plaintiffs' *Monell* "street file" claim. In addition, consistent with the District Court's observations, Plaintiffs would have the opportunity to conduct discovery they deem necessary to defeat a motion for partial summary judgment on their *Brady* claim.

Defendants as well as Plaintiffs, however, have their own discovery to complete in anticipation of filing their motion for summary judgment on Plaintiffs' *Brady* and *Monell* "street file" claims. This is because Plaintiffs' counsel asserted at the hearing that there are various "things that are *Brady* material in the case, but it would be unfair to have us have to write out in detail, in factual detail at this point why we believe we have a *Brady* claim." *Id.* at 9. But Plaintiffs could not be more wrong about this. According to Plaintiffs, the parties "are very much at the tail end of [fact] discovery," *id.* at 5, and they must now commit themselves to a position supported by evidence (if indeed there is such evidence) that a "street file" exists and a *Brady* violation was committed. Thus, the City is following up to ensure that Plaintiffs have complied with their discovery obligations, including providing complete and unequivocal answers to Defendants' contention interrogatories that now are due, and if necessary it will seek the assistance of the Court in this regard. As Judge Wood stated, now is the time for defense counsel to "sort of wrap up [the *Brady*] issue and tee it up through [their] discovery . . . then [Defendants] can go ahead and file the motion" at the close of fact discovery. Exh. A at 15.

10

**Conclusion**

A cost/benefit analysis suggests that deferring discovery on Plaintiffs' *Monell* "street file" claim until the close of other fact discovery, followed by Defendants filing a motion for summary judgment on this claim and Plaintiffs' *Brady* claim, is the most efficient way for this litigation to proceed. During the pendency of such a motion, the parties can move forward with expert discovery on other issues. If the motion is granted—and Defendants believe they will prevail on the merits—there will be no need to conduct burdensome and lengthy *Monell* "street file" discovery, and if the motion is denied, the parties will be in the same position they are in now. Accordingly, Defendant City of Chicago moves this Court to direct the parties to conduct discovery in phases in the manner and for the reasons explained above, and any further relief the Court deems just.

Dated: June 10, 2019   RESPECTFULLY SUBMITTED,

/s/ George J. Yamin, Jr.
GEORGE J. YAMIN JR., Attorney No. 6217483
*One of the Attorneys for the City of Chicago*

James G. Sotos
Jeffrey N. Given
Joseph M. Polick
David A. Brueggen
Sara J. Schroeder
George J. Yamin, Jr.
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd, Suite 1240A
Chicago, Illinois  60604
Tel: (630) 735-3300
gyamin@jsotoslaw.com

**CERTIFICATE OF SERVICE**

   I certify under penalty of perjury pursuant to 28 U.S.C.A § 1746 that the foregoing is true and correct, that on June 10, 2019, I electronically filed the foregoing **Defendant City of Chicago's Motion to Structure Discovery** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record on the below Service List.

*Attorneys for Plaintiff Tyrone Hood*
Jonathan Loevy
Gayle Horn
Roshna B. Keen
Heather Donnell
Loevy& Loevy
311 N. Aberdeen Street, 3rd Floor
Chicago, IL 60607
312)243-5900
jon@loeyy.com
elizabethm@loeyy.com
gayle@loeyy.com
roshna@loeyy.com
heather@loeyy.com

*Attorneys for Individual Defendants*
Eileen E. Rosen
Catherine M. Barber
James B. Novy
Stacy A. Benjamin
Theresa B. Carney
Patrick Moran
Rock Fusco & Connelly
321 N. Clark Street, Suite 2200
Chicago, IL 60654
(312)474-1000
erosen@rfclaw.com
cbarber@rfclaw.com
jnovy@rfclaw.com
sbenjamin@rfclaw.com
tcarney@rfclaw.com
pmoran@rfclaw.com

*Attorneys for Plaintiff Wayne Washington*
Steven H. Fine
Law Office of Steven H. Fine
53 West Jackson Boulevard, Suite 1260
Chicago, IL 60604
312-922-0855
sfinelaw@hotmail.com

Steven Allen Greenberg
Steven A. Greenberg, LRD
53 W. Jackson, Suite 1260
Chicago, IL 60604
312-879-9500
greenberglaw@me.com

/s/ George J. Yamin, Jr.
GEORGE J. YAMIN, Jr., Attorney No. 6217483
One of the Attorneys for City of Chicago