**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TYRONE HOOD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16 CV 1970 |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | Honorable John F. Kness |
| | ) | Magistrate Judge Maria Valdez |
| Defendants. | ) | |

| | | |
|---|---|---|
| WAYNE WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16 CV 1893 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | Honorable John F. Kness |
| | ) | Magistrate Judge Maria Valdez |
| Defendants. | ) | |

**PLAINTIFFS' JOINT RESPONSE IN OPPOSITION TO DEFENDANTS'**
**JOINT MOTION TO BIFURCATE PLANITFFS' *MONELL* CLAIMS**
**FOR TRIAL AND TO STAY EXPERT DISCOVERY ON THOSE CLAIMS**

## Introduction

Throughout this litigation, in motion after motion, the Defendants have sought to bifurcate away Plaintiffs' *Monell* claim. In this latest iteration—the fifth such request—the Defendants ask this Court to ignore the rulings of Judges Wood, Shadur and Valdez, halt expert discovery midstream and bifurcate trial. Rehashing the same arguments they have previously made and which have previously been rejected, the Defendants' motion is no more compelling now than in the past. In fact, it is less so given the procedural posture of this case: *Monell* fact discovery has been completed; Plaintiffs have retained and disclosed their two *Monell* experts; and those experts' depositions are scheduled to occur shortly (September 9 and October 8 respectively). Any undue burden or purported savings only inures to the City. Rule 42(b) does not authorize such a one-sided analysis.

Indeed, the Defendants have not acknowledged, let alone addressed, the unfair prejudice to the Plaintiffs from bifurcation. Instead, they claim that introduction of other complaints and the mere mention of Jon Burge's name render the *Monell* claim so prejudicial, it must be bifurcated. But that hyperbole is not well taken. Limiting instructions have long been held sufficient in criminal cases, where liberty is at stake, to delineate what evidence is relevant for what claim and what defendant. That these also work in the *Monell* context is borne out by *Rivera v. Guevara*, No. 12 C 04428 (N.D. Ill.), a case in which the *Monell* claim against the City was tried concurrently with the underlying constitutional claims. The *Rivera* jury found that some, but not all of the Defendants were liable and that the City was liable too. Ex. A (*Rivera* verdict). Had the *Monell* evidence (much of which is identical to that at issue here) been so prejudicial and the limiting instructions insufficient to cure the Defendants' guilt-by-association argument, then all of the Defendants would have been liable for all of the claims.

Nor are the Defendants any more successful in arguing that the mere mention of Burge warrants bifurcation. Limiting instructions also can address the Defendants concerns on this score,

1

particularly given Burge's small role in this case. Moreover, there are ways to avoid using Burge's name without excising all the evidence that relates to him and establishes the City's knowledge of its interrogation practices.

At bottom, the City simply wants the *Monell* claim to go away, but that is not a basis for bifurcation. It should not be lost on this Court that the Defendants filed their renewed motion to bifurcate just after Plaintiffs served their expert reports—powerful reports that prove the merits of Plaintiffs' *Monell* claims. If the Defendants can avoid *Monell* claims simply because Plaintiffs have demonstrated their merit, then the City will be able to avoid all accountability for their policies and practices. That is not what *Monell* contemplates. Plaintiffs spent decades in prison for crimes they did not commit and this Court should not deprive them of "a merits determination on a *Monell* claim." *See Maysonet v. Guevara*, No. 18 CV 2342, 2020 WL 3100840, at *5 (N.D. Ill. June 11, 2020).

## Legal Standards

This Court has discretion to decide particular claims or issues in separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b); *Krocka v. Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). The Court must "be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party." *Houseman v. U.S. Aviation*, 171 F.3d 1117, 1121 (7th Cir. 1999). Bifurcation is the exception, not the rule, and separate trials should not be ordered "unless such a disposition is clearly necessary." *Real v. Bunn-O-Matic*, 195 F.R.D. 618, 619 (N.D. Ill. 2000); *see also* FED. R. CIV. P. 42(b), advisory cmts. In considering bifurcation, the court "should remain mindful of the traditional role of the factfinder; *i.e.* to make an ultimate determination on the basis of a case presented in its entirety." *Real*, 195 F.R.D. at 620. Since the Seventh Circuit decided *Thomas v. Cook County*, 604 F.3d 293, 305 (7th Cir. 2009), "the weight of authority holds that bifurcation is now heavily disfavored," *Awalt v. Marketti*, 2014 WL 1161500, at *10 n.2 (N.D. Ill. Apr. 9, 2012).

Moreover, this is not an ordinary motion for bifurcation; instead, it is the fifth motion that the Defendants have filed, and the prior rulings—by three different Judges—are the law of the case. The Seventh Circuit has instructed that "[t]he law of the case doctrine 'is a rule of practice, based on sound policy that, when an issue is once litigated and decided, that should be the end of the matter.'" *Evans v. City of Chicago*, 873 F.2d 1007, 1014 (7th Cir. 1989) (quoting *Barrett v. Baylor*, 457 F.2d 119, 123 (7th Cir. 1972)). In the context of a case that has been reassigned to a new judge, "[t]he doctrine of law of the case requires the second judge in a case in which there has been a reassignment to abide by the rulings of the first judge unless some new development, such as a new appellate decision, convinces him that his predecessor's ruling was incorrect." *Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1339 (7th Cir. 1997) (citing *Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997)); *see also Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007). Indeed, this Court should not disturb the prior rulings by Judges Shadur, Wood and Valdez unless there is a change in law or fact that warrants revisiting them; there is no such change here. *Minch*, 486 F.3d at 301.

## ARGUMENT[1]

### A.  No Basis Exists to Stay Expert Discovery

As an initial matter, the Defendants' motion to stay expert discovery—filed only after Plaintiffs retained and disclosed their experts—is not well taken. No new fact has developed or change in the law occurred that warrants deviation from Judge Valdez's prior rulings that denied Defendants' attempt to sequence *Monell* discovery and set an expert discovery schedule. Defendants' argument boils down to a complaint that Plaintiffs' expert reports are too thorough, but that is not the metric for bifurcation. Were it so, it would create perverse incentives: Defendants would be able

---

[1] In addition to the arguments set forth below, Plaintiffs expressly incorporate and refer the Court to the support and arguments in their motion to strike and reply. Docs. 381 & 381.

to bifurcate if Plaintiffs' experts proved the merits of Plaintiffs' claims against them. That standard is not found anywhere in Rule 42 or the case law interpreting it.

Defendants' argument for staying expert discovery is two-fold: First, according to the Defendants, Judge Wood invited them to do so and second, *Bradford v. City of Chicago*, No. 16 CV 1663, 2019 WL 5208852 (N.D. Ill., Oct. 16, 2019) purportedly supports their position. Neither argument has merit.

First, Judge Wood never stated or even suggested that expert discovery should be stayed, let alone that it should be stayed *after* Plaintiffs disclosed their experts. Instead, what Judge Wood said was to "work with Judge Valdez to come up with a realistic discovery schedule" and that she would entertain motions for summary judgment at the end of that schedule. Doc. 383-4 (2/11/19 Hearing Transcript) at 17. As Judge Wood acknowledged, Judge Valdez is the one supervising discovery— fact and expert alike—and she has already heard and rejected the Defendants' attempt to stay *Monell* discovery. On that score, Judge Valdez specifically held:

> [T]here has been a few rulings already. Judge Wood had made a ruling. Judge Shadur had made a ruling. The Court heard you out. And in light of the previous rulings denied it before. So I'm going to deny it once again. So the motion is denied.

Doc. 383-5 at 5-6.

Nothing that Judge Wood said *before* Judge Valdez ruled changes Judge Valdez's ruling denying Defendants' attempt to delay *Monell* discovery or warrants revisiting it. In fact, the Defendants did not even attempt to ask Judge Valdez to stay expert discovery, claiming that because they were also seeking to bifurcate trial, they could bypass Judge Valdez and bring a global motion for relief before this Court. But the trial that they are seeking to bifurcate has not even been scheduled and the only issue on the immediate horizon is expert discovery. Doc. 238 (7/14/2020 Order Granting Extension of Expert Discovery). As such, any request to bifurcate is premature. *See Jackson v. City of Chicago*, No. 14 C 6746, 2017 WL 8199322, at *3 (N.D. Ill. Dec. 12, 2017) ("[T]he

4

better time to evaluate [prejudice from trying individual and *Monell* claims together] is shortly before

trial, when the court (and the parties) will have a much better understanding of the evidence . . . .");

*Allison v. Gallagher*, No. 10 C 6887, 2012 WL 4760863, at *2 (N.D. Ill. Oct. 5, 2012) (finding that

"any concerns about bifurcation *at trial* are premature at this time. Once it becomes clear which, if

any of Plaintiff's claims will proceed to trial, the Court will reevaluate whether a single trial or a

bifurcated trial makes more sense at that time.").

Second, the Defendants suggest that *Bradford* supports their position on bifurcation. But

*Bradford* is distinguishable from the instant case. *Bradford* involved a suicide in a City of Chicago

Police Department lockup. *Bradford*, 2019 WL 5208852 at *1. *Bradford* initially filed suit in Illinois

state court alleging Illinois state law claims, but after completing discovery, the plaintiff filed an

amended complaint against the individual police officer defendants under § 1983 and the defendant

officers removed the case to federal court. *Id*. At that time, the plaintiff was permitted to amend his

complaint again to add a *Monell* claim against the City. *Id*.

The defendants in *Bradford* filed their first and only motion to bifurcate before the close of

fact discovery; indeed, before an expert discovery schedule had even been set. As such, *Bradford*

found relevant that expert discovery might be avoided altogether. *Id*. at *5.

The same concerns do not animate the bifurcation inquiry here. Unlike *Bradford*, this is the

Defendants' fifth bite at the apple: The prior rulings denying bifurcation of both discovery and trial

are binding law of the case. *Best,* 107 F.3d at 546; *Minch*, 486 F.3d at 301.[2] Moreover, and also unlike

*Bradford*, the Defendants filed the instant motion to bifurcate well after expert discovery is underway:

Plaintiffs retained and disclosed their expert reports in June and the depositions of those experts,

some of which have already occurred, will be finished by early October. Doc. 238 (setting Oct. 18th

[2] Plaintiffs have more fully set forth the application of the law of the case doctrine in their motion to strike Defendants' motion to bifurcate and their reply. Plaintiffs refer and reference those arguments here. *See* Docs. 381 & 384.

5

deadline for deposition of Plaintiffs' experts). Likewise, Defendants' expert reports are due on December 16th, and because there is no stay on expert discovery, Defendants have undoubtedly already retained experts to meet their deadline. As such, the savings in *Bradford* from bifurcating *Monell* are simply not available here.[3]

## B.    No New Facts Have Developed Since the Last Denial of Defendants' Motion

As Plaintiffs set forth in their motion to strike, the prior rulings of Judges Shadur, Wood and Valdez are the law of the case—and govern the instant dispute absent a change in law or fact. Docs. 381 & 384. At the motion to strike hearing and in their briefs, the Defendants argued that there are three new facts that warrant revisiting bifurcation: the *Monell* expert reports, which digest the approximately 1200 Complaint Register ("CR") files that the City produced in this litigation; the references in police practices expert Tim Longo's report to Jon Burge; and Plaintiffs' production of civil complaints filed against the Individual Defendants which the Defendants should have produced long ago. None of these arguments have merit.

### 1.    Plaintiffs' Expert Reports Are Not New Facts and the Prior Courts Already Rejected the Burden of Responding to Them as a Basis to Bifurcate

First, the Defendants complain about the burden of expert discovery and of analyzing the *Monell* documents in this case. But that is nothing new. The Defendants have previously argued to the Court that it would be burdensome to conduct expert *Monell* discovery, including on the CR files. To that end, in December 2018, the Defendants argued unsuccessfully to Judge Wood that

> CR files do not "speak for themselves" as to their relevance for Plaintiffs' *Monell* claims; hence, the parties will need to retain and produce expert witnesses to opine about their meaning and those opinions will be intensely litigated.

---

[3] Moreover, Rule 42 does not simply look at the savings to one party and ignore the other. *See Houseman*, 171 F.3d at 1121. Indeed, Plaintiffs, having expended the resources and effort to retain and disclose experts based on the prior rulings and would be deeply prejudiced were this Court to halt *Monell* discovery at this late stage.

6

Doc. 195 (City Renewed Motion to Bifurcate) at 8.[4] Judge Wood, however, did not find that burden to be a basis to bifurcate then and it is not so now. Doc. 383-3 (Hearing Transcript, 2/11/19) at 15; see also Doc. 231 (Hood); Doc. 160 (Washington). That is particularly so because the fact that Plaintiffs' experts have analyzed 1,230 CR Files in support of their *Monell* claims is a problem of the Defendants own making.

Taking a step back, Plaintiffs lodged a *Monell* claim against the City of Chicago, arguing that it had a policy and practice of failing to discipline officers who engaged in misconduct, which led to the constitutional violations at issue here. To prove that claim, Plaintiffs sent discovery requests to the City seeking CR Files in the Spring of 2016, at the very beginning of discovery. The City outright objected to producing this discovery, citing to its pending motions to bifurcate, and then, when those motions were denied, claimed production of those files was overly burdensome. Plaintiffs repeatedly offered to narrow their requests in multiple ways, including their offer to agree to a smaller subset of CR Files if the Defendants agreed to stipulate that those CR Files were a representative sample. Doc. 172 (Plaintiffs' Motion to Compel) at 4-5. The Defendants refused that offer, preferring instead to use the 1,200 CRs as a hook to claim that *Monell* discovery was overly burdensome and should be bifurcated. *Id.* at 5-6; Doc. 195 at 7-8 (arguing that Judge Valdez's order to produce the CR Files was overly burdensome). In other words, the City rejected Plaintiffs' offer to limit the universe of CR Files it needed to produce, gambling that if it told the Court that it had produce 1,200 CRs—instead of some smaller number—it might convince the Court that it was too burdensome to litigate the *Monell* claim and it might finally be able to bifurcate it away. Docs. 195 (Hood) & 142 (Washington). Having made the strategic decision to go down that path, the

---

[4] Similarly, in seeking additional time for discovery, the Defendants complained that Plaintiffs will have "at least five experts" and "at least one *Monell* expert" and that the *Monell* expert "must review 88,000 pages of documents before rendering an opinion"—*i.e.*, the approximately 1,200 CR Files. Doc. 329, at 3.

Defendants cannot now claim that the analysis of the 1,200 CRs is overly burdensome or unfair to the City. Indeed, Plaintiffs have had to invest the time and resources to analyze these files already.

### 2. References to Jon Burge in Tim Longo's Report Are Not a Basis to Bifurcate

Second, the Defendants claim that Plaintiffs focus on Jon Burge is new—and so prejudicial that it warrants bifurcation. But Burge and the allegations associated with him have long weaved their way through this case. For example, the Defendants' defense in this case is that Plaintiffs' post-conviction attorneys hoodwinked an experienced *New Yorker* writer into writing a false narrative that exonerated Plaintiffs. *See, e.g.*, Doc. 352 at 8-10. That article—the heart of the Defendants' case—itself discusses Burge and his legacy, explaining that "Chicago cops, however, have long been criticized for being overly aggressive" and that Burge was one such cop. Ex. B at 2 (*New Yorker* Article). As the article explains, "Burge was eventually fired for 'systematic' misconduct." *Id.*

Indeed, Burge's name and the allegations and findings against him appear throughout the parties' productions: He is in the CR Files that the City produced; in documents produced very early on in the litigation, such as the Response to the 2004 Special Prosecutor's Report; in documents produced later such as the Goldston Report; and in depositions of various defendants and witnesses.[5] Moreover, the Defendants themselves were hip to Burge's connection to Plaintiffs' case, asking Plaintiffs' Rule 30(b)(6) witness during his deposition about "Burge's legacy in Tyrone Hood's wrongful conviction?" Ex. C (Leonard Dep.) at 118:9-10. As the witness explained:

> Jon Burge had a practice of coercing false confessions and framing people for crimes
> that they did not Burge created a culture within the Chicago Police Department that

---

[5] For example, the CR File for Marcus Wiggins (CR 93691), included reference to Jon Burge, as well as, a civil complaint naming Defendants Boudreau and O'Brien along with Commander Burge as a supervisor at Area 3 where Mr. Wiggins was coerced into falsely confessing to a murder. *See* CITY 20068-20805. Early in discovery, Plaintiffs also produced the April 24, 2007 response to the special prosecutor's report on Jon Burge and his associates' systematic torture during interrogations, produced as HOOD 6105-6165.

tolerated the abuse and torture and wrongful conviction of innocent people in the City of Chicago. That is what happened to Tyrone Hood and Wayne Washington. *Id.* at 118:16-20 & 119:24b-120:4. When Defendants pressed for additional specifics and ties to the named Defendants in this case, the witness referred Defendants to Plaintiffs' post-conviction proceedings, and certificate of innocence petitions, among other parts of the record in this case. *Id.* at 122:13-123:7. And finally, as if that were not enough, Judge Valdez instructed the parties to update their interrogatory responses and Plaintiffs did so to further outline Burge's (admittedly limited) role in this case. Doc. 243 (2/13/2020 Minute Order); *see also* Doc. 362 at 4 (Joint Status Report). Those supplements were timely. Doc. 243 (extended by the Court's Covid-19 orders).

That the Defendants were on sufficient notice of Burge's involvement in this cases is borne out by the Defendants' own motion: The Defendants have not identified a single piece of additional discovery that they need, or even that they would have taken had they allegedly been aware sooner of Burge's role. Instead, the Defendants simply claim that any mention of Burge's name swings the prejudicial pendulum over to the side of bifurcation. But that hyperbole cannot be sanctioned.

To start, Burge and the attendant allegations that led to his firing are not the centerpiece of Plaintiffs' *Monell* claim or Longo's report. They provide evidence that the City was on notice that its detectives were using unconstitutional interrogation methods. That is it: Plaintiffs have no intention of parading around Burge's name or trying to prove guilt by association. To the contrary, and to the extent necessary, Plaintiffs could simply refer to an unnamed Commander. If the Defendants were willing to stipulate that the City had notice of its officers' practice of unconstitutional interrogation during the relevant timeframe, Plaintiffs would not need to mention Burge's name at all. Such a stipulation is directly rooted in the evidence: In 1990, CPD investigators Francine Sanders and Michael Goldston issued a report finding that there was "systematic torture" at Area 2. Ex. D at 6 (Goldstein Report). And in 2004, a Special Prosecutor found that there was abuse at Areas 2 and 3. Ex. E at 16.

If the City is willing to stipulate to findings its own investigators made (on its behalf), then the Defendants' concerns about being prejudiced by Burge being mentioned are eliminated completely. His name will not come up in the case at all—*Monell* or otherwise. But the City cannot have it both ways: If the City is refusing to enter into such a stipulation, then it can hardly complain about the fallout of its tactical decision. That is particularly so given the narrow scope in which Burge's name could arise in this case. Indeed, there is no reason why limiting instructions cannot suffice to address the Defendants' concern. *See, e.g., U.S. v. Gomez*, 763 F.3d 845, 860-61 (7th Cir. Aug. 8, 2014) (*en banc*) (limiting instructions sufficient to manage prejudice caused by other-acts evidence, and commenting that "[l]ay people are capable of understanding the foundational principle in our system of justice that we try cases, rather than persons."); FED. R. EVID. 105. *See also Marshbanks v. City of Calumet City*, No. 13 C 2978, 2015 WL 1234930, at *5 (N.D. Ill. Mar. 16, 2015); *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 1161500, at *13 (N.D. Ill. Apr. 9, 2012).

Finally, it is worth noting that to the extent that the Defendants are trying to claim that Longo's statements regarding Burge are inflammatory and therefore require bifurcation, that too has no merit. Longo stated that Burge engaged in systematic torture. As noted above, that is the precise conclusion that the City's own investigators, Goldson and Sanders reached in 1990 and the Special Prosecutor reached in 2004. Ex. D at 6. There is similar support for Longo's assertion that Burge's role as a Commander would have had a trickle-down effect. As the Special Prosecutor explained, because Burge was the Commander of the Unit, "[c]ommon sense compels the conclusion that those who worked for him would not be concerned about their own mistreatment of prisoners if their commander mistreated them." Ex. E at 12. Given that, Longo's conclusions are far from incendiary.

### 3. Civil Complaints Filed Against the Individual Defendants Should Have Been Produced Long Ago and Are No Basis for Bifurcation

Third, and finally, the Defendants claim that new documents produced in conjunction with Judge Valdez's order requiring the parties to supplement their interrogatory responses warrants bifurcation. This is meritless. The vast majority of the discovery about which the Defendants complain is discovery that Plaintiffs requested from the Defendants and which the Defendants withheld; namely, the complaints filed in civil lawsuits against them.

Early in discovery, Plaintiffs requested all Defendants produce any "Complaints" against them, which included any legal proceedings. Ex. F at Definition No. 5; Ex. G at No. 5; Ex. H at No. 6. Defendants objected to doing so notwithstanding their relevance. Having improperly withheld discovery, Defendants cannot not now complain prejudice or lack of knowledge related to lawsuits to which they were a named party. Moreover, there is no need for Defendants to investigate these complaints as they were named Defendants in them; presumably, they know what happened in the case, whether liability was ever imposed or whether they were ever disciplined as a result. As such, the production of long overdue civil complaints within the Defendants' knowledge and possession are not "new facts" that support bifurcation.

**C.     The Remainder of the Defendants' Arguments Have Already Been Rejected and Those Rulings are the Law of the Case**

The remainder of the arguments raised by the Defendants are ones that they have raised before and which the Court has already rejected. There is no basis to revisit those rulings here.

**1.   The Defendants' Argument that Plaintiffs Will Have to Prove an Individual Defendant Violated Their Rights Has Been Raised and Rejected**

The Defendants argue that because Plaintiffs will have to prove that an individual Defendant violated their rights to succeed on a *Monell* claim, this Court should reconsider bifurcation. But this argument has been previously raised, re-raised and repeatedly rejected by the prior Judges that have ruled upon bifurcation and the Defendants offer no change in law or fact, and no error made by the prior Judges, on which to base their motion to reconsider.

11

Notably, in 2016, in their initial motions for bifurcation, Defendants argued that the City could not be liable unless the named Defendants were found liable. Doc. 71 (Hood) at 8-11; Doc. 51 (Washington) at 8-11. The Defendants parroted this same argument two years later in their renewed motion to bifurcate, claiming that "[b]ifurcation of Plaintiffs' *Monell* claims is also proper because in this case, Plaintiffs' success depends entirely on proving the liability of the individual defendants." Doc. 195 at 10; *see also id.* at 11-13.

Neither Judge Shadur nor Judge Wood found this argument compelling—not when it was initially filed at the outset of the litigation nor when it was re-asserted two years later. That is for good reason. Noticeably absent from the Defendants' current brief is any mention, let alone discussion, of *Thomas v. Cook County*, 604 F.3d 293 (7th Cir. 2016). As *Thomas* makes clear, "a municipality can be held liable under *Monell* even when its officers are not, unless such a finding would create an inconsistent verdict." *Id.* at 305; *see also Swangian v. City of Chicago*, 775 F.3d 953, 962 (7th Cir, 2015). One of Plaintiffs' theories of *Monell* liability is that the City maintained a practice of keeping street files; that is, files that contained information about the case but that were not disclosed to the prosecutor or the defense. "Courts in this district have recognized that under similar facts, *Monell* liability against the City is not necessarily dependent on a finding of liability against the individual officers." *Maysonet*, 2020 WL 3100840, at *2. For example, in *Gomez*, the court denied bifurcation where a similar theory was present because "the jury could presumably find that the Defendant Officers put evidence in its proper place within the Chicago Police Department files, but the City had no mechanism for guaranteeing that these files were turned over in the litigation process." *Maysonet*, 2020 WL 3100840, at *2 (quoting *Gomez v. Guevara*, No. 18 C 3335, 2019 US Dist. LEXIS 155120, at *8, *10 (N.D. Ill. April 8, 2019)).

The Defendants try to suggest that there has been some change in circumstance since Judges Wood and Shadur rejected this argument because Longo admits that he assumed, for purposes of

his report, that Plaintiffs' version of events is true. That argument borders on frivolous. All that Longo said in his report is that he was crediting Plaintiffs' version of events—a typical and well-accepted approach for expert witnesses. *See Scott v. City of Chicago*, No. 07 C 3684, 2010 WL 3034188, at *3 (N.D. Ill. July 27, 2010) ("It is of course permissible for an opinion witness, in arriving at his or her conclusions, to premise that result on one side's view of contested events . . ."). Longo never opined that *Thomas* did not apply to Plaintiffs' case or that the named Defendants had to be liable before the City could be. Nor had he done so would any such opinion be admissible. Longo cannot instruct this Court or a jury on what the applicable law is and whether the situation in *Thomas* applies. That is the function of this Court. *See United States v. Caputo*, 382 F. Supp. 2d 1045, 1049 (N.D. Ill. 2005) ("An expert cannot offer an opinion about what the law requires or permits because the judge, not the witness, instructs the jury about the relevant law.").

### 2.  The Limited Consent Also Has Been Raised and Rejected

Similarly, the Defendants suggest that the City's offer of a limited consent warrants bifurcation. This too is Groundhog Day. The Defendants raised this issue in 2016 and again in 2018, and both times it was rejected. Doc. 71 (Hood) at 11-12 & Ex. 1; Doc. 51 (Washington) at 11-12 & Ex. 1; Doc. 195 at 12-13 & Ex E; Doc. 383-1 (1/9/17 Hearing Transcript) at 3-4 (Shadur, J. denying bifurcation); Doc. 383-2 (4/11/17 Hearing Transcript) at 3-4 (Wood, J. denying bifurcation); Doc. 383-3 (2/11/19 Hearing Transcript) at 11-12 (expressly declining to enter consent).

The Defendants offer no new reason why this Court should accept it's consent as a basis for bifurcation, stating only that the consent allows Plaintiff to recover compensatory damages. Of course, that was as true two and four years ago as it is today. Moreover, the consent that the City is offering notably only applies if the Defendant Officers are found liable. It does nothing to address the liability gap raised above—where the constitutional rights of Plaintiffs were violated by a municipal practice and municipal employee, but not a named Defendant.

For that reason and others, courts have repeatedly rejected the consent altogether, and as a reason to permit bifurcation. As the Seventh Circuit has observed, this so-called "consent" is not authorized by the Federal Rules of Civil Procedure, and it is therefore procedurally deficient. *Swanigan*, 775 F.3d at 959-62. It is not a Rule 68 offer of judgment, because it does not satisfy Plaintiffs' demands. *Id.* It also is not a Rule 16 stipulation agreed upon by the parties, both because it does not stipulate to any facts and because Plaintiffs reject it. (That might be different if the City was agreeing to stipulate that it had a policy of coercive interrogation or of suppressing exculpatory information in street files during the relevant time period.) Finally, it is not a permissible responsive pleading under Rule 7(a). *Haven v. Polksa*, 215 F.3d 727, 732 (7th Cir. 2000). As a result, the Court should disregard the City's proposed consent entirely—it is not something that can be imposed on Plaintiffs in order to bifurcate the *Monell* claim and remove the City from the case.

### D. Bifurcation Will Prejudice Plaintiffs and Delay These Already Four-Year Old Cases

Finally, the bifurcation calculus looks not only at the prejudice to the City, but also at whether there would be unfair prejudice to the Plaintiffs. *See Houseman*, 171 F.3d at 1121. That would certainly be the case here.

To start, Plaintiffs have been proceeding in this case with the understanding that the *Monell* claim is going forward. Relying on the decisions of Judges Shadur, Wood and Valdez, Plaintiffs conducted discovery, retained experts and served expert reports. To reverse course now—based on no change in law or fact—would be patently unfair.

Moreover, bifurcation at this juncture would create substantial delay in an already old case. It is perhaps a tautology to say that one trial is faster than two—particularly given the extensive factual overlap here. Bifurcation will necessarily mean two rounds of motions *in limine*, two rounds of jury selection, two rounds of opening statements, two rounds of testimony, two rounds of closing

14

arguments and two rounds of post-trial motions. That is hardly the savings that Defendants claim. *See Ratliff v. Chicago*, No. 10 C 739, 2012 WL 5845551, at *6 (N.D. Ill. Nov. 19, 2012).

In addition, the Defendants' prediction that a single trial will add weeks to the length of the trial is simply erroneous. As the Defendants' motion makes clear, the primary additional evidence that would be introduced on the *Monell* claim at trial is testimony of experts. In Plaintiffs' case, that universe consists of two people: Plaintiffs' statistical expert, Dr. Bill Bridges and Plaintiffs' police practices expert, Tim Longo. (Notably, Mr. Longo would have to testify at both trials were the case bifurcated because his opinions address both the underlying and *Monell* claims.). As such, at most, the *Monell* piece of the trial will add a few days—not a few weeks.

That is particularly true because of the overlap in evidence between the underlying and *Monell* claims. For example, in the *Fields v. City of Chicago*, No. 10 C 1168 (N.D. Ill) and *Rivera v. Guevara*, No. 12 C 04428 (N.D. Ill.) trials, which involved street file *Monell* claims similar in time and manner to that at issue here, the street file evidence was relevant to all claims. When the defendants tried to deny they kept a street file, the plaintiffs were able to demonstrate that the practice was to keep such files, and that any denial would have actually been inconsistent with the normal procedures. Similarly, when defendants tried to claim that street files would never have contained  exculpatory evidence, plaintiff was able to demonstrate that as a matter of routine practice, the street file was exactly where detectives stashed the exculpatory material they did not want to disclose. Absent that policy and practice claim, plaintiff would have been unfairly stuck with defendants' insistence about what the practice was. As long as the evidence is coming in anyway— and it is given its clear relevance—the *Monell* claim should proceed.

## Conclusion

For all of the reasons stated herein, and in Plaintiffs' motion to strike briefing, Docs. 381 & 384, the Defendants' renewed motion to bifurcate and stay expert discovery should be denied.

Respectfully submitted,

**WAYNE WASHINGTON**

/s/ Steven Greenberg
*One of the Attorneys for Plaintiff*
*Washington*

**TYRONE HOOD**

/s/ Gayle Horn
*One of the Attorneys for Plaintiff Hood*

GREENBERG TRIAL LAWYERS
Steven A. Greenberg
Steven Fine
53 W. Jackson Blvd., Suite 1260
Chicago, Illinois 60604
(312) 879-9500

LOEVY & LOEVY
Jon Loevy
Gayle Horn
Heather Lewis Donnell
Scott Drury
Katie Roche
311 N. Aberdeen, 3d Floor
Chicago, Illinois 60607
(312) 243-5900

16

## <u>CERTIFICATE OF SERVICE</u>

I, Gayle Horn, an attorney, certify that on September 3, 2020, I filed the foregoing Plaintiffs' Joint Response in Opposition to Defendants' Joint Motion to Bifurcate Plaintiffs' *Monell* Claims and Stay Discovery on Those Claims via the Court's CM/ECF filing system and thereby caused a copy of the same to be served on all counsel of record.

/s/ Gayle Horn