IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WAYNE WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16 C 1893 |
| v. | ) | |
| | ) | Magistrate Judge |
| CITY OF CHICAGO, KENNETH | ) | Maria Valdez |
| BOUDREAU, JOHN HALLORAN, | ) | |
| BERNARD RYAN, ROBERT | ) | |
| LENIHAN, JOHN POLUSZNY, | ) | |
| MICHAEL CLANCY, JOHN BALL, | ) | |
| JAMES O'BRIEN, GERALD | ) | |
| CARROLL, ELIZABETH SHINN, | ) | |
| and JOHN STOUT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **ORDER**

This matter is before the Court on Defendants' Motion to Compel Expert Timothy Carter's Re-Deposition and Production of Expert Documents to Remedy Plaintiffs' Improper Invocation of the Work Product Privilege [Doc. No. 246].[1] For the reasons that follow, the motion is granted in part and denied in part.

---

[1] The identical motion was filed in the related case *Hood v. City of Chicago*, No. 16 C 1970, which has been consolidated with this case for pretrial purposes. Plaintiffs Tyrone Hood and Wayne Washington filed a joint response to Defendants' motion. To conserve judicial resources, the same order will be entered in both cases, addressing all arguments raised in the motions.

## BACKGROUND[2]

Plaintiffs allege that the defendant officers wrongfully arrested them for murder and fabricated evidence, threatened witnesses, and withheld exculpatory evidence. Former Illinois Governor Pat Quinn commuted Plaintiff Hood's sentence on January 12, 2015, and the Cook County State's Attorney's Office dismissed the charges against both Plaintiff Hood and his co-defendant Plaintiff Washington on February 9, 2015.

Plaintiffs have disclosed eight expert witnesses in this case, including Timothy Carter, an expert disclosed to offer opinions related to the "Felony Review" procedure used by the Cook County State's Attorney's Office, and Stephen Burgess, Plaintiffs' insurance expert. At Mr. Carter's August 6, 2020 videoconference deposition, Defendants' counsel questioned him about his compensation and how he allocated his time for work on the case. Plaintiffs' counsel[3] instructed Mr. Carter not to answer those questions and raised objections based on the work product privilege. At Mr. Burgess' August 14, 2020 videoconference deposition, Plaintiffs' counsel instructed him not to answer similar questions regarding compensation and time allocation. Defendants request an order compelling the re-depositions of Mr. Carter and Mr. Burgess limited to questions regarding their time allocation and communications related to their compensation.[4]

---

[2] The Court presumes the parties' familiarity with the facts of the case and recites only the facts that are relevant to Defendants' motion.

[3] Hood's counsel made the objections, but Washington's counsel joined in the objections.

[4] Defendants initially requested that the Court compel production of certain documents unredacted related to other experts, but they withdrew that request in their reply brief.

## DISCUSSION

Under Rule 26, a party's expert disclosure for a retained expert must include "a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B)(vi). Certain expert information may be protected by the work product doctrine, which protects information related to some materials prepared for litigation. The application of the work product doctrine to discovery requests is governed by federal law. *See A.O. Smith Corp. v. Lewis, Overbeck & Furman*, No. 90 C 5160, 1991 WL 192200, at *1 (N.D. Ill. Sept. 23, 1991). The doctrine is distinct from, and broader than, the attorney-client privilege. *Blanchard v. EdgeMark Fin. Corp.*, 192 F.R.D. 233, 238 (N.D. Ill. 2000); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 86 (N.D. Ill. 1992).

In the context of expert discovery, Rule 26(b)(4)(B) protects as work product drafts of any report or disclosure regardless of the form in which it is recorded. Rule 26(b)(4)(C) states that communications between a party's attorney and expert witness are protected from disclosure as work product, except for communications that:

> (i) relate to compensation for the expert's study or testimony;
>
> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>
> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

The Advisory Committee Notes to the 2010 amendments to Rule 26(b) ("Advisory Committee Notes") state that the amended Rule 26(b)(4)(C) "is designed to protect

counsel's work product and ensure that lawyers may interact with retained experts without fear of exposing those communications to searching discovery." The Advisory Committee Notes further state:

> In some cases, this discovery may go beyond the disclosure requirement in Rule 26(a)(2)(B)(vi). It is not limited to compensation for work forming the opinions to be expressed, but extends to all compensation for the study and testimony provided in relation to the action. Any communications about additional benefits to the expert, such as further work in the event of a successful result in the present case, would be included. This exception includes compensation for work done by a person or organization associated with the expert. The objective is to permit full inquiry into such potential sources of bias.

"[T]he burden is on the party seeking to withhold material from discovery to demonstrate by competent evidence and with particularity that the attorney/client privilege or work-product applies to each document that is claimed to be privileged . . . Blanket claims of privilege or conclusory assertions are insufficient to carry this burden." *Slaven v. Great American Insurance Co.*, 83 F. Supp. 3d 789, 796 (N.D. Ill. 2015) (citations omitted). The district court "has considerable discretion as to what discovery of experts it will order under Rule 26(b)(4)(A)." *Porter v. Creative Nail Design, Inc.*, No. 87 C 789, 1988 WL 37699, at *2 (N.D. Ill. Apr. 18, 1988) (citations and internal quotation marks omitted).

The parties dispute the propriety of questioning a retained expert about (1) how the expert allocated time between tasks (e.g., drafting a report, reviewing transcripts); and (2) communications between the expert and counsel related to the expert's compensation for work on the case. The Court will address each in turn.

4

A.     **Time Allocation**

First, Plaintiffs have shown that details regarding the experts' allocation of their time between tasks is protected work product. The Court is persuaded by the cases cited by Plaintiffs reasoning that the purpose of the 2010 amendments to Rule 26(b)(4) is served by protecting as work product details related to draft reports and the expert drafting process, which includes an expert's description of how much time the expert spent on each task. *See, e.g., Sherwin-Williams Company v. PPG Industries, Inc.*, Case No. 2:17-cv-01023-JFC, 2019 WL 2501471, at *5 (W.D. Pa. Mar. 19, 2019) (limiting production to documents sufficient to show "the total amount of time billed and the total amount of compensation" as production of total amount of compensation "is consistent with [Rule 26] as amended in 2010"); *Ampersand Chowchilla Biomass, LLC v. United States*, 136 Fed. Cl. 589, 591 (2018) (permitting disclosure of expert invoices with redactions of privileged information including the specific tasks performed); *Davita Healthcare Partners, Inc. v. United States*, 128 Fed. Cl. 584, 592–93 (2016) (explaining that the plaintiffs were entitled to redact from bills descriptions of the tasks performed by the expert, as "the description itself reveals protected communications with counsel."). Notably, Defendants have ceded their request for production of unredacted itemized bills with descriptions of the expert's tasks, and the Court finds little meaningful difference between itemized bills showing how much time the expert spent on each task and deposition testimony stating how much time the expert spent on each task.

5

In this context, Defendants' discussion of *Johnson v. City of Rockford*, 15 CV 50064, 15 CV 50065, 2018 WL 1508482 (N.D. Ill. Mar. 27, 2018), is unavailing. There, the defendants sought an order compelling plaintiff's expert to identify who wrote the final expert report. *Id.* at *4. The court in *Johnson* granted the motion because the plaintiffs could not cite any case stating that the identity of the typist of a final expert report is protected. *Id.* at *5. Here, by contrast, there is authority (set forth above) to support that an expert's time allocation between tasks performed in preparing draft reports and producing the final report is protected. The information sought here is also broader and more intertwined with the protected drafting process than simply the name of who drafted the report.

The other cases cited by Defendants—*Sec. & Exch. Comm'n v. Nutmeg Grp., LLC*, No. 09-CV-1775, 2017 WL 1545721 (N.D. Ill. Apr. 28, 2017) and *Traharne v. Wayne Scott Fetzer Co.*, 156 F. Supp. 2d 717 (N.D. Ill. 2001)—are no more persuasive. In both cases, the court declined to bar certain expert testimony on the basis that the expert spent too little total time working on the case to have developed a reliable opinion, but allowed cross-examination on the amount of time the expert spent on the case. *Nutmeg*, 2017 WL 1545721, at *4; *Traharne*, 156 F. Supp. 2d at 724. Neither case states that the expert was required to provide a detailed explanation of the time spent on each task,[5] and the Court finds that this information is properly classified as protected work product.

---

[5] The Court also agrees with Plaintiffs that the total time spent working on the case—whether it is time spent reviewing documents, typing pages of the report, or completing other tasks—is ultimately time spent creating the final expert report.

6

Thus, Plaintiffs properly invoked the work product privilege in response to questions regarding the experts' time allocation to specific tasks and the Court will not allow questioning of Mr. Carter or Mr. Burgess on that topic.[6]

**B.    Communications re: Expert's Total Compensation**

Plaintiffs have not, however, shown that communications between the experts and Plaintiffs' counsel regarding the experts' total compensation is protected. The 2010 amendments to Rule 26(b)(4)(C) were intended to provide work product protection for communications between counsel and expert, but there is an explicit exception for communications that "relate to compensation for the expert's study or testimony." Fed. R. Civ. P. 26(b)(4)(C)(i).

Plaintiffs' counsel appears to contend that Defendants are not entitled to any information beyond the total amount of compensation disclosed pursuant to Rule 26(a)(2)(B)(vi) and certain other limited information including the identity of the attorney who told the experts what their compensation would be. Defendants argue they need to ask the experts why they agreed to the total compensation figures because they represent a substantial discount from the experts' typical hourly rates and Defendants are entitled to explore possible bias. On this point, the Court agrees with Defendants and finds the discovery in this case should "go beyond the disclosure requirement in Rule 26(a)(2)(B)(vi)." The substance of the conversations between Plaintiffs' counsel and the experts is discoverable, at least as it relates to

---

[6] Defendants do not argue that Plaintiffs waived the privilege or that Defendants have substantial need for the information notwithstanding the privilege, thus Defendants have waived those arguments and the Court need not address them. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016).

7

the total compensation the experts would receive. Under the 2010 amendments to Rule 26(b)(4), the "objective is to permit full inquiry into . . . potential sources of bias" and in situations like this, where the experts agreed to a flat fee that is a substantial discount of their usual hourly rates, Defendants are entitled to explore the experts' possible bias or motivation for testifying and for discounting their usual rate. *See Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.*, 257 F. Supp. 2d 751, 756–57 (S.D.N.Y. 2003) ("This requirement should be considered in conjunction with the wide latitude courts tend to give cross-examiners in exploring a witness's bias or motivation in testifying.").

To give one example, if the reason that the experts discounted their usual rate is because Plaintiffs' counsel promised them more work after this case, that would undoubtedly be discoverable and the only way to find that out is by asking the experts about their conversations with Plaintiffs' counsel. *See* Advisory Committee Notes ("Any communications about additional benefits to the expert, such as further work in the event of a successful result in the present case, would be included."). Plaintiffs cite no caselaw to support that conversations regarding total compensation are categorically protected as work product and have not shown that the experts' responses to questions regarding their compensation arrangements would reveal any otherwise privileged information. Thus, Plaintiffs have not met their burden to justify assertion of the work product privilege in response to these questions. *See Slaven*, 83 F. Supp. 3d at 796.

Accordingly, the Court will allow limited videoconference re-depositions of Mr. Carter and Mr. Burgess narrowly tailored to address only questions about conversations Mr. Carter and Mr. Burgess had with Plaintiffs' counsel regarding their total compensation and how the total compensation was determined.[7] Plaintiffs must produce Mr. Carter and Mr. Burgess for these limited re-depositions within fourteen days. Defendants may depose Mr. Carter and Mr. Burgess for thirty minutes each, exclusive of breaks, with respect to this topic.

Finally, the Court declines to award sanctions under Fed. R. Civ. P. 37(a)(5)(C), as both the motion and the opposition were substantially justified, and Plaintiffs are not obligated to pay the expenses related to the re-depositions as they were substantially justified in their objections and position based on the work product privilege. *See, e.g., Cima Labs, Inc. v. KV Pharmaceutical Co.*, Civil No. 03-2477 (JNE/JGL), 2004 WL 5708291, at *4 (D. Minn. Nov. 22, 2004) ("Although it did not prevail, Plaintiff . . . was substantially justified in its position that the materials were protected by the work product doctrine . . . Likewise, [Plaintiff] is not obligated to pay for the limited re-deposition of [Plaintiff's expert.]"); *Roy v. Austin Co.*, No. 94 C 740, 1995 WL 452980, at *2 (N.D. Ill. July 14, 1995); *Porter*, 1988 WL 37699, at *3.

---

[7] To the extent Defendants' counsel's questions stray from conversations between Plaintiffs' counsel and the experts strictly regarding their total compensation, for example, to questions regarding the amount of compensation for a particular task or the time spent on a particular task, those questions may be properly objectionable.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Compel Expert Timothy Carter's Re-Deposition and Production of Expert Documents to Remedy Plaintiffs' Improper Invocation of the Work Product Privilege [Doc. No. 246] is granted in part and denied in part. Defendants may conduct limited re-depositions of Mr. Carter and Mr. Burgess as set forth above. No later than November 9, 2020, the parties shall file a status report detailing their discovery progress and settlement prospects.

**SO ORDERED.**　　　　　　　　　　**ENTERED:**

**DATE:     October 5, 2020**　　　　　　_____
　　　　　　　　　　　　　　　　　　**HON. MARIA VALDEZ**
　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**