IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TYRONE HOOD and WAYNE WASHINGTON, | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 16 C 1970 No. 16 C 1893 |
| v. | ) ) | Magistrate Judge |
| CITY OF CHICAGO, KENNETH BOUDREAU, JOHN HALLORAN, BERNARD RYAN, ROBERT LENIHAN, JOHN POLUSZNY, MICHAEL CLANCY, JOHN BALL, JAMES O'BRIEN, GERALD CARROLL, ELIZABETH SHINN, and JOHN STOUT, | ) ) ) ) ) ) ) ) ) ) | Maria Valdez |
| Defendants. | ) ) | |

**ORDER**

This matter is before the Court on Defendants' Motion to Compel Expert Timothy Longo's Re-Deposition to Remedy Plaintiffs' Improper Assertion of the Work Product Doctrine [Doc. No. 405].[1] For the reasons that follow, the motion is granted to the extent set forth below.

---

[1] The identical motion was filed in both related cases: *Washington v. Boudreau*, No. 16 C 1893 and *Hood v. City of Chicago*, No. 16 C 1970, which have been consolidated for pretrial purposes. To conserve judicial resources, the identical order will be entered in both cases and the docket citations will refer to the docket in *Hood*.

**BACKGROUND[2]**

In this civil rights case filed in 2016, Plaintiffs allege that Defendants wrongfully arrested them for the murder of Marshall Morgan Jr., fabricated evidence, threatened witnesses, and withheld exculpatory evidence. Former Illinois Governor Pat Quinn commuted Plaintiff Hood's sentence on January 12, 2015, and the Cook County State's Attorney's Office dropped the charges against both Plaintiff Hood and his co-defendant in the criminal case, Plaintiff Washington, on February 9, 2015. Fact and expert discovery are now closed.

On June 19, 2020, Plaintiffs disclosed Timothy Longo as their expert on police practices related to the individual Defendants' investigation of the Morgan homicide and municipal practices of the City of Chicago. The disclosure included Longo's final report setting forth his opinions. Relevant here, the report concluded in part that "Defendant Detective Boudreau Fabricated Statements and Coerced Confessions" and provided "a brief summary" of fourteen complaints against Boudreau. (Doc. No. 405-2 at 49-52.) The report further concluded that "Defendants' Disciplinary Histories Evince City's Failure to Investigate and Discipline" and included Table C, listing complaints against Defendants. (*Id.* at 93-94.) Longo also opined that Defendants were accused of a pattern of fabricating statements and included Table D, listing twenty-five sample Complaint Register ("CR") files, and including a summary of the allegations for each CR file. (*Id.* at 96-103.)

---

[2] The Court presumes the parties' familiarity with the facts of the case and recites only the facts that are relevant to Defendants' motions.

Defendants deposed Longo on October 7, 2020. During Longo's deposition, Defendants asked questions including: (1) whether Longo personally created the summary of fourteen complaints against Defendant Boudreau; (2) whether he created Table C; (3) whether he created Table D; and (4) whether he determined which of the CR files would be included in the sample files in Table D. Plaintiffs' counsel objected to the questions and instructed Longo not to answer. Plaintiffs asserted that the questions sought information protected by the work product doctrine. Defendants argue Plaintiffs' counsel's instructions not to answer were improper and they are entitled to re-depose Longo for two hours on the topics of Longo's creation of the tables and summaries of materials his analysis of certain sets of documents that underlie his report's opinions. As explained below, the Court agrees with Defendants that they should be allowed some further exploration.

## DISCUSSION

Under Rule 26, a party's expert disclosure for must include, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them"; "the facts or data considered by the witness in forming them"; and "any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B)(i-iii). The application of the work product doctrine to discovery, including expert discovery, is governed by federal law. *See A.O. Smith Corp. v. Lewis, Overbeck & Furman*, No. 90 C 5160, 1991 WL 192200, at *1 (N.D. Ill. Sept. 23, 1991). The doctrine protects certain material prepared for litigation and is distinct from, and broader than, the attorney-client privilege. *Blanchard v.*

3

*EdgeMark Fin. Corp.*, 192 F.R.D. 233, 238 (N.D. Ill. 2000); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 86 (N.D. Ill. 1992).

In the context of expert discovery, Rule 26(b)(4)(B) protects as work product "drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded." Rule 26(b)(4)(C) protects as work product "communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B)" <u>unless</u> the communications (1) "relate to compensation for the expert's study or testimony"; (2) "identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed"; or (3) "identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed."

The Advisory Committee Notes to the 2010 amendments to Rule 26(b) state that the amended Rule 26(b)(4)(C) "is designed to protect counsel's work product and ensure that lawyers may interact with retained experts without fear of exposing those communications to searching discovery." Fed. R. Civ. P. 26 advisory comm. n. (2010). Although the purpose of the addition of Rule 26(b)(4)(B) was to curtail searching discovery regarding the drafting process, the amended rule still requires parties to disclose "any material considered by the expert, from whatever source, that contains factual ingredients." *Id.*

"[T]he burden is on the party seeking to withhold material from discovery to demonstrate by competent evidence and with particularity that the attorney/client privilege or work-product applies to each document that is claimed to be privileged .

4

. . Blanket claims of privilege or conclusory assertions are insufficient to carry this burden." *Slaven v. Great American Insurance Co.*, 83 F. Supp. 3d 789, 796 (N.D. Ill. 2015) (citations omitted). The district court "has considerable discretion as to what discovery of experts it will order under Rule 26(b)(4)(A)." *Porter v. Creative Nail Design, Inc.*, No. 87 C 789, 1988 WL 37699, at *2 (N.D. Ill. Apr. 18, 1988) (citations and internal quotation marks omitted).

**Work Product Protection for Attorney-Expert Communications**

The questions that Plaintiffs' counsel instructed Longo not to answer on the basis of the Attorney-Expert work product doctrine, are as follows:[3]

1. Mr. Longo, did you prepare this brief summary of their allegations?

2. Did you create table C on page 88, Mr. Longo?

3. So, the table C, "Defendants' disciplinary histories," is that a table you created?

4. Now, a couple of things about the table, about table D. Did you create this table?

5. Did you decide which CRs were going to be used to extract this information from?

(Doc. No. 405-4 at 3-7.) Defendants seek permission to get an answer to these questions and based on such answer, to go beyond these base questions for an additional two hours of questioning Longo in detail regarding "the creation of tables and summaries of materials contained in his final report," and "his analysis in that

---

[3] Defendants filed the full transcript of Longo's deposition on March 19, 2021, as directed by the Court.

5

report of samples of certain sets of documents upon which his opinions are based[.]" (Doc. No. 405 at 1.)

Here, Plaintiffs' objection did not even permit a "yes" or "no" answer as to whether Longo was solely responsible for the final draft. In support of their position that an answer to the question is protected work product, Plaintiffs argue that allowing an answer would be an "end run around Rule 26's express protection of draft expert reports and counsel's communications regarding drafts[.]" (Doc. No. 426 at 6.) Plaintiffs explain without detail that Defendants' questions would "seek to peel back the curtain on the drafting process" and would apparently elicit attorney-expert communications. (*Id.*)

On the other hand, Defendants rely on *Johnson v. City of Rockford*, No. 15 CV 50064, 15 CV 50065, 2018 WL 1508482 (N.D. Ill. Mar. 27, 2018). In *Johnson*, the defendants' counsel sought to ask the plaintiffs' expert to disclose the identity of the person who physically typed certain portions of the final expert report. *See id.* at *3. The district court found that who typed a portion of the final report was not protected because the final report is not a "draft" but a final document and the final report contains facts or data, or assumptions, that counsel provided to the expert. *See id.* at *4-6. The court also noted that requiring production of the name of the typist would advance "an important policy consideration" discouraging counsel from "ghost writ[ing] expert reports." *Id.* at *6 (citing *United States ex rel. Wall v. Vista Hospice Care*, 319 F.R.D. 498 (N.D. Tex. 2016)).

6

Plaintiffs respond that *Johnson* was "wrongly decided" and cite *In re Cook Med., Inc., IVF Filters Marketing Sales Practice & Products Liability Litigation*, No. 1:14-ML-2570-RLY-TAB, 2018 WL 6113466 (S.D. Ind. Nov. 21, 2018), which declined to follow *Johnson* on this point. The court in *In re Cook Med., Inc.* denied the defendant's request to compel the plaintiff's expert to disclose the identity of a person who typed a portion of the final expert report, finding that it is protected work-product under the amended Rule 26(b)(4). *Id.* at *5. The court explained:

> [*Johnson*] is non-binding precedent and no reported cases have yet followed this relatively recent opinion. Second, the 2010 amendments to Rule 26 sought to end extensive and burdensome discovery into communications between counsel and testifying experts. Permitting discovery into who typed which portions of the final report, but not the drafts, unnecessarily splits hairs. In this case, the Court declines to reopen a door to discovery that the 2010 amendments expressly closed.

*Id.* The court also found that the identity of the typist did not fall under any of the exceptions in Rule 26(b)(4)(C). *Id.*

The Court agrees with the rationale in the *Johnson* case. The identity of the individual who typed, authored or created a report, or any part of the report is not, in and of itself, protected by privilege. *In re Cook Med., Inc.*, to the extent that it disagrees and by implication finds that the mere identity of the typist or co-author is privileged, misapprehended the commentary in support of the rule change. The court in *In re Cook Med., Inc.* appears to have been concerned about discovery into previous iterations of the final report – the drafts – and not necessarily on the narrow issue of whether the identity of the author of the final report, or some

7

portion thereof, is protected by privilege. This Court does not believe that a clear reading of the commentary supports the *In re Cook Med., Inc.* court's analysis.

Rule 26(b)(4)(C) was added to provide work product protection for attorney-expert communications and was designed to protect counsel's work product and ensure that attorneys may interact with experts "without fear of exposing those communications to searching discovery." See, Fed. R. Civ. P. 26 advisory comm. n. (2010). *See also United States Commodity Futures Trading Commission v. Newell*, 301 F.R.D. 348, 352 (N.D. Ill. 2014) (government generally may not discover attorney-expert communications). But, the protections of the rule do not apply to three specific exceptions. Under Rule 26(b)(4)(C), communications between a party's attorney and an expert providing a written report must be disclosed to the extent they: "(i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(C)(i)-(iii).

The advisory committee notes shed important light on the scope of the exceptions under the 2010 amendments to Rule 26. Substantial limitations apply to the attorney-expert work product exceptions. The notes explain that under the exceptions, discovery of communications between expert and attorney is permitted. But, the notes state that such discovery is not permitted beyond the specific topics discussed in the exceptions, noting that "[l]awyer-expert communications may cover

8

many topics and, even when the excepted topics are included among those involved in a given communication, the protection applies to all other aspects of the communication beyond the excepted topics." Fed. R. Civ. P. 26 advisory comm. n. (2010). For example, the exception in Rule 26(b)(4)(C)(ii) "applies only to communications 'identifying' the facts or data provided by counsel; further communications about the potential relevance of the facts or data are protected." *Id.*

Additionally, the exception in Rule 26(b)(4)(C)(iii) "is limited to those assumptions that the expert actually did rely on in forming the opinions to be expressed" and "[m]ore general attorney-expert discussions about hypotheticals, or exploring possibilities based on hypothetical facts, are outside this exception." *Id.* However, the notes also explain that the term "facts or data" is generally to be interpreted narrowly but should still "be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." *Id.*

The decisions an expert makes in adopting a final report can provide legitimate fodder to an opposing party's ability to challenge the expert. There may be a case where an expert does not independently verify information from counsel and simply adopts data, methodology, or tests furnished to the expert by the attorneys. In such cases this could lead to an effective cross-examination of the expert's opinion and methodologies. *See Fid. Nat. Title Ins. Co. v. Intercounty Nat.*

9

*Title Ins. Co.*, 412 F.3d 745, 750 (7th Cir. 2005) ("[C]ounsel should be afforded an opportunity to conduct expert discovery in an effort to appropriately cross-examine an expert.").

Here, the question is this – if the expert identifies counsel as an author or co-author of a chart or summary contained in the final report how much more may the defense question the expert on counsel's role? Defendants admittedly seek to discover information regarding "the creation of tables and summaries of materials contained in" the final report and Longo's "analysis in that report of samples of certain sets of documents," including whether Longo created the summaries/tables and whether he decided what data would be included in them, and if not, who created the tables and how, and who decided what data to include and how they decided. (*See* Doc. No. 405 at 7) (arguing that "if anyone other than Longo created them, Defendants are entitled to know what Longo knows about who created them and how" and entitled to ask "how and by whom a sample of CRs was chosen."). Such questions, Plaintiffs suggest, would necessarily reveal why portions of the report were included and were drafted the way they were, which they say is protected under the 2010 amendments to Rule 26(b)(4).

If a party's counsel provides information to an expert, that party may not be able to rely on privilege or work-product protections to avoid disclosing the substance of communications between counsel and the expert regarding the conveyance of that information. Under Rule 26(b)(4), these topics were fair game

10

because they were facts and data considered by the expert in coming to his opinion, rather than the substance of attorney-expert communication.

However, depending on the answer from Longo as to who created the tables and summaries, there is a distinction between communication which occurs upon the handing over of data from attorney to expert and the resultant output of that data. The tables and summaries themselves may be distinct from the underlying facts. *See Davita Healthcare Partners, Inc. v. United States*, 128 Fed. Cl. 584, 591 (Fed. Cl. 2016) (explaining that expert's graphs, spreadsheets and analysis are "interpretations of data" that "result from the expert's and counsel's collaborative efforts to organize, marshal, and present data" and are "separate and distinct from the underlying facts and data[.]").

The purpose of the 2010 amendments to Rule 26(b)(4) is served by allowing some exploration as to whether the exceptions to the attorney-expert work product privilege come into play. Plaintiffs' counsel bald assertion that an answer to the question "did you (Longo) prepare this summary" is protected from disclosure under the work product privilege encompassing "draft" issues is simply premature and not protected. For instance, the answer may be "I alone prepared the summary" for which no privilege would exist to protect such response. Or the answer may be "counsel for plaintiff assisted or prepared it for me" which, in and of itself, does not implicate the privilege. *See Johnson*, 2018 WL 1508482, at *5 n.2. If Longo's answer identifies counsel as author or co-author, then the defense may delve into communication between counsel and expert only on facts, data, and assumptions

11

the expert relied upon, all of which fall within the exception to the prohibition under Rule 26(b)(4)(C).

Plaintiffs caution that to allow the requested inquiry would necessarily go beyond simply questions about the facts or data, to discover protected attorney-expert communications regarding the process of drafting and creating visual representations of the facts and data. They further object and assert that Defendants' line of inquiry would lead to revealing, at least, who created the tables/summaries, whether and how the tables/summaries were edited, and "whether and how the final draft came to accept and/or reject the edits of counsel and/or Mr. Longo." (Doc. No. 426 at 7.) Again, Plaintiffs impermissibly stopped the questioning even before we knew if the privilege and exceptions thereto were even implicated. Nonetheless, the concerns of the Plaintiffs have some merit.

Generally, Defendants may inquire of the expert why the expert chose to include or exclude data or analysis. Specifically, as requested in this motion, the Defendants may inquire as to facts and data received by the expert from counsel and the communication surrounding the conveyance of the facts or data the attorney provides and that the testifying expert considered in forming an opinion. The advisory committee notes provide that this exception only applies to communications that identify "facts or data." Any communication between attorney and expert discussing the potential relevance of the facts or data is privileged and shall not be discoverable.

12

Furthermore, "assumptions" the attorney's communication provided and that were relied on by the testifying expert in forming an opinion are discoverable. As stated by the advisory committee note, counsel's conveying that the expert should assume the truth of certain evidence, and then it such information was relied upon by the expert, is within the work product exception.

Accordingly, the Court finds Defendants' questions regarding the tables and summaries in Longo's final report as they relate to facts, data and assumptions that were relied upon by Longo <u>as circumscribed by this Order</u> are not protected from disclosure as attorney-expert work product under Rule 26(b)(4)(C). However, in light of the limits necessarily placed on this re-deposition due to the narrow path for information that does not raise attorney-expert protections, the Court believes that one additional hour will provide sufficient time for the defense.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel Expert Timothy Longo's Re-Deposition to Remedy Plaintiffs' Improper Assertion of the Work Product Doctrine [Doc. No. 405] is granted to the extent set forth above.[4] Defendants may re-depose Longo for an additional time not to exceed one hour but must do so consistent with the restrictions contained in this Order. The re-deposition must take place as soon as practicable. Plaintiffs are also reminded that any directive to Mr. Longo not to answer must be firmly rooted in privilege and must be made consistent with the ruling in this Order.

**SO ORDERED.**   **ENTERED:**

*Maria Valdez*

**DATE:   March 30, 2021**

                                             **HON. MARIA VALDEZ**
                                             **United States Magistrate Judge**

---

[4] Defendants' motion in *Washington* [Doc. No. 258] is similarly granted to the extent set forth in this Order and all directives in this Order apply.