**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WAYNE WASHINGTON, ) | | |
| ) | | |
| Plaintiff, ) | Case No. 16 CV 1893 | |
| ) | | |
| v. ) | Honorable John Kness | |
| ) | Magistrate Judge Maria Valdez | |
| KENNETH BOUDREAU, *et al.*, ) | | |
| ) | | |
| ) | | |
| Defendants. ) | | |

___

| | | |
|---|---|---|
| TYRONE HOOD, ) | | |
| ) | | |
| Plaintiff, ) | Case No. 16 CV 1970 | |
| ) | | |
| v. ) | Honorable John Kness | |
| ) | Magistrate Judge Maria Valdez | |
| CITY OF CHICAGO, *et al.*, ) | | |
| ) | | |
| ) | | |
| Defendants. ) | | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO BAR PLAINTIFFS'
REBUTTAL EXPERT, DR. JONATHAN ARDEN**

## Introduction

The Defendants' motion to bar Dr. Arden paints a misleading portrait of this litigation and Dr. Arden's role in it. The Plaintiffs disclosed Dr. Arden to rebut two of the Defendants' experts: Victoria Hurtado, the Defendants' police practices expert who is barely even mentioned in the Defendants' brief, and Dr. Mitra Kalelkar, the forensic pathologist who conducted the autopsy on Marshall Morgan, Jr. Plaintiffs timely named and disclosed Dr. Arden and the Defendants not only deposed Dr. Arden, but also subpoenaed documentary evidence from him. This was routine work: There was nothing improper in Plaintiffs' disclosure of Dr. Arden, and certainly nothing that would warrant preclusion of Dr. Arden's testimony in this case.

To try to argue otherwise, the Defendants make two arguments, neither of which have merit: First, the Defendants claim that Dr. Arden should have been disclosed as an expert in Plaintiffs' case-in-chief because they were aware of Dr. Kalelkar's testimony prior to their Rule 26(a)(2) disclosures. But that argument imposes a new requirement on rebuttal experts—that their opinions must be "unanticipated" or based on new evidence—that is incongruent with the Federal Rules; and also ignores wholesale the fact that Dr. Arden's report rebuts Ms. Hurtado's opinions, which Plaintiffs assuredly could not have divined before they were given them.

Second, and related, the Defendants claim that Dr. Arden's testimony is substantively more properly part of the Plaintiffs' case-in-chief. That too fails because the Plaintiffs are not relying on Dr. Kalelkar's opinions for proof of their claims. For these reasons and those stated below, the Defendants' motion should be denied.

## Background

During discovery in this case, the Defendants listed Dr. Mitra Kalelkar as a fact witness pursuant to Rule 26(a)(1). *See* Ex. A (Defendants' Rule 26(a)(1) Disclosures) at 6. In that

disclosure, the Defendants simply identified Dr. Mitra Kalelkar as the "medical examiner who performed autopsy." *Id*. The Defendants did not offer any further description of what they intended to rely on Dr. Kalelkar for as a fact witness—then or since.

On November 8, 2018, pursuant to the Defendants' subpoena Dr. Kalelkar was deposed in this case. Among other things, Dr. Kalelkar testified about lividty, potential survival times after receiving the various gunshot wounds, the order of the gunshot wounds and the positioning of Morgan, Jr.'s body when he received those wounds.

Pursuant to the Court's expert discovery schedule and after Plaintiffs disclosed their experts, the Defendants served their Rule 26(a)(2) disclosures. In those disclosures, the Defendants listed Dr. Kalelkar as a non-retained expert and disclosed that Dr. Kalelkar would be "called to present certain evidence at trial under Federal Rules of Evidence 702, 703, or 705 on the following subjects . . . . (1) that it is more likely that Marshall Morgan, Jr. was shot twice in the back while he was in a lying position; (2) the angles and wound paths of the three gunshot wounds . . . (4) that the gunshot wound to the abdomen would have caused a small amount of external bleeding . . .[and] (6) that there was evidence of possibility lividity on the left side of Morgan, Jr.'s face and left chest wall . . . ." Ex. B (Defendants' Rule 26(a)(2) Disclosures) at 5.

The Defendants also disclosed a police practices expert, Victoria Hurtado, who relied, in part, on Dr. Kalelkar to claim that West's statement, which West asserts was the by-product of police coercion and fabrication, was corroborated by the Medical Examiner's findings—in short, to counter Plaintiffs' claim that West's statement was fabricated.[1] In particular, Ms. Hurtado opined that:

---

[1] Notwithstanding the fact that Ms. Hurtado has no training as a forensic pathologist, she reached conclusions about the presence of lividity and the positioning of Morgan, Jr.'s body that Dr. Kalelkar expressly testified she could not reach. In particular, Dr. Kalelkar asserted that when she conducted the autopsy, she "couldn't tell if there was lividity or not because of the decomposition." Ex. C (Kalelkar

2

> During the autopsy, Dr. Kalelkar described Morgan, Jr.'s face and left anterior chest wall being darker in color possibly due to dependent lividity. The presence of lividity would indicate that Morgan, Jr.'s face and chest were the lowest parts of his body immediately after his death. Dr. Kalelkar did not find any evidence of lividity on Morgan, Jr.'s back which suggests that Morgan, Jr.'s body was repositioned at some point after his death. Washington only states Hood shot Morgan, Jr. the one time and that Morgan, Jr. was moving around forcing him to hold him down. Two days later West sees Morgan, Jr. face down in the vehicle, which would account for the lividity in his face. West states Hood drives off and he hears two shots being fired and when Morgan, Jr.'s body is located seven days later it is now on its back. Dr. Kalelkar testified she believed the shots to Morgan, Jr.'s back were consistent with him either laying down or on his side.

Ex. D (Hurtado Report) at 14.

In rebuttal to the disclosure of both Dr. Kalelkar and Ms. Hurtado as experts, Plaintiffs named Dr. Jonathan Arden. Ex. E (Arden CV). Dr. Arden is a forensic pathologist with more than four decades of experience. Dr. Arden issued a straightforward (and very limited) five-page report that includes the following opinions:

- Ms. Hurtado's opinion regarding the lividity and attendant re-positioning of Morgan, Jr.'s body was "unreliable and speculative;"
- There is no scientific or medical validity to Dr. Kalelkar's opinion that the gunshot wound to Morgan, Jr.'s abdomen would not have caused much bleeding, which is what Dr. Kalelkar used to claim that Morgan, Jr. could have been alive for 1-3 days following the first shot;
- There is no way to reliably determine the order of the gunshot wounds; and
- Dr. Kalelkar's opinions about the position of Morgan, Jr.'s body when shot—that he was "more likely . . . shot twice in the back while he was in a lying position"—was not proper because a pathologist cannot testify that one position is more likely than another.

Ex. F (Arden Report) at 2-5. These opinions directly rebut the proposed expert testimony of both Dr. Kalelkar and Ms. Hurtado. The Defendants' attempt to move to bar Dr. Arden is simply smoke and mirrors based on the fact that they do not like what Dr. Arden has to say.

---

Dep.) at 108:8-11. Dr. Kalelkar also testified that she "cannot quite understand why . . . the left side of the face [and] the left anterior chest wall is darker" and she likewise "can't say" that at some point the body was moved onto it's back. *Id*. at 87:6-9, 87:24-88:4.

3

**Standard**

The admission of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert*. The Supreme Court in *Daubert* made clear that an expert by "knowledge, skill, experience, training, or education" may offer opinions if the expert's "scientific, technical, or other specialized knowledge" would "help the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588-89 (1993).

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Under Rule 702, "the rejection of expert testimony is the exception rather than the rule," *Id.* (Advisory Note, 2000 amends.), and the Rule's inquiry is a "flexible one." *Daubert*, 509 U.S. at 594–95; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (*Daubert* analysis applies to non-scientific expert testimony).

Although courts should serve as gatekeepers to ensure experts' opinions are reliable and relevant, the threshold under *Daubert* is a permissive one: "the district court's role as gatekeeper does not render the district court the trier of all facts relating to expert testimony." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013); *see also Lapsley v. Xtec, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) ("A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy.").

"The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact," and the focus of the *Daubert* inquiry should remain on the principles and methodology, not on the ultimate opinions reached by the expert. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Reliability should additionally focus on the validity of the methodology, "not the quality of the data used in applying the methodology or the conclusions produced." *Manpower, Inc. v. Ins. Co. of Penn.*, 732 F.3d 796, 806 (7th Cir. 2013). If an opposing party intends to challenge the factual basis of the expert's opinion, the appropriate method is through cross-examination, not exclusion. *See Daubert,* 509 U.S. at 596; *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000).

## Argument

### I. Dr. Arden is Properly Rebutting the Expert Opinions of Dr. Kalelkar and Ms. Hurtado

Defendants make a single argument for why Dr. Arden's opinions should be barred: He is not a proper rebuttal expert and should have been disclosed as an expert in Plaintiffs' case-in-chief. This argument has two iterations: First, that Dr. Arden should have been disclosed earlier because Plaintiffs have long been aware of Dr. Kalelkar's testimony and attendant opinions; and second, that Dr. Arden's opinions actually support Plaintiffs' *prima facie* case for liability against the Defendants. Neither argument has merit.

Taking a step back, although the Defendants are trying to contort this into a complicated legal argument, the facts and attendant law are quite simple: Defendants disclosed Dr. Kalelkar and Ms. Hurtado as experts, including on the topics identified above; Plaintiffs identified and disclosed a report by Dr. Arden to directly rebut those opinions. That is exactly how expert discovery works, and what a rebuttal opinion should be. Fed. R. Civ. P. 26(a)(2); *Cage v. City of*

*Chicago*, No. 09 C 3078, 2012 WL 5557410, at *5 (N.D. Ill. Nov. 14, 2012) ("Here, Reich's declarations concerning the shortcomings of the CPL Report cover the same subject matter identified in Defendants' disclosures and therefore constitute proper rebuttal."). Indeed, that should end the story.

### A. Rebuttal Opinions Do Not Have to Be Based on Unanticipated Evidence

To claim otherwise, the Defendants have offered a tortured reading of the Federal Rules of Civil Procedure and specifically, of Rule 26(a)(2), arguing that because Plaintiffs were aware of Dr. Kalelkar's testimony during fact discovery (and before that, during their criminal cases), Dr. Arden should have been disclosed in Plaintiffs' case-in-chief. There is nothing, however, in Rule 26(a)(2) that establishes such a requirement, and for good reason: Taken to its logical extreme, it would mean that a litigant could never rebut a non-retained expert because litigants are virtually always aware of the identify of and the information possessed by non-retained experts during fact discovery (*e.g.*, medical treaters). The law, of course, does not support such a proposition nor should it. *See*, *e.g.*, *Cage*, 2012 WL 5557410, at *7 ("Because rebuttal disclosures are designed to rebut, they naturally, and necessarily, cover topics already discussed in previous disclosures."); *Rodriguez v. American Multi-Cinema, Inc.*, No. 2:17-CV-455, 2020 WL 8763815, at *2 (N.D. Ind. Nov. 2, 2020) (explaining that disclosures under Rule 26(a)(2)(C) must be fulsome so that an adverse party does not "miss the opportunity to disqualify the expert, retain rebuttal experts, or hold depositions for an expert not required to provide a report."); *Turubchuk v. E.T. Simonds Constr. Co.*, No. 12-CV-594, 2017 WL 5067423, at *2 (S.D. Ill. May 2, 2017) (permitting plaintiff to amend their Rule 26(a)(2)(C) disclosures to name a non-retained expert and allowing the defendants to depose that expert and disclose a rebuttal expert on the same issue).

The test for whether something is properly rebuttal is not whether the litigant was taken by surprise or was otherwise unaware of the evidence, but instead whether the evidence "contradict[s], impeach[es] or defuse[s] the impact of evidence offered by an adverse party." *Ernst v. City of Chicago*, No. 08 C 4370, 2013 WL 4804837, at *1 (N.D. Ill. Sept. 9, 2013). As described more fully above, there is no dispute that Dr. Arden's opinions fall squarely within this definition: He is directly rebutting the expert opinions of Dr. Kalelkar and Ms. Hurtado.

Nothing in the cases that Defendants cite changes this calculus. For example, the Defendants cite to *United States v. Grintjes*, 237 F.3d 876 (7thCir. 2001), but *Grintjes* does not find that the adverse evidence had to be "unanticipated" for a rebuttal to be proper. In *Grintjes*, the defendant complained that the government was improperly permitted to put on rebuttal witnesses that did not actually rebut the defendant's testimony. *Id.* at 799. To be fair, the government argued that it could not have known whether and if so, what the defendant was going to testify to during its case-in-chief, but the lynchpin for the Seventh Circuit was not some element of surprise. Indeed, *Grintjes* articulated the standard for rebuttal evidence just as described above: evidence that contradicts, impeaches or defuses the impact of evidence offered by an adverse party. *Grintjes*, 237 F.3d at 879. It did not include anywhere in there that the evidence had to be a surprise or "unanticipated" as the Defendants here suggest. Instead, the Court found that the evidence was properly admitted because "[a]lthough the [rebuttal witnesses] . . . did not rebut with certainty Grintje's claim that he sent the forms to the banks properly, at the very least the evidence tended to show that he may have been lying about how he handled the forms," and the evidence also "undercut Grintjes's more general contention that he had no reason to suspect the Younk transactions were not legitimate." *Id*.

7

*Noffsinger v. The Valspar Corporation*, No. 09 C 916, 2011 WL 9795 (N.D. Ill. Jan. 3, 2011) similarly supports Plaintiffs' argument—and not the defendants. In *Noffsinger*, the defendants challenged the disclosure of Dr. Myerson as a rebuttal expert. 2011 WL 9795, at *6. *Noffsinger* found that where "Dr. Myerson reviewed and critiqued the reports of defendants' experts Drs. Wedner and Greenberg, challenging their methodology and the evidence on which they relied," his testimony was properly construed as rebuttal. *Id*. at *7. So too here: Dr. Arden reviewed and critiqued the testimony and report of Dr. Kalelkar and Ms. Hurtado, and directly challenged their methodology and resulting conclusions. That falls squarely in the rebuttal bucket.[2]

Finally, it is worth noting that even if Rule 26(a)(2) incorporated an element of surprise into the requirement for rebuttal experts, which it does not, Dr. Arden's testimony would still be admissible. Although the Defendants argue that Plaintiffs were aware of Dr. Kalelkar's testimony as a general matter, they make no argument for how Plaintiffs could have possibly been aware of Ms. Hurtado's opinions, including those that rely on Dr. Kalelkar, or how Plaintiffs could have divined that the Defendants would list Dr. Kalelkar as a Rule 26(a)(2)(C) expert on the topics identified above. Indeed, the Defendants' brief is noticeably silent on Hurtado, and likewise virtually silent on the fact that the Defendants identified Dr. Kalelkar as an

---

[2] The remainder of the cases that the Defendants cite are likewise inapposite. In *Peals v. Terre Haute Police Department*, 535 F.3d 621 (7thCir. 2008), the plaintiff actually agreed that the evidence that the plaintiff sought to rebut was part of his case-in-chief as opposed to part of the defendants' case. *Id*. at 630. In *Viramontes v. City of Chicago*, No,. 13 C 6251, 2015 WL 4637958 (N.D. Ill. Aug. 4, 2015), the plaintiff sought to call a witness in rebuttal who he had originally sought to call in his case-in-chief but was foreclosed from doing so because the witness was never disclosed during the pendency of the case. *Viramontes* found that that witness—the plaintiff's brother who had been by the plaintiff's side during the entire encounter that formed the basis for the plaintiff's excessive force suit—was not a proper rebuttal witness because his "testimony "went to the heart of the case . . . corroborated Viramontes's story and disputed the Defendants' version universally." *Id.* Dr. Arden's testimony stands in stark contrast: He is rebutting expert opinions about how and when the victim was killed.

8

expert witness—two facts that resoundingly defeat their motion. Any argument on that score has been waived. *See Hall v. Flannery*, 840 F.3d 922, 927 (7th Cir. 2016).

### B. Dr. Arden's Opinions are Properly Characterized as Rebuttal

In addition, the Defendants argue that Dr. Arden is not a proper rebuttal expert because his testimony, at bottom, supports the Plaintiffs' case-in-chief. Of course, any testimony that undermines the Defendants' defenses likewise supports the Plaintiffs' case to some degree—just as is true in reverse. But that does not turn what is otherwise a proper rebuttal report into an improper one.

To try to claim otherwise, Defendants cite to Plaintiffs' false confession expert, Dr. Melissa Russano, but Dr. Russano cannot help the Defendants on this score. Dr. Russano opined and testified that West's statement contained a false fact—that Morgan, Jr.'s body was found face-down when it was not—that both West and Defendant Halloran were mistaken about. Ex. G (Russano Dep.) at 192:7-204:24. The existence of that false fact in West's statement is consistent with and evidence supporting West's claim that his confession was fabricated by the Defendants. *Id.*; Ex. H (Mullenix Dep.) at 310:21-311:17, 312:17-24, 317:19-319:12. Although Dr. Russano notes Dr. Kalelkar's findings in her discussion of West's statement, Dr. Russano's opinion does not rely on Dr. Kalelkar.[3]

Instead, it is the Defendants who are seeking to rely on Dr. Kalelkar's opinions to expressly rebut Dr. Russano's opinion that West's confession contains a false fact. That is the very purpose of Ms. Hurtado's opinion. Ex. D (Hurtado Report) at 14 (explaining that "Dr. Kalelkar did not find any evidence of lividity on Morgan, Jr.'s back which suggests that Morgan,

---

[3] Moreover, to the extent that Dr. Russano invokes Dr. Kalelkar, she credits her claim that the victim may have been lying down after his death, which obviated any need to call an expert to rebut Dr. Kalelkar. Ex. G (Russano Dep.) at 201:1-202:8.

9

Jr.'s body was repositioned at some point after his death" and also that Dr. Kalelkar found that "the shots to Morgan, Jr.'s back were consistent with him either laying down or on his side."). Moreover, the Defendants invocation of Dr. Russano only further proves that Dr. Arden's opinions are proper rebuttal; he is countering the claims by Hurtado that the forensic pathology corroborates West's confession, or at a minimum, that there is at least an explanation for why Morgan, Jr.'s body may have been face down when West saw it and face up when it was found.

For that reason, the Defendants' citations to *Braun v. Lorillard Inc.*, 84 F.3d 230 (7th Cir. 1996) and *Bronk v. Ineichen*, 54 F.3d 425 (7th Cir. 1995) are inapposite. To start, both *Braun* and *Bronk* deal with ordinary rebuttal witnesses—not experts. That alone changes the calculus. But even if that were not so, neither case warrants barring Dr. Arden.

In *Braun*, the plaintiff, a smoker who had used cigarettes with a filter containing asbestos, brought a products liability action, including against the seller of the cigarettes, Lorillard. *Braun*, 84 F.3d at 236. At trial, the plaintiff was barred from calling a witness in rebuttal who the plaintiff expected would testify that Lorillard had raised concerns about the asbestos filters, because the plaintiff had failed to disclose him in the final pretrial order as required by the judge's standing order. 84 F.3d at 236-37. Moreover, the Court held that the witness's testimony was directly relevant to the plaintiff's *prima facie* case—something which the plaintiff already knew since he had originally tried to call this witness in his case-in-chief. *Id*. Not so here: Dr. Arden was timely disclosed and is not barred by any standing order of this Court, nor is his testimony, which directly rebuts and counters the opinions of Dr. Kalelkar and Ms. Hurtado, the substantive equivalent of the witness in *Braun*.

Similarly, in *Bronk*, the plaintiffs, who were both profoundly deaf, brought suit against their landlord, claiming that their landlord had discriminated against them by refusing to modify

10

his no-pets policy and permit them to have a dog in their rented townhouse. *Bronk*, 54 F.3d at 426-27. The plaintiffs asserted that the dog was a service dog for the hearing impaired, but the defendant vigorously contested this issue. *Id*. at 428. Indeed, this was *the* issue at trial. In rebuttal, the plaintiffs tried to present testimony from one of the plaintiff's brother, who had trained the dog, but the district court excluded it and the Seventh Circuit upheld that exclusion for virtually the same reasons as in *Braun*: the "plaintiffs failed to name [the brother] on their pretrial witness list pursuant to the district court's order" and because "it should have been clear to plaintiffs from the outset" that they would need to call the plaintiff's brother to prove the dog was a service dog. *Id*. at 432. For all of the reasons discussed above, neither of those criteria apply to Dr. Arden.

II. **Because Dr. Arden Was Properly Identified and Disclosed as a Rebuttal Witness, the Defendants will Suffer No Prejudice**

Additionally, the Defendants allege that they will be deeply prejudiced by Dr. Arden's testimony.[4] That argument boils down to this: The Defendants will not and did not have time to identify their own pathology expert. This is an odd argument to make: The Defendants already disclosed Dr. Kalelkar as their forensic pathology expert, and it is because of that disclosure (and the disclosure of Hurtado), that Plaintiffs retained Dr. Arden. That the Defendants want to rebut Dr. Arden's rebuttal (presumably because it is so persuasive) does not make them prejudiced. If that were the litmus test, then there would never be any rebuttal reports issued in any cases.

Nor can the Defendants claim that they have not had an opportunity to explore Dr. Arden's opinions. The Defendants deposed Dr. Arden for over six hours, and subpoenaed documents from him, sounding the death knell for any further argument of prejudice. *See North*

---

[4] It is worth noting that because Dr. Arden is a rebuttal expert, he will only be able to testify if the Defendants present the expert opinion from Ms. Hurtado identified above, and the expert testimony of Dr. Kalelkar.

11

*Shore Co-Owners' Assn., Inc. v. Nationwide Mut. Ins. Co.*, No. 118 CV 03632, 2021 WL 527014, at *10 (S.D. Ind. Feb. 12, 2021) (explaining that any failure to timely designate witnesses under Rule 26(a)(2) was harmless because witnesses already sat for two depositions as a fact witness).

## Conclusion

For all of the reasons stated above, the Defendants' motion to bar Dr. Arden should be denied.

Respectfully submitted,

**TYRONE HOOD**

 /s/ Gayle Horn
*One of the Attorneys for Plaintiff Hood*

LOEVY & LOEVY
Jon Loevy
Gayle Horn
Heather Lewis Donnell
311 N. Aberdeen, 3d Floor
Chicago, Illinois 60607
(312) 243-5900

WAYNE WASHINGTON

/s/ Steven Greenberg
*One of the Attorneys for Plaintiff Washington*

GREENBERG TRIAL LAWYERS
Steven A. Greenberg
Steven Fine
53 W. Jackson Blvd., Suite 1260
Chicago, Illinois 60604
(312) 879-9500