IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TYRONE HOOD, | ) | |
| Plaintiff, | ) ) ) | Case No. 16 CV 1970 |
| v. | ) ) | Judge John F. Kness |
| CITY OF CHICAGO, et al., | ) ) ) | Magistrate Judge Maria Valdez |
| Defendants. | ) | JURY TRIAL DEMANDED |

---

| | | |
|---|---|---|
| WAYNE WASHINGTON, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 16-cv-1893 |
| KENENTH BOUDREAU, et al., | ) ) ) | Judge John F. Kness Magistrate Judge Maria Valdez |
| Defendants. | ) ) | JURY TRIAL DEMANDED |

**PLAINTIFFS' JOINT RESPONSE IN OPPOSITION TO DEFENDANTS'
JOINT MOTION TO BIFURCATE PLAINTIFFS' *MONELL* CLAIMS FOR TRIAL**

Steven A. Greenburg
*One of the Attorneys for Wayne Washington*
53 W. Jackson, Suite 1260
Chicago, Illinois 60604
(312) 879-9500

Heather Lewis Donnell
*One of the Attorneys for Tyrone Hood*
Jon Loevy
Heather Lewis Donnell
Gayle Horn
LOEVY & LOEVY
311 N. Aberdeen St., Third Floor
Chicago, Illinois 60607
(312) 243-5900

**Introduction**

Having moved unsuccessfully no fewer than six times to bifurcate the *Monell* claims in this litigation, Defendants are back to try yet again. They seek to bifurcate Plaintiffs' *Monell* claim from trial, asserting that a trial with this claim will unduly prolong the trial, and arguing that a trial on *Monell* is unnecessary and unfairly prejudicial. This is inaccurate, as recent experience involving these same law firms has proven. At two very similar wrongful conviction trials (*Fields v. City of Chicago*, No. 10 C 1168 (N.D. Ill.) (Kennelly, J.) and *Rivera v. Guevara*, No. 12 C 04428 (N.D. Ill.) (Gottschall, J.), for example, the *Monell* claim was tried seamlessly together with the underlying claims. Not only were all of the claims in the case against all of the Defendants resolved at one time in one trial, but the totality of the *Monell* evidence consumed less than two full trial days. The same would be true of the *Monell* claim at issue here.

To the extent that Defendants have framed their renewed motion as an effort to conserve judicial resources, and despite their attempt to raise this issue and the City's obstructionist tactics during discovery in self-helping itself to stay of *Monell* discovery, Judge Shadur, Judge Wood and Judge Valdez have all denied prior iterations of this motion, belying Defendants' feigned concern. It is Defendants who have consumed significant judicial resources in their repeated attempts to rid this case of Plaintiffs' *Monell* claim and the powerful evidence of its liability. The strength of the City's desire to avoid having to defend this claim does not translate to more merit in its position.

In terms of efficiency, there can be no dispute that at least one of Plaintiffs' theories of *Monell* liability would require a second trial. That is because it is entirely possible for a jury to reach consistent verdicts finding Individual Defendant are not liable for a *Brady* violation but nevertheless holds the City's file-keeping policies and practices responsible for the failure to disclose exculpatory and/or impeachment to Plaintiffs. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) ("a municipality can be held liable under *Monell,* even when its officers are not, unless such a finding would create an *inconsistent* verdict.") (emphasis in original). Indeed, the three other courts in this district to consider the City's bifurcation of a

1

*Brady*-related *Monell* theory like the one Plaintiffs' have put forth here have rejected the City's argument here and denied the City's motion to bifurcate before trial. *See Fields v. City of Chicago*, No. 10 C 1168 (N.D. Ill.) (Kennelly, J.), Dkt. 170 (Exhibit 1); *Rivera v. Guevara*, No. 12-CV-04428, (N.D. Ill.) (Gottschall, J.), Dkt. 443 (Exhibit 2) (denying City's motion bifurcate *Monell* claim for trial on judicial economy and prejudice grounds); *Kluppelberg v. Burge*, No. 13-cv-03963 (N.D. Ill.) (Lefko, J.), Dkt. 109 (Exhibit 3). The same is true for Plaintiffs' theory that the City turning a blind eye and failure to address its widespread practice of coercing false and fabricated confessions as discussed below. In short, there will be a second trial here and result in re-calling Plaintiffs' expert Timothy Longo, who has been disclosed for his expert police practices opinions in the underlying claims as well as *Monell* theories.

With regard to prejudice, Defendants will not suffer any *unfair* prejudice, and the law is well-settled that any potential risk they may can be adequately addressed through limiting instructions and stipulations. To the extent Defendants claim they will be prejudiced by instances of their own other coerced and fabricated confessions, that evidence is independently relevant to Plaintiffs' underlying claim and is thus independently admissible under Federal Rule of Evidence 404(b). To the extent that same evidence is also relevant to demonstrate a continuation of the City's unconstitutional practice and its failure to take any action after it had notice, it is not unfairly prejudicial. Indeed, Plaintiffs intend to call a handful of Rule 404(b) witnesses to demonstrate, in particular, Defendant Boudreau's modus operandi, notice and lack of mistake. *U.S. v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (en banc).

Finally, there are important policy reasons to decline to allow the City to opt out of this trial. If the City does not want to go to trial, it should have to avail itself of the usual means, such as winning summary judgment or perhaps settlement. As is true for other litigants, the City cannot simply expect the Court to give it a pass. As have many other Courts to consider this issue, this Court too should deny the motion.

**Relevant Background**

Mr. Hood and Mr. Washington have alleged that they were wrongfully convicted and imprisoned for a collective nearly four decades for a murder they had nothing to do with, beginning in May 1993. Almost four decades after their wrongful convictions, Plaintiffs will get to present their case to the jury for the jury to decide Plaintiffs' claims that the detectives who investigated the murder violated their constitutional rights and that the City of Chicago bears responsibility as the moving force causing these violations. Plaintiffs have set forth evidence of five distinct theories to prove their *Monell* claim, each set forth in their response in opposition to the City's motion for summary judgment: the City's (1) widespread practice of coercing confessions and fabricated statements; (2) the failure to investigate and discipline officers accused of misconduct; (3) failure to train and supervise; (4) code of silence; and (5) "street file" practice of failing to disclose *Brady* material. Dkt. 534.

Plaintiffs' evidence includes evidence to support a jury finding the City is responsible for what happened to them. The jury should hear this evidence and decide whether Plaintiffs' have met their burden of proof. The Court should reject the Defendants' attempt to erase the record developed here by excising the *Monell* claim.

***Defendants' Unnecessary Expenditure of Judicial Resources***

This is the Defendants' sixth (and hopefully last) motion seeking to get rid of Plaintiff's *Monell* claims. Dkts. 71, 195, 380 & 578 (present motion).[1] In addition to their official motions, Defendants repeatedly ignored the courts' prior orders denying their motions and refused to produce *Monell* discovery requiring Plaintiffs to file two motions to compel to repeatedly obtain orders directing the City to produce *Monell* discovery. Dkts. 172 & 199. Defendants' prior motions to bifurcate and motions to compel to comply with the courts' denials of those motions

---

[1] The citations are to the docket in *Hood v. City of Chicago*, No. 16 cv 1970. The corresponding motions the City filed in *Washington v. Boudreau* docket are 54, 142, 239 & 362 (current motion).

3

to produce discovery have accounted for over 250 pages of briefing. Any contention that the City's present motion is motivated to try to conserve judicial resources is laughable.[2]

*Plaintiffs' Monell Evidence*

Plaintiffs estimate that they can put on their *Monell* evidence in no more than one day and a half, through the testimony of four witnesses, three of whom Plaintiffs will call regardless to testify to prove their underlying case, even if the *Monell* claim is bifurcated.[3] In terms of additional exhibits, Plaintiffs have worked diligently to streamline their *Monell* evidence. For example, Plaintiffs intend to have their experts, Dr. Bridges and Mr. Longo, testify to a summary exhibit that summarizes over 1200 CR Files, o prove the failure to investigate and discipline theory of liability.

Plaintiffs set forth a summary of their anticipated *Monell* evidence so the Court can accurately assess the merits. Plaintiffs anticipate calling the following witnesses: Mr. Longo (exclusively *Monell* testimony – three to four hour total examination, depending on if City stipulates to notice); Dr. Bridges (short examination and can be withdrawn in lieu of a stipulation); Ms. Tina Skahill (less than an hour); Captain Winstrom (less than hour); three to five short witnesses who would also be called, regardless, as Rule 404(b) witnesses related to Defendant Boudreau (two hours total). Exhibits for the *Monell* claim include: (1) a summary exhibit summarizing information obtained from 1230 CR Files Mr. Longo and Dr. Bridges

---

[2] Plaintiffs' figures include the pages of the briefings, responses and replies for the following docket entries on the Hood docket, 71, 74, 195, 201, 203, 212, 380, 381, 383, 384, 389 & 397, and 54, 55 & 61 on the *Washington* docket.

[3] Plaintiffs intend to call their police practices expert, Mr. Timothy Longo, their statistician, Dr. William Bridges, and two corporate representatives of the City of Chicago on the City's policies, practices and training pertaining to the City's investigation and discipline of officers accused of misconduct (Ms. Tina Skahill) and its policy, practices and training pertaining to interrogations, Captain Eric Winstrom. Plaintiffs will call Longo, Skahill and Winstrom to testify on the underlying claims *even if the Monell claim is bifurcated.* And, Plaintiffs are willing to stipulate with Defendants as to Dr. Bridges testimony, and if not, intend to put on a short examination of Dr. Bridges given the nature of his testimony is in the field of statistics and in counsels' experience, most jurors do not want listen to lengthy exams on this topic.

analyzed; (2) the Goldston Report; (3) portions of the Special Prosecutor's Report; (4) approximately CR Files related to the Defendants' disciplinary histories and (5) and a handful of "street files".

## Legal Standards

This Court has discretion to decide particular claims or issues in separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." FED. R. CIV. P. 42(b); *Krocka v. Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). The Court must "be satisfied that the decision to bifurcate does not unfairly prejudice the *non-moving party*." *Houseman v. U.S. Aviation*, 171 F.3d 1117, 1121 (7th Cir. 1999) (emphasis added). Bifurcation is the exception, not the rule, and separate trials should not be ordered "unless such a disposition is clearly necessary." *Real v. Bunn-O-Matic*, 195 F.R.D. 618, 619 (N.D. Ill. 2000); *see also* FED. R. CIV. P. 42(b), advisory cmts. In considering bifurcation, the court "should remain mindful of the traditional role of the factfinder; *i.e.* to make an ultimate determination on the basis of a case presented in its entirety." *Real*, 195 F.R.D. at 620. Since the Seventh Circuit decided *Thomas v. Cook County*, 604 F.3d 293, 305 (7th Cir. 2009), "the weight of authority holds that bifurcation is now heavily disfavored," *Awalt v. Marketti*, 2014 WL 1161500, at *10 n.2 (N.D. Ill. Apr. 9, 2012). Importantly, the district court may not order bifurcation if doing so would "prejudice the non-moving party." *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007).

## Argument

### A. Bifurcation Will Not Result in Unfair Prejudice to Defendants, and Any Potential Unfair Prejudice Can be Addressed Through Limiting Instructions

Defendants' raise two arguments regarding prejudice. First, Defendants claim that the jury will find the Individual Defendants "guilty by association" if the jury hears evidence regarding Commander Burge in Plaintiffs' *Monell* case. Dkt. 578 at 5. Second, they claim that

5

they will be prejudiced by the mention of their own disciplinary histories in which they were accused of committing similar misconduct, focusing on certain evidence discussed in Mr. Longo's report. *Id.* at 7-9. Neither argument is persuasive.

### 1. A Stipulation or Limiting Instructions Can Address the Issue of Prejudice Pertaining to Commander Jon Burge

The City's primary argument in support of its motion is that mentioning Jon Burge and his associates' legacy of physically torturing suspects into false confessions will result in the jury not considering whether the Individual Defendants violated Plaintiffs' rights and simply reach a verdict by virtue of their "guilty association" with Commander Burge. Dkt. 578 at 3-7.

Plaintiffs have been clear that they do not need to mention Commander Burge by name in order to put on their *Monell* evidence. Indeed, Mr. Longo can testify to the key evidence regarding the City's practice of coercing false confessions by discussing the City's own reports by describing the findings of the Goldston Report and the Special Prosecutor's Report in his testimony. *See* Exhibits 4 & 5. Plaintiffs do not have to elicit Jon Burge's name to explain to the jury that the City's investigators found a former police commander and associates engaged in "systemic torture" of suspects.

In fact, much of this issue can be mitigated by stipulating to the City's notice. This should be compelling to the City as it has no basis to claim that it did not have notice as is evident in its summary judgment pleading. *See, e.g.*, Dkt. 534 at 15-16 (Pls. SJ Mem.); Dkt. 522 (Pls. Res. Def. SOF) at ¶¶19-20. As explained in response to the City's motion for summary judgment, the City is not even contesting this issue. *Id.*

In addition, if the City is willing to stipulate to findings its own investigators made (on its behalf), then the Defendants' concerns about being prejudiced by Burge being mentioned are eliminated completely. His name will not come up in the case at all—*Monell* or otherwise. But the City cannot have it both ways: If the City is refusing to enter into such a stipulation, then it can hardly complain about the fallout of its tactical decision. That is particularly so given the

6

narrow scope in which Burge's name could arise in this case. Indeed, there is no reason why limiting instructions cannot suffice to address the Defendants' concern. *See, e.g.*, *U.S. v. Gomez*, 763 F.3d 845, 860-61 (7th Cir. Aug. 8, 2014) (*en banc*) (limiting instructions sufficient to manage prejudice caused by other-acts evidence, and commenting that "[l]ay people are capable of understanding the foundational principle in our system of justice that we try cases, rather than persons."); FED R. EVID. 105. *See also Marshbanks v. City of Calumet City*, No. 13 C 2978, 2015 WL 1234930, at *5 (N.D. Ill. Mar. 16, 2015); *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 1161500, at *13 (N.D. Ill. Apr. 9, 2012).

Defendants question whether limiting instructions will suffice, dkt. 578 at 8, but limiting instructions are taken very seriously in this Circuit as a tool for reducing or eliminating prejudice, and it has long been the law that juries are presumed to follow them. *See McLaughlin v. State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861, 870-71 (7th Cir. 1994) (no need to bifurcate to avoid prejudice where it is presumed jury could follow limiting instruction on how to consider the evidence); *United States v. James*, 487 F.3d 518, 524 (7th Cir. 2007) (presumption that juries follow instructions is rebuttable but very strong); *Terrell v. Childers*, 1996 WL 385310, at *14 (N.D. Ill. July 3, 1996) (rejecting argument that prejudicial evidence against one defendant would "spill over" onto others because court "will not try the case with the notion that jurors will not faithfully undertake their obligations"); *Nat'l Union Fire Ins. Co. v. Dowd & Dowd*, 191 F.R.D. 566, 567 (N.D. Ill. 1999) ("[A] properly instructed jury will be able to follow and absorb the testimony of a carefully-organized—albeit longer—trial of the entire matter"); *United States v. Jones*, 248 F.3d 671, 676 (7th Cir. 2001) ("We assume that juries follow a court's instructions, which means in this instance that we assume the jury used the evidence only for intent and knowledge and not to infer a propensity for committing illegal acts.") (internal citation omitted).

The court can fashion limiting instructions to ensure that the jury considers the proper evidence for the proper purpose.

### 2. Individual Defendants' Disciplinary Histories Does Not Unfairly Prejudice This Trial. Moreover, This Evidence is Admissible Pursuant to Rule 404(b) Regardless if the *Monell* Claim is Tried

Individual Defendants argue that they will also be prejudiced by evidence of their own prior bad acts. Dkt. 578 at 7-8. Specifically, the Defendants contend they will be prejudiced evidence of their prior disciplinary files that pertain to related misconduct that is summarized in Table D of Mr. Longo's report, as well as Table E listing the Individual Defendants' civil litigation. Exhibit 6 (Longo Report) at 90-97 & 103-06. This argument also fails.

First, Plaintiffs will seek to admit this evidence for purposes of demonstrating the Individual Defendants, particularly focused on Defendant Boudreau's modus operandi, lack of mistake, notice and motive consistent with Rule 404(b). This evidence is also relevant to prove of the City's continued widespread pattern and practice of coercing false confessions that continued unmitigated by changes to how the City trained, supervised or disciplined its officers who were accused of this type of misconduct. In other words, this particular evidence and the Defendants' claimed prejudice from it, is not uniquely a *Monell* issue. Therefore, evidence of the Individual Officer's prior similar misconduct should not be factored in favor of bifurcation. This evidence will necessarily be part of the anticipated motions *in limine* regardless of the status of the *Monell* claim.

Second, this evidence is not *unfairly* prejudiced. This is not a parade of Jon Burge's prior victims or even unrelated officers. This is the Individual Defendants prior alleged (and occasionally sustained) misconduct.[4]

---

[4] Defendants also argue in a short paragraph at the end of Section I of their motion, that the City will suffer prejudice by having their case tried with the Individual Defendants because the jury will likely "misunderstand" *Monell* liability and treat it as "nothing more than vicarious liability." Dkt. 578 at 9. This argument should be rejected. Juries are assumed to follow the court's instructions. *United States v. Jones*, 248 F.3d 671, 676 (7th Cir. 2001) ("We assume that juries follow a court's instructions, which means in this instance that we assume the jury used the evidence only for intent and knowledge and not to infer a propensity for committing illegal acts.") (internal citation omitted).

### B. Judicial Economy Will Not Be Served by Bifurcating Plaintiffs' *Monell* Claim for Trial

Defendants' judicial economy argument is premised on an incorrect assumption that bifurcating will result in no *Monell* trial. This argument improperly presumes that a finding of *Monell* liability in this case depends on a finding of liability on the part of a particular Individual Defendant. "The actual rule," the Seventh Circuit said in *Thomas v. Cook Cty. Sheriff's Dep't*, is that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." 604 F.3d 293, 305 (7th Cir. 2010); *see also Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("In some civil-rights cases, . . . a verdict in favor of individual defendants would not necessarily be inconsistent with a plaintiff's verdict on a factually distinct *Monell* claim."). Judges in this District have consistently analyzed the propriety of bifurcation bearing in mind that a municipal policy might cause a constitutional deprivation even if a jury finds that individual officers are not liable. *See, e.g.*, *Bonds v. City of Chicago*, 2018 WL 1316720, at *4-5 (N.D. Ill. Mar. 14, 2018); *Pickett v. Dart*, 2014 WL919673 (N.D. Ill. Mar. 10, 2014); *Wells v. Coker*, 2014 WL 716518 (C.D. Ill. Feb. 25, 2014); *Martinez v. Cook County*, 2011 WL 4686438, at *1 (N.D. Ill. Oct. 4, 2011); *Cage v. City of Chicago*, 2010 WL 3613981, at *1 (N.D. Ill. Sept. 8, 2010); *Evans v. City of Chicago*, 2010 WL 3075651 (N.D. Ill. Aug. 5, 2010). Cases like this one, in which a policy might be found to have caused a constitutional deprivation without a finding of misconduct by a particular officer, are different in kind from cases where municipal liability is premised on a particular officer's use of force, such as *City of Los Angeles v. Heller*, 475 U.S. 706 (1986).

What this means is that in the event the Defendants win the trial, a second trial on the *Monell* theory would become necessary because Plaintiffs can recover against the City even if no

individual Defendant is found liable. That scenario destroys any semblance of judicial economy: there would be two openings, two closings, most of the witnesses would testify at both trials, etc.

Compounding the problem, much of the same evidence would have to be introduced at both trials. For example, evidence of the street file practice is highly relevant to the claims against the Individual Defendants and would have to be proved at that Individual Defendants trial anyway, even were the claims were bifurcated. Moreover, bifurcating creates the risk of unfairness to Plaintiff. At prior wrongful conviction trials, the Individual Defendants sought to avoid responsibility by pointing at the City's "empty chair," contending that when they put the evidence in the street files, they were discharging their constitutional violations, and could not be blamed if the City had a bad policy for turning over the street files to criminal defendants in response to subpoenas. Having two trials, instead of one, thus permits the defense to blame the City at the first trial, and then the Individual Defendants at the second – possibly winning both times. That would be a ridiculously inequitable result. For that and other reasons, in three relatively recent wrongful conviction cases involving a *Monell* street file theory of liability, the courts denied the City's motion to bifurcate the *Monell* claim from trial. *See Rivera*, *Kluppleberg*, and *Fields*. Two of those cases were eventually tried to juries demonstrating that trials of *Monell* claims can be effectively accomplished without unreasonably prolonging the trial.

### C. Plaintiffs' *Monell* Claim Serves Important Social Goals and They Will Be Prejudiced If Not Able to Put Forth This Evidence at Trial

The heart of Plaintiffs' *Monell* claim pertains to important social issues including the City's use of unconstitutional measures to coerce false confessions from suspects and witnesses, including use of physical force, fabricating false evidence, its longstanding practice of maintaining clandestine files commonly referred to as "street files" that systematically

10

suppressed exculpatory information from criminal defendants, and its failure to train, supervise, investigate and discipline its officers.

How the police treat criminal suspects and members of the community is of critical importance to this City and our country, perhaps now more than ever. But even before the current focus on this issue, courts have routinely found that allegations of police misconduct are part of the health and concern of the public and should be exposed. *See, e.g.*, *Wiggins v. Burge*, 173 F.R.D. 226, 230 (N.D. Ill. 1997) ("this Court concludes that the allegations of police misconduct in the disputed documents before the Court must receive public exposure in order to ensure that the significant public interest is served"). *See Giles v. City of Chicago*, 2013 WL 512683, at *3 n.l (N.D. Ill. Dec. 6, 2013) (rejecting the City's proposed certification as an impermissible "attempt[] to circumvent the public policy goals of *Monell* claims by insulating the City from litigating and accepting responsibility if their practices and polices result in constitutional injuries"). *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (explaining that such actions "seek[] to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms").

It bears reminding that despite the Defendants' proclaimed prejudice in their motion, the legal standard applicable here is whether prejudice will inure to Plaintiffs as "the non-moving part[ies]." *Chlopek*, 499 F.3d at 700; *Houseman v. U.S. Aviation*, 171 F.3d at 1121. Plaintiffs will most certainly be prejudiced if they are unable to put on evidence they have developed that is sufficient to support a jury finding the City liable. Not only does this vindicate Plaintiffs' violation of their constitutional rights but also put this important issue into the public light and allow a cross-section of our society to consider this evidence.

In addition, Plaintiffs will be prejudiced if they have to expend additional resources to conduct two separate trials when much of the evidence and the witnesses for Plaintiffs' *Monell* claim overlaps with evidence relevant to his underlying claims. This evidence includes evidence of the City's official policies, practices and training that Plaintiff will admit through two of the City's corporate witnesses. *Coleman v. City of Peoria*, No. 1:15–cv–01100–SLD–TSH, 2016 WL 5497363, at *6 (C.D. Ill. Sept. 27, 2016) (denying motion to bifurcate in part because *Monell* evidence was "relevant to the actions of the defendant officers, who would, assuredly, claim to have acted in conformity with sanctioned department policies and practices"). For example, Plaintiff intends to call two corporate representatives to testify about the City's policies and training for his *Monell* claim. That same evidence is also relevant to show whether the individual Defendants acted in conformity to those policies and practices and for purposes of punitive damages, *Delgado v. Mak*, No. 06 C 3757, 2008 WL 4367458, at *8 (N.D. Ill. March 31, 2008), and training records relate to the reasonableness of the officers' actions. *See*, *e.g.*, *Brandon v. Vill. of Maywood*, 179 F. Supp. 2d 847, 853 (N.D. Ill. 2000). By way of another example, the small number of witnesses that Plaintiff will separately call pursuant to Rule 404(b) to demonstrate Defendant Boudreau's prior bad acts also provides pertinent *Monell* evidence to demonstrate that City's deliberate indifference in letting its officers continue to engage in the same tactics of coercing false confessions and witness statements without any fear of reprisal. Third, Mr. Longo is the primary witness Plaintiffs will call to testify as to all Plaintiffs' *Monell* theories, but Mr. Longo will also testify as to his opinions on the officer's failure to comport with national standards in the manner they conducted their homicide investigation. Exhibit 2 (*Rivera* Order) at 4 ("Speaking of experts, the court would be remiss if it did not note that several of the parties' experts express opinions relevant to *Monell* as well as what allegedly happened

during the Valentin investigation through Rivera's trial, so bifurcation will drive up the parties' expert costs and further inconvenience the witnesses.").

Defendants' motion should be denied based on the prejudice Plaintiffs will suffer.

### D. Stipulation Does not Account for Non-Economic Value in Trying *Monell* Claims

The stipulation proposal has been repeatedly rejected by prior judges in this same litigation, and the City should not get a different result just because of a reassignment. Leaving aside that there is no such thing as a one-sided stipulation (it takes two sides to stipulate), Plaintiff has a non-economic incentive to hold the City accountable for its infirm policies: preventing future constitutional violations, particularly wrongful convictions. Deterrence is a wholly legitimate reason for pursuing tort claims under section 1983. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 727 (1999) ("There is no doubt that the cause of action created by § 1983 is, and was always regarded as, a tort claim . . . it is designed to provide compensation for injuries arising from the violation of legal duties and thereby, of course, to deter future violations.") (internal citations omitted); *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."). Accordingly, whatever the result of a trial against the individual Defendants, a trial on Plaintiff's claims against the City will be necessary.

### E. Defendants' Authorities Do Not Compel A Different Result Here

None of Defendants' authorities compel a different result. Dkt. 578 at 5-6. For starters, these authorities all pertain to a motion to bifurcate at the *beginning* of the litigation not on the eve of trial and also involved *Monell* theories that do not satisfy the *Thompson* exception and necessarily require finding of an underlying constitutional violation such as excessive force,

13

which is not the case with Mr. Hood's and Mr. Washington's *Monell* theories of liability for their "street file" and coerced confession claims, as set forth above. *See Castillo v. City of Chicago*, No. 11 C 7359, 2012 WL 1658350, at *1 (N.D. Ill. May 11, 2012) (excessive force *Monell* theory of liability); *Carr v. City of N. Chicago*, 908 F. Supp. 2d 926, 928 (N.D. Ill. 2012) (same); *Ojeda-Beltran v. Lucio*, No. 07 C 6667, 2008 WL 2782815, at *1 (N.D. Ill. July 16, 2008) (same); *Lopez v. City of Chicago*, No. 01 C 1823, 2002 WL 335346, at *1 (N.D. Ill. Mar. 1, 2002) (failure to train, supervise, control, and discipline its police officers, which requires an underlying violation); *Cf Veal v. Kachiroubas*, No. 12 C 8342, 2014 WL 321708, at *4 (N.D. Ill. Jan. 29, 2014) (plaintiff pursued a *Monell* claim based on the municipalities "failure to institute policies that would have guided the officers engaged in the investigation of the murder," which is not a viable theory); *Bradford v. City of Chicago*, No. 16 CV 1663, 2019 WL 5208852, at *2 (N.D. Ill. Oct. 16, 2019) (policy failure to maintain video cameras in lock up alleged to be moving force in suicide in custody case). These cases are readily distinguished at the juncture they were decided (at the onset of discover) and the nature of the *Monell* theories (requiring a finding of individual liability).

In contrast, the relevant comparables here are the recent trials in *Rivera* and *Fields*, which evince that Plaintiffs' *Monell* claim can be efficiently tried in unison with all other claims in the jury trial set to commence on February 24, 2022.

## Conclusion

For the reasons set for forth above, Plaintiffs respectfully request the Court to deny the Defendants' renewed motion to bifurcate.

Respectfully submitted,

*/s/ Steven A. Greenburg*
Steven A. Greenburg
*One of the Attorneys for Wayne Washington*
53 W. Jackson, Suite 1260
Chicago, Illinois 60604
(312) 879-9500

*/s/ Heather Lewis Donnell*
Heather Lewis Donnell
*One of the Attorneys for Tyrone Hood*
Jon Loevy
Heather Lewis Donnell
Gayle Horn
LOEVY & LOEVY
311 N. Aberdeen St., Third Floor
Chicago, Illinois 60607
(312) 243-5900

**CERTIFICATE OF SERVICE**

      I, Heather Lewis Donnell, hereby certify that I served the foregoing Response to The City of Chicago's Renewed Motion to Bifurcate Discovery of Plaintiffs' Monell Claims on all counsel of record via the Court's CM / ECF filing system on September 28, 2022.

                                                             /s/ Heather Lewis Donnell
                                                             *One of Plaintiff's Attorneys*