IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WAYNE WASHINGTON, <br><br> Plaintiff, <br><br> v. <br><br> KENNETH BOUDREAU, *et al.*, <br><br> Defendants. | Case No. 16-cv-1893 |
| TYRONE HOOD <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, *et al.*, <br><br> Defendants. | Case No. 16-cv-1970 |

## DEFENDANTS' JOINT MOTION TO CONSOLIDATE FOR TRIAL

Defendants, through their respective undersigned attorneys and pursuant to Fed. R. Civ. P. 42 and Local Rule 40.4(b), move to consolidate these cases for trial, and in support thereof, state the following.

## INTRODUCTION

Plaintiffs Tyrone Hood and Wayne Washington have been inextricably linked since they were arrested on May 27-28, 1993, for the armed robbery and murder of Marshall Morgan, Jr. The criminal trials for Plaintiffs shared the same evidence, witnesses and arguments, and their nearly identical civil rights lawsuits, which were filed on consecutive days less than 24 hours apart, do as well. Indeed, the Complaints filed by Plaintiffs in these lawsuits are identical in nearly every respect. (*See Hood* Dkt. #1, *Wash.* Dkt. #1).

Since the largely indistinguishable lawsuits were filed six years ago, the consolidation question has come before this Court on two previous occasions. The first time was on motion to

reassign based on relatedness, filed by Defendants in 2016, which Plaintiff Hood opposed, though he did not dispute that three of the Local Rule 40.4 conditions for reassignment and consolidation had been met. (*Wash.* Dkt. 49, p. 2). Instead, he challenged the fourth condition – whether both cases are susceptible of disposition in a single proceeding – arguing that Washington's coerced confession claim and his guilty plea to the underlying crime, neither of which were part of Hood's case, would be prejudicial to the outcome of Hood's case. (*Wash.* Dkt. 49, p. 3). Accepting the premise of Hood's argument, the Court found the fourth condition presented "a more difficult question" and denied the motion, but jointly referred the cases to the same magistrate judge for supervision and coordination of joint discovery. (*Wash.* Dkt. 49).

The consolidation question came before the Court a second time about a year later, but this time on a motion filed by Plaintiff Hood after Judge Shadur, the judge assigned to Hood's case, retired and a new judge was assigned. (*Wash.* Dkt. 95; *Hood* Dkt. 119). This time, Hood sought to have his case reassigned with Washington's case before Judge Wood for everything except trial. (*Wash.* Dkt. 95). Plaintiffs expressly agreed that the first three conditions under Local Rule 40.4(b) had been met, but again argued that the cases should not be consolidated for trial because of the possible prejudicial effect of Washington's coerced confession claim and guilty plea on Hood's case. (*Id.*, p. 3-4). Judge Wood found the cases related and granted Hood's motion to reassign but declined to consolidate the cases. (*Wash.* Dkt. 98; *Hood* Dkt. 121). As to consolidation, Judge Wood ruled that "[t]he question of whether the cases should be consolidated for trial will be determined at a later date." (*Wash.* Dkt. 98). Both cases were subsequently reassigned to this Court. (*Hood* Dkt. 344; *Wash.* Dkt. 220).

With a trial date tentatively set for February 24, 2023, and the Court having ruled on the summary judgment motions, it is time to decide whether the cases should be tried together. And given

how Plaintiffs chose to jointly respond to Defendants' respective motions for summary judgment and related *Daubert* motions – effectively a single trial on paper – it seems they too see the value in one consolidated trial as opposed to two, duplicative and inefficient trials. Plaintiffs filed one joint response instead of separate responses, including a lengthy 246-paragraph joint statement of additional facts, precisely because of the significant overlap in factual and legal issues. The substantial overlap of facts and law involved in Plaintiffs' cases is undeniable and only confirms that the cases should be consolidated for a single trial.

Moreover, Plaintiffs previous concerns about a consolidated trial – that Washington's confession and guilty plea might have a prejudicial effect on Hood's case – are clearly nonexistent. Instead of shying away from these "issues" out of a fear that one case might be prejudiced by these differences, Plaintiffs fully embraced them at the summary judgment stage, each having declared an intention to rely on the other's alleged constitutional deprivations as part of his case in chief, thereby making it clear that whether there is one trial or two, the evidence to be introduced at trial will be the same. Hood argued that Washington's "fabricated confession deprived Hood of liberty" in part "because it precluded Hood from calling Washington as a witness to rebut the State's theory of the crime." (*Hood* Dkt. 531, p. 21, 22) (Hood arguing that "the fabrication of Washington's statement violated both Hood's Fourth and Fourteenth Amendment rights"). And both Plaintiffs argued that Washington only plead guilty after he learned of Hood's 75-year prison sentence, which is another way of saying Hood's allegedly wrongful conviction played a role in causing Washington's allegedly wrongful conviction. (*Hood* Dkt. 531, p. 17; *Hood* Dkt. 532, ¶¶239-241). Together, this means Hood and Washington will each be an integral part of the other's case in chief.

Having joined their theories to bolster each other's cases, Hood cannot now claim the cases should be tried separately out of a concern that those theories are too prejudicial to one or the other.[1] Similarly, having chosen to jointly respond to the most significant dispositive motion in this case – the trial on paper – Hood cannot now complain the actual trial should be any different, or that he and Washington should be allowed separate, duplicative trials, each lasting several weeks. There is simply no reason not to consolidate these cases for one single trial, especially if the Court bifurcates the *Monell* claims.

## LEGAL STANDARD

Federal Rule of Civil Procedure 1 makes clear that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Rule of Civil Procedure 42(a) allows courts to consolidate cases for trial if the actions involve a common question of law or fact, a procedure born from the need for judicial economy and efficiency that is followed by the Seventh Circuit. *See*, *Blair v. Equifax Check Servs.*, 181 F.3d 832, 839 (7th Cir. 1999) ("By far the best means of avoiding wasteful overlap when related suits are pending in the same court is to consolidate all before a single Judge."). Likewise, Rule 42(a) is "designed to give the court broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties." *Id*. at 6.

## ARGUMENT

There is no question that the first three conditions for a consolidated trial have been met. The cases have already been reassigned before this Court, and Hood has already conceded that the handling of both cases by this Court will result in a substantial saving of judicial time and effort,

---

[1] Washington, having stated on the record that he is taking no position on this motion, apparently does not share this concern.

4

and that the earlier case has not progressed to the point the later-filed case would delay the proceedings in the earlier case. (*Wash.* Dkt. 95, ¶¶12-14). The only question that remains is whether both cases are susceptible of disposition in a single proceeding. And the answer to that question is: yes.

Cases are "susceptible to disposition [in] a single proceeding" where there is "substantial overlap" between them, including where the "witnesses, counsel, and many of the facts are the same or substantially similar." *Urban 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, No. 18-cv-6109, 2019 U.S. Dist. LEXIS 101145, at *11 (N.D. Ill. June 18, 2019). This includes cases where one case alleges a separate incident of misconduct, or the other case contains additional counts. *See e.g.*, *Freeman v. Bogusiewicz*, No. 03 C 2908, 2004 U.S. Dist. LEXIS 15723, at *6 (N.D. Ill. Aug. 10, 2004) (reassigning two cases where two plaintiffs allege that the Chicago police used excessive force against them in a parking a lot).

Rule 42(a)(1) allows a court to consolidate actions before it if they "involve a common question of law or fact." A court "will exercise its discretion to join the cases for trial only to the extent it would promote efficiency and not unfairly prejudice any party." *Gonzalez v. City of Chi.*, No. 11 C 5681, 2014 U.S. Dist. LEXIS 183101, at *4 (N.D. Ill. Apr. 7, 2014). "The efficiency advantage to a joint trial is fairly obvious," which was explained, in part, as follows:

> The common witnesses-who predominate-would have [to] testify only once. Only one jury would be empaneled. The jury instructions and evidentiary rulings would be identical, and the trial conditions the same, so as to prevent any discrepancies in the trials. There will be no arguments regarding issue preclusion. These are but a few of the practical benefits of a joint trial.

*Id.*, at *5-6.

Although a court may order a separate trial to avoid prejudice under Rule 42(b), "[f]inger-pointing or mutually antagonistic litigation theories do not justify separate trials in [civil] cases . . ."

5

(*See* Order in *Serrano v. Guevara, et al.*, 17-CV-2869 and *Montanez v. Guevara, et al.*, 17-CV-4560, at p. 2, June 23, 2021, attached as Exhibit A) (consolidating two reversed conviction cases for trial).[2] "[T]o the extent the trial is intended to expose the truth, having a single jury sort out competing arguments that everyone admits center around the same core legal theories and facts is a feature not a bug." (*Id.*)

Here, the facts undeniably support consolidation for trial, starting with the nearly identical Complaints filed within one day of each other. (*Hood* Dkt. #1, *Wash.* Dkt. #1). Indeed, except for his coerced confession claim in Count V, Washington's Complaint is nearly identical in form and substance to Hood's. Both lawsuits name the same 11 Chicago police officers and the City of Chicago as Defendants. (*Hood* Dkt. #1; *Wash.* Dkt. #1). Each Complaint is over 135 paragraphs long, and 131 of those paragraphs are the same or similar in both complaints, with only some variation of words or phrases that have the same meaning.[3] It also appears that, in many instances, Hood simply cut and pasted parts of Washington's Complaint and slightly modified it. For example, in ¶2 of both Complaints, each Plaintiff makes the claim that the officers "engaged in a tapestry of egregious wrongdoing…". The use of the phrase "tapestry of egregious wrongdoing" is not coincidental; it signals a coordinated strategy by both Plaintiffs. The Complaints also use identical "headings" to designate sections of the same or substantially similar allegations, such as:

- Under the heading "The Crime," both Plaintiffs allege details about Morgan Jr.'s homicide, including the including location of body, loss of blood, number of gunshots and litter in the car. (*Wash.* Dkt. 1, ¶¶10-13; *Hood* Dkt. 1, ¶¶10-14).

- Under the heading "Morgan Sr.," both Plaintiffs allege details about Morgan Sr.'s possible role in his son's death, including that he was the last to see Morgan Jr. alive and facts related to the Michelle Soto homicide, in which Morgan Sr. was also a

---

[2] The *Serrano/Montanez* court, having already bifurcated the *Monell* claims, was considering whether the two plaintiffs' cases should be consolidated for trial.

[3] Hood's is 137 paragraphs long and Washington's is only six paragraphs longer, at 143.

    suspect, in support of the argument that Morgan Sr. killed his son. (*Wash*. Dkt. 1, ¶¶14-26; *Hood* Dkt. 1, ¶¶15-22).

- Under the heading "Police Investigation," both Plaintiffs allege details about how the police investigation unfolded, including notoriety of the crime and alleged pressure on detectives to solve it, the alleged abuse of Hood, Washington, West, Jody Rogers and Michael Crossley, Hood's arrest and Washington's arrest. (*Wash*. Dkt. 1, ¶¶27-49; *Hood* Dkt. 1, ¶¶23-38).

- Under the heading "The Police Investigation Falls Apart," both Plaintiffs allege that all of the witnesses recanted and accused the police of wrongdoing. (*Wash*. Dkt. 1, ¶¶50-54; *Hood* Dkt. 1, ¶¶39-43)

- Under the heading "The Defendant Officers Unlawfully Induce a Witness to Identify Plaintiff," both Plaintiffs allege police unlawfully obtained a false and fabricated statement from Emanual Bob. (*Wash*. Dkt. 1, ¶¶55-60; *Hood* Dkt. 1, ¶¶44-50).

- Under the heading "Plaintiff's Wrongful Conviction," Hood's Complaint describes his trial and Washington's Complaint describes his trial. (*Wash*. Dkt. 1, ¶¶61-65; *Hood* Dkt. 1, ¶¶51-55). Hood's Complaint also includes an additional statement he made before his sentencing.

- Under the heading "Plaintiff's Exoneration," both Plaintiffs allege that they "never" gave up on their innocence and that the State agreed to vacate the convictions and dismiss all charges. (*Wash*. Dkt. ¶66; *Hood* Dkt. 1, ¶56). Hood's Complaint also alleges that former Gov. Quinn granted him clemency, which Hood construes as evidence of his innocence. (*Hood* Dkt. 1, ¶57)

    Consistent with the similarities identified above, the parties also agreed that discovery should apply in both cases. Since 2016, the parties have participated in over 80 depositions together and produced well over one hundred-thousand documents. Washington's attorney has even acknowledged the near complete overlap in the evidence, saying in open court that, "with probably 95 percent of the discovery in this case we literally have cut and pasted from Mr. Hood's." (Tr. of Proceedings on Feb. 20, 2020, p. 12: 10, attached as Exhibit B). Similarly, Hood and Washington jointly made Rule 26(a)(1) and 26(a)(2) disclosures to be used in both cases, including joint experts they propose using in the areas of eyewitness identifications, insurance fraud, felony review at the Cook County State's Attorney's Office, false confessions and police procedures, as well as *Monell*

experts. The lone expert they do not share is a retained damages witness for Hood. (*See* Plaintiff Hood's Rule 26(a)(2) Disclosures, attached as Exhibit C; Plaintiff Washington's Rule 26(a)(2) Disclosures, attached as Exhibit D; and Plaintiffs' Supplemental Rule 26(a)(2) Disclosures, attached as Exhibit E).

The efficacy of resolving the cases in a single trial has already been confirmed by Plaintiffs' joint responsive pleadings to Defendants' extensive summary judgment motions. As set forth above, Plaintiffs relied on the same evidence and arguments in opposing summary judgment, including all of the evidence they identified in a 249-paragrpah Statement of Additional Facts. There is no reason to believe a trial would be any different, which means Plaintiffs would be relying on the same witnesses and evidence to prove nearly identical claims and legal theories. Even with a single trial for both Plaintiffs, the evidence on the claims against the Defendant Officers alone is significant: over 60 potential witnesses, including nine experts, and hundreds if not thousands of pages of records, crime scene photos, and physical evidence relating to the underlying homicide investigation and prosecution and Plaintiffs' damages. The parties have already informed the Court there will be significant motion *in limine* practice relating to the Officers' liability, including the admissibility of Plaintiffs' the Rule 404(b) witnesses. And this does not even include *Monell* evidence.

Indeed, consolidating these cases for trial and bifurcating the *Monell* claims makes the most sense. The *Monell* claims will add unnecessarily to the length of even a single trial and require the presentation of much different evidence and witnesses, without adding any material benefit, because neither Plaintiff will obtain any additional damages if he prevails on any *Monell* claim. (*See Hood* Dkt. 578, p. 9-11, *citing City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) and *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021)). And though Plaintiffs may think they can introduce *Monell* evidence with respect to the underlying facts, as they recently

argued in response to the motion to bifurcate (*see Hood* Dkt. 587, p. 4, n. 3), they will face stiff opposition in trying to do so. Wishful thinking alone does not make the evidence admissible or relevant. Moreover, Plaintiffs' reference to Timothy Longo as an example of the duality of the evidence is misleading. (*See Hood* Dkt. 587, p. 4, n. 3). Longo was disclosed to provide opinions on two very discrete subjects: (1) whether the underlying investigation conformed to generally accepted police practices and (2) *Monell*. (*See* Table of Contents to Longo's Report, attached as Exhibit F) (splitting his opinions into "Part One" at Section V for the underlying investigation and "Part Two" at Section VI for his widespread practices opinions).[4] The fact that Longo may be called to offer opinions on police procedures relating to the underlying homicide investigation does make his unrelated *Monell* opinions any more relevant or admissible to claims solely against the Officers. Worse, not only is the *Monell* evidence different from the evidence related to the Officers' liability, but it is also extremely prejudicial to the Officers, particularly allegations related to the notorious Jon Burge, which a jury instruction cannot cure. (*See Hood* Dkt., 578, p. 3-6). Burge, who was suspended in 1991 and fired in 1993, was not involved in the underlying homicide investigation and prosecution. *Monell* evidence relating to the alleged misconduct of non-party CPD officers would also overwhelmingly prejudice Defendant Officers. By contrast, any alleged prejudice to the Plaintiffs from a single trial is nonexistent, because the evidence relating to the underlying claims is the same for both Plaintiffs and will be presented to the jury whether there is one trial or two.

---

[4] Not only does Longo's report discretely segregate his *Monell* opinions from his opinions on the underlying investigation, but the relative lengths of each section confirms that the *Monell* opinions will significantly and unnecessarily add to an already long trial. Sections I-IV contains the introduction, background, methodology and factual bases for the opinions. Section V, which contains the opinions that the "Defendants' Investigation Departed from Generally Accepted Law Enforcement Practices," is only 17 pages. Section VI, which contains all the *Monell* opinions, is nearly *five times* as long at 84 pages.

Judges in this District have underscored the "fairly obvious" efficiency advantages of joint proceedings, which include the following:

- Consistent rulings on *Daubert* and summary judgment motions;
- Calling the common witnesses to testify only once;
- Impaneling one jury;
- Consistent jury instructions, evidentiary rulings, and trial conditions;
- No arguments regarding issue preclusion; and
- No need to schedule two or more multi-week civils trials that must compete for time with criminal trials.

*See, Gonzalez*, No. 11 C 5681, 2014 U.S. Dist. LEXIS 183101, at *5-6. (*See also Serrano*, Ex. A at 2).

If Plaintiffs' cases are tried separately, however, it could potentially result in separate rulings on (among other things) the remaining *Daubert* motions, motions *in limine*, and jury instructions, unnecessarily creating the possibility (if not probability) for conflicting or inconsistent judicial rulings or both. Separate and successive trials will inevitably create cumbersome, confusing, and complex motion practice involving issue preclusion, impeachment, and other issues that would not be present in a single trial. It will also require an enormous undertaking to coordinate two multi-week civil trials that will necessarily include duplicative testimony of all the litigants, calling almost all of the same fact and expert witnesses, and the presence of the same defense counsel in each trial, which in turn would be extraordinarily and unnecessarily expensive for the public entity Defendants. Indeed, as set forth in Defendants' reply in support of their motion to bifurcate, a single trial on the underlying claims alone for both Plaintiffs in a joint trial will take three to four weeks. (*Hood* Dkt. 592, p. 5-7). A second trial would mean reserving six to eight weeks of trial time to accomplish what could all be done in one single trial in half the time. For these reasons, cases like these should be disposed of in a single proceeding under LR 40.4(b)(4), where there is "substantial overlap" between the cases,

including where the "witnesses, counsel, and many of the facts are the same or substantially similar." *Urban 8 Fox Lake Corp.*, No. 18-cv-6109, 2019 U.S. Dist. LEXIS 101145, at *11.

Additionally, securing deposition testimony from witnesses about a crime that occurred over 25 years ago was challenging. Calling these witnesses at one trial will likely be just as challenging. Calling them to testify at *more* than one trial to present duplicative evidence is simply impractical and unnecessarily burdensome to the witnesses, the parties and the Court. Given the substantial overlap of facts, law, witnesses, parties, and counsel, these cases are more than merely "susceptible" of disposition in a single proceeding under LR 40.4(b)(4). They are textbook examples of why consolidation makes sense.

The fact that Hood obtained a certificate of innocence ("COI") and Washington did not also does not justify separate trials. As an initial matter, there is no guarantee the COI will be admitted into evidence. Defendants will be filing a motion *in limine* to bar the COI based on the same arguments raised at the summary judgment stage. Even if the COI is admitted into evidence, it should come as no surprise that Defendants will argue it should be disregarded because it was obtained under dubious circumstances that conflict with Illinois law. And setting aside both arguments, Hood's COI simply does not warrant separate trials because any perceived confusion between Plaintiffs' cases can be cured, or mitigated, by jury instructions and the fact that Plaintiffs are represented by different counsel, especially given, as set forth above, that Plaintiffs clearly intend to rely on each other's alleged constitutional deprivations to prove their claims. For example, in *Gonzalez*, No. 11 C 5681, 2014 U.S. Dist. LEXIS 183101, at *3, the court consolidated plaintiffs' Section 1983 lawsuits, alleging civil rights violations against the same defendants, for pretrial matters and trial. Defendants moved for consolidation, but plaintiffs objected, arguing that the criminal background of one plaintiff may taint the other by association. The Court was unpersuaded. *Id*. at *4. The

*Gonzalez* court reasoned that "jury instructions will make clear that the jury is required to consider each claim separately, and the jury will be further instructed on the limitations on use of evidence of prior crimes . . ." *Gonzalez*, No. 11 C 5681, 2014 U.S. Dist. LEXIS 183101, at \*4. The Court further noted that the plaintiffs were represented by separate counsel, "which will aid in preventing any jury confusion about the separate nature of the related lawsuits." *Id*.

Likewise, the court in *Serrano/Montanez* consolidated two "largely identical" reversed conviction cases, despite plaintiffs' objections. (Ex. A at 1). There, the defendants moved for consolidation, but the plaintiffs objected based on prejudice. Montanez argued that sitting near Serrano may adversely affect his case because the jury may hear evidence of Serrano's efforts to conceal or destroy evidence, and Serrano was worried that their respective litigation strategies might set the two plaintiffs against each other. (*Id*. at 2). However, the court explained that "[f]inger-pointing or mutually antagonistic litigation theories do not justify separate trials in criminal cases," nor do they justify it in civil cases. (Ex. A at 2). The court further reasoned that "[s]o long as evidence is properly admitted, and if necessary guided by limiting instructions, all parties will receive a fair trial."[5] (*Id*.). Any concerns about Hood's COI in this case pales in comparison to the prejudice the plaintiffs in *Gonzalez* and *Serrano* faced.

Lastly, Plaintiffs' cases should be tried together because a single jury is in the best position to sort out the facts and get to the truth. (*See Serrano*, Ex. A, p. 2*)* (court explaining that the purpose of trial is "to expose the truth, having a single jury sort out competing arguments that everyone admits

---

[5] This does not mean a jury instruction would also cure the much more damaging undue prejudice the *Monell* claim will cause. In addition to consolidating the cases for trial, the court in *Serrano/Montanez* also bifurcated a similar but less expansive *Monell* claim for largely similar reasons to those present in this case. Thus, not only was bifurcation appropriate in *Serrano/Montanez*, but the more likely possibility of finger-pointing between the plaintiffs in those cases was not enough to warrant separate trials. And as set forth above, in this case, Plaintiffs have already demonstrated an intent to coordinate their strategies and rely on each other's alleged constitutional deprivations, which should further mitigate any potential for finger-pointing.

12

center around the same core legal theories and facts . . ."). Hood and Washington each played significant and overlapping roles in the underlying events, and each is a necessary witness in the other's case. Indeed, each provides evidence establishing the other's involvement in the crime. A single jury is in the best position to sort out their roles, their competing denials and the competing arguments, which, as was the case in *Serrano*, center around the same core legal theories and facts.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant this motion and enter an order consolidating these cases for a single trial before one jury, and for any further and additional relief the Court deems just and appropriate.

| | |
|---|---|
| */s/ James G. Sotos* | */s/ Patrick R. Moran* |
| James G. Sotos | Patrick R. Moran |
| Special Assistant Corporation Counsel | Special Assistant Corporation Counsel |
| *One of the Attorneys for the City of Chicago* | *One of the Attorneys for Defendant Officers* |
| James G. Sotos | Patrick R. Moran |
| Joseph M. Polick | Eileen E. Rosen |
| David A. Brueggen | Austin G. Rahe |
| George J. Yamin, Jr | Andrew J. Grill |
| The Sotos Law Firm, P.C. | Rock, Fusco, & Connelly LLC |
| 141 W. Jackson Blvd, Suite 1240A | 333 Wacker Drive, Floor 19 |
| Chicago, Illinois 60604 | Chicago, Illinois 60607 |
| (630) 735-3300 | (312) 494-1000 |