IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WAYNE WASHINGTON,<br><br>    Plaintiff,<br><br>    v.<br><br>KENNETH BOUDREAU, JOHN HALLORAN, BERNARD RYAN, ROBERT LENIHAN, JOHN POLUSZNY, MICHAEL CLANCY, JOHN BALL, JAMES O'BRIEN, GERALD CARROLL, ELIZABETH SHINN, JOHN STOUT, UNKNOWN CHICAGO POLICE OFFICER(S), and CITY OF CHICAGO,<br><br>    Defendants. | No. 16-cv-01893<br><br>Judge John F. Kness |
| TYRONE HOOD,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF CHICAGO, KENNETH BOUDREAU, JOHN HALLORAN, BERNARD RYAN, ROBERT LENIHAN, JAMES O'BRIEN, GERALD CARROLL, and UNKNOWN EMPLOYEES OF THE CITY OF CHICAGO,<br><br>    Defendants. | No. 16-cv-01970<br><br>Judge John F. Kness |

## MEMORANDUM OPINION AND ORDER

This case arises out of the 1993 murder of Marshall Morgan Jr. and the ensuing prosecution of Plaintiffs Tyrone Hood and Wayne Washington for that murder. Hood and Washington spent 22 years and 12 years, respectively, incarcerated for Morgan Jr.'s murder, but both convictions were eventually vacated. Each of the individual Defendants in this case—Chicago Police Department officers Kenneth Boudreau, John Halloran, Bernard Ryan, Robert Lenihan, James O'Brien, and Gerald Carroll (the "Defendant Officers")—played a role in the investigation that led to Hood and Washington's convictions. After Hood and Washington were released from prison, they brought the present suits[1] against the Defendant Officers and the City of Chicago alleging that the investigation and municipal policies that led to their wrongful convictions were unconstitutionally flawed and justify a significant damages award.

Presently before the Court are Defendants' collective motions to bifurcate for trial Plaintiffs' claims against the Defendant Officers from their *Monell* claims against Defendant the City of Chicago (Dkt. 578; 16-cv-01893, Dkt. 362), as well as Defendants' collective motions to consolidate for trial the *Hood* and *Washington* cases (Dkt. 593; 16-cv-01893, Dkt. 375). For the reasons that follow:

---

[1] Plaintiff Washington filed suit on February 2, 2016. (*See Washington v. Boudreau*, No. 16-cv-01893, Dkt. 1.) Plaintiff Hood filed suit on February 5, 2016. (*See Hood v. City of Chicago*, No. 16-cv-01970, Dkt. 1.) Although not consolidated, the cases were deemed related on August 30, 2017. (*See Washington*, No. 16-cv-01893, Dkt. 98.) Unless otherwise noted, all docket citations in this opinion are to *Hood v. City of Chicago*, No. 16-cv-01970.

2

- Defendants' motions to bifurcate for trial Plaintiffs' claims against the Defendant Officers from their *Monell* claims against the City of Chicago (Dkt. 578; 16-cv-01893, Dkt. 362) are granted.
- Defendants' motions to consolidate for trial the *Hood* and *Washington* cases (Dkt. 593; 16-cv-01893, Dkt. 375) are granted.

## I. BACKGROUND

As the Court explained in its September 30, 2022 opinion (Dkt. 589) that resolved various substantive motions, Hood and Washington spent years in prison after being convicted of murdering Marshall Morgan Jr. Those convictions were vacated after the State of Illinois moved successfully to dismiss both cases; Hood was later granted a Certificate of Innocence ("COI"). (Dkt. 589 at 4–13.) Of relevance to this Opinion, Defendants first moved to bifurcate for trial Hood and Washington's claims against the Defendant Officers from their *Monell* claims against Defendant City of Chicago. (Dkt. 578; 16-cv-01893, Dkt. 362.) Both Hood and Washington oppose Defendants' motion to bifurcate. (Dkt. 587; 16-cv-01893, Dkt. 370.) Defendants then moved to consolidate for trial the *Hood* and *Washington* cases—which are separate actions even though the subject matter of both cases is closely related. (Dkt. 593; 16-cv-01893, Dkt. 375.) Hood filed a written opposition (Dkt. 595); Washington did not. On November 18, 2022, the Court held oral argument on both motions. (Dkt. 619.)

## II. LEGAL STANDARD

Rule 42 of the Federal Rules of Civil Procedure governs both consolidation of cases and bifurcation of claims. First, "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a)(2). Courts have "broad discretion" to consolidate these types of cases. *See Am.*

3

*Photocopy Equip. Co. v. Fair (Inc.)*, 35 F.R.D. 236, 237 (N.D. Ill. 1963) (citing *United States v. Knauer*, 149 F.2d 519, 520 (7th Cir. 1945), aff'd 328 U.S. 654 (1946)). But it is an abuse of discretion to consolidate cases which, although they concern the same type of claims, nevertheless have different allegations and time periods. *See King v. General Elec. Co.*, 960 F.2d 617, 626 (7th Cir. 1992).

Second, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). As the Seventh Circuit has held, if even "one of these criteria is met, the district court may order bifurcation as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment." *Chlopek v. Federal Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007); *see also Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999) (courts "must be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party."). Whether to bifurcate claims is "committed to the discretion of the district court" and "made on a case by case basis." *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000).

## III. DISCUSSION

### A. Motion to Consolidate Cases for Trial

#### 1. The Parties' Arguments

Defendants—jointly—contend that the trials in *Hood* and *Washington* should be consolidated, even if (as they separately contend) the claims against the City of Chicago should be tried separately after trial of the claims against the individual Defendants is completed. Defendants start by referring to "the nearly identical

Complaints [that were] filed within one day of each other." (Dkt. 593 at 6.) Defendants emphasize that both lawsuits named the same Chicago police officers and the City of Chicago, and many sections of the complaints are virtually identical. (*Id.*) Both cases saw much overlap in discovery, and Hood and Washington responded jointly to Defendants' motions for summary judgment. (*Id.* at 7–8; *see* Dkt. 535.) Defendants cite the "efficiency advantages of joint proceedings," including "consistent rulings on *Daubert* and summary judgment motions; calling the common witnesses to testify only once; impaneling one jury; consistent jury instructions, evidentiary rulings, and trial conditions; no arguments regarding issue preclusion; and no need to schedule two or more multi-week civil trials." (Dkt. 593 at 10 (citing *Gonzalez v. City of Chicago*, 2014 WL 8272288, at *1 (N.D. Ill. Apr. 7, 2014).)

Defendants also argue that "securing deposition testimony from witnesses about a crime that occurred over 25 years ago was challenging. Calling these witnesses at one trial will likely be just as challenging. Calling them to testify at *more* than one trial to present duplicative evidence is simply impractical" and burdensome. (Dkt. 593 at 11.) Defendants contend that separate trials are not required merely because Hood received a COI while Washington did not. (*Id.*) Along with noting that "there is no guarantee the COI will be admitted into evidence," *id.*, Defendants also quote *Gonzalez* to refute Hood's argument that the juxtaposition of Hood's COI against Washington's lack of one will cause harm to Hood. Defendants note that the judge in *Gonzalez* explained that jury instructions would "make clear that the jury is required to consider each claim separately, and the jury will be further instructed on

5

the limitations on use of evidence of prior crimes, to the extent any such evidence is elucidated at trial." *Gonzalez*, 2014 WL 8272288, at *1. Defendants argue finally that, because "Hood and Washington each played significant and overlapping roles in the underlying events, and each is a necessary witness in the other's case," a single jury would be in "the best position to sort out the facts and get to the truth." (Dkt. 593 at 12.)

Hood opposes consolidation, but Washington has taken no position on the issue. Hood contends that he "may be unfairly prejudiced if a single jury considers this evidence [regarding a COI] in evaluating Mr. Washington's Fifth Amendment claim alongside Mr. Hood's claims because Mr. Hood never gave an inculpatory statement despite Defendants' attempts to do so." (Dkt. 595 at 1.) Hood concedes that "there are undoubtedly efficiency-related reasons to try the claims together" (*id.* at 2), but he argues that Defendants "should not be permitted to orchestrate their perfect world by having it both ways" by also bifurcating Hood and Washington's Officer claims from their *Monell* claims. (*Id.* at 2–3.) Hood contends that Defendants, in seeking the bifurcation of claims, advocate for "duplication and inefficiency that create much more net trial length than would be the case if the claims were tried together." (*Id.* at 3.)

### 2. Analysis: Consolidation Is Warranted

A district court possesses "broad discretion" in deciding whether to consolidate cases for trial. *See Am. Photocopy Equip. Co.*, 35 F.R.D. at 237. But the exercise of that discretion must, of course, bear in mind both the factors for and against

6

consolidation. Considering those factors here, the Court first finds that *Hood* and *Washington* "involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2). Both cases are rooted in the murder of Marshall Morgan Jr. in May 1993. (Dkt. 558 ¶ 8.) Both Hood and Washington were taken to the same police detention facilities for questioning. (*Id.* ¶¶ 51–54, 68–70.) Both Hood and Washington claim allege they were subjected to the same types of police misconduct that led to their indictments. (*See* Dkt. 589 at 5–12.) Both Hood and Washington were sentenced in 1996 for the murder of Mr. Morgan,[2] but the State of Illinois successfully moved to vacate their convictions in February 2015. (*Id.* ¶ 244.) Both Hood and Washington sued the City of Chicago and the Officers in February 2016, filing their separate suits only three days apart. (Dkt. 1; No. 16-cv-01893, Dkt. 1.) Both Hood and Washington alleged that the City of Chicago is liable because "the actions of all the individual Defendant Officers were undertaken pursuant to policies and practices" and that those policies and practices "were ratified by policymakers for the City of Chicago with final policymaking authority." (Dkt. 1 ¶ 112; No. 16-cv-01893, Dkt. 1 ¶ 118.) *Hood* and *Washington* thus possess such similarities as to have common questions of both law and fact, rendering the actions eligible for consolidation under Rule 42. Fed. R. Civ. P. 42(a)(2).

Eligibility for consolidation, however, does not mean that consolidation is required. Balancing the relevant factors, the Court finds that consolidation of both

---

[2] Hood was found guilty in May 1996 and sentenced to 75 years in prison. (Dkt. 558 ¶ 238.) Washington's first trial resulted in a hung jury. (*Id.* ¶ 240.) But between Washington's first trial and the commencement of his second, Hood was sentenced. (*Id.* ¶ 241.) After seeing the 75-year sentence that Hood received, Washington "was scared and decided to plead to first degree murder" rather than risk a conviction in his second trial. (*Id.*) Washington was sentenced to 25 years in prison. (*Id.*)

cases for trial is warranted.³ Efficiency interests provide the first, and strongest, basis for consolidation and outweigh any possible prejudice to Hood. These efficiency benefits including "calling the common witnesses to testify only once; impaneling one jury; consistent jury instructions, evidentiary rulings, and trial conditions; [and] no arguments regarding issue preclusion[.]" *Gonzalez*, 2014 WL 8272288, at *1. Given the considerable overlap in facts between *Hood* and *Washington*, there are significant benefits to be gained by scheduling one trial⁴ to address Hood and Washington's claims against the Defendant Officers (who overlap both cases).

Hood's concerns over the potential prejudice of a joint trial with Washington are not trivial, but neither do they compel the Court to hold separate trials and lose the efficiency gains outlined above. It is true that Hood has received a COI and Washington has not (Dkt. 595 at 1), but given that their complaints are virtually identical and are brought against the same Defendants, jury instructions can effectively limit that potential prejudice. *See Gonzalez*, 2014 WL 8272288, at *1 ("jury instructions will make clear that the jury is required to consider each claim separately, and the jury will be further instructed on the limitations on use of

---

³ Consolidating *Hood* and *Washington* does not create the problem that the Seventh Circuit identified in *King v. General Elec. Co.* In that case, the Seventh Circuit concluded that the district court "abused its discretion" when ordering consolidation because of the "different allegations and time frames" between plaintiffs. 960 F.2d 617, 626 (7th Cir. 1992). But Hood and Washington's factual and legal backgrounds are much more similar than the circumstances in *King*. Unlike the *King* plaintiffs who, when suing for wrongful termination, differed in whether to allege a company-wide discriminatory policy or practice and in which time periods they alleged the wrongful conduct occurred, *id.*, Hood and Washington pleaded virtually identical complaints seeking relief from the same police conduct and wrongful convictions.

⁴ Bifurcation of claims (as opposed to consolidation of trials) is addressed in Section III.B.2 below.

evidence of prior crimes, to the extent any such evidence is elucidated at trial"); *see also Serrano v. Guevara*, No. 17 CV 2869, *Montanez v. Guevara*, No. 17 CV 4560 (N.D. Ill. June 23, 2021) (order granting consolidation in cases with similar facts to *Hood* and *Washington*). Accordingly, consolidating *Hood* and *Washington* for trial will not prejudice Hood to the point of outweighing the clear efficiency benefits that consolidation brings.

For these reasons, the Court grants Defendants' motions (Dkt. 593; 16-cv-01893, Dkt. 375) to consolidate *Hood* and *Washington* for trial.

### B. Motion to Bifurcate Claims

#### 1. The Parties' Arguments

Defendants—again acting jointly—ask the Court to bifurcate for trial Hood and Washington's claims against the Defendant Officers from their *Monell* claims against Defendant City of Chicago. (Dkt. 578; 16-cv-01893, Dkt. 362.) Defendants make three main arguments: (1) bifurcation prevents prejudice to all Defendants (Dkt. 578 at 3–9); (2) the City of Chicago's liability depends on the Officers' liability (*Id.* at 9–12); and (3) bifurcation promotes judicial efficiency (*Id.* at 12–15).

Defendants first contend that a joint trial that includes Hood and Washington's *Monell* claims would prejudice the Defendant Officers because it might include evidence of police conduct from the "Jon Burge era" that "is entirely unrelated to the conduct of Defendant Officers or the period of time relevant to the case against them." (*Id.* at 4.) Defendants contend that Hood and Washington, through their proposed expert, Timothy Longo, will "seek to use *Monell* to raise the specter of Burge so that Defendant Officers will be found liable by association." (*Id.* at 5); *see Dollard v.*

9

*Whisenand*, 946 F.3d 342, 359 (7th Cir. 2019) ("[T]he concept of guilt by association is repugnant to our notion of elemental justice and fair play."). Defendants also argue that bifurcating Hood and Washington's *Monell* claims is necessary to avoid prejudice against the City of Chicago, in that, if all claims are tried together, jurors might "misunderstand *Monell* liability and [impermissibly] treat it as nothing more than vicarious liability." (Dkt. 578 at 9.)

Defendants also argue that bifurcation is appropriate because the City of Chicago's liability depends on (*i.e.*, is derivative of) the liability of the Defendant Officers. (Dkt. 578 at 9–10.) Defendants assert that, under *City of Los Angeles v. Heller*, if Hood and Washington "are unsuccessful in their claims against the individual defendants, they will no longer have a cause of action against the city." 475 U.S. 796, 799 (1986); *see also First Midwest Bank v. City of Chicago*, 988 F.3d 978 (7th Cir. 2021) ("A *Monell* plaintiff must establish that he suffered a deprivation of a federal right *before* municipal fault, deliberate indifference, and causation come into play."). Applying that principle here, Defendants argue that Hood and Washington must prove the Defendant Officers violated their constitutional rights before proceeding against Defendant City of Chicago under *Monell*. (Dkt. 578 at 10.) Defendants also note that, if the Defendant Officers are found liable, "the City will consent to the entry of a judgment against it for any compensatory damages a jury awards against the Defendant Officers, plus reasonable attorney fees, without requiring" Hood and Washington to prove *Monell* liability. (*Id.* at 10–11.) As a result,

10

"the City's Limited Consent eliminates any concern that bifurcation will affect Plaintiff's recovery of compensatory damages." (*Id.* at 12.)

Defendants finally argue that bifurcating Hood and Washington's *Monell* claims "will also further judicial economy" because "the significant costs and burdens of trial and the factual and legal complexity of the *Monell* case against the City . . . militate against a single trial of all claims against all defendants." (*Id.*) Defendants are concerned that "a single trial of all claims against all Defendants will require the parties to simultaneously put on separate cases based on categorically different facts and legal theories," for which a jury will need to sort through the "massive amount of evidence." (*Id.* at 13.) Defendants assert that it would be more efficient to have the claims against the Defendant Officers tried first, and then, only if necessary, to try the *Monell* claims against the City of Chicago. (*Id.* at 13–15.)

Hood and Washington oppose bifurcation of the *Monell* claims. They first argue that *Heller* does not compel bifurcation; rather, an exception to the general rule that municipal liability is contingent upon officer liability—arising out of the Seventh Circuit's decision in *Thomas v. Cook County Sheriff's Department*—should govern. (Dkt. 587 at 1.) In *Thomas*, the Seventh Circuit held that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." 604 F.3d 293, 305 (7th Cir. 2010); *see also Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("a verdict in favor of individual defendants would not necessarily be inconsistent with a plaintiff's verdict on a factually distinct *Monell* claim"). Applying *Thomas*, Hood and Washington argue that

11

"it is entirely possible for a jury to reach consistent verdicts finding Individual Defendants are not liable for a *Brady* violation but nevertheless holds the City's file-keeping policies and practices responsible for the failure to disclose exculpatory and/or impeachment to Plaintiffs." (Dkt. 587 at 1.) According to Hood and Washington, *Heller* can be distinguished because that decision involved facts where "municipal liability [wa]s premised on a particular officer's use of force," where *Hood* and *Washington* involve facts that could show a municipal policy caused a constitutional deprivation independent of any need also to establish "misconduct by a particular officer." (*Id.* at 9.)

Hood and Washington further argue that "any potential risk" of prejudice against Defendants from "Jon Burge era" evidence can be "adequately addressed through limiting instructions and stipulations." (*Id.* at 2.) Hood and Washington contend that omitting Commander Burge's name would suffice to prevent unfair prejudice to Defendants. (*Id.* at 6–7 (quoting *McLaughlin v. State Farm Mut. Ins. Co.*, 30 F.3d 861, 870–71 (7th Cir. 1994) ("limiting instructions are taken very seriously in this Circuit as a tool for reducing or eliminating prejudice, and it has long been the law that juries are presumed to follow them.").) They assert that the Court "can fashion limiting instructions to ensure that the jury considers the proper evidence for the proper purpose." (Dkt. 587 at 7.) And to the extent Defendants Officers allege potential prejudice from "prior bad acts," Hood and Washington contend that the admissibility of such evidence—which they insist is not *unfairly* prejudicial in any

12

event—is "not uniquely a *Monell* issue" and "should not be factored in favor of bifurcation." (*Id.* at 8.)

Hood and Washington finally contend that bifurcation will prejudice them "as the non-moving part[ies]." *Chlopek*, 499 F.3d at 700; *Houseman*, 171 F.3d at 1121. Their *Monell* claims involve "important social issues" that they should be allowed to try before a jury. (*Id.* at 10–11.) Hood and Washington also argue that they will suffer prejudice "if they have to expend additional resources to conduct two separate trials" when much of the evidence and the witnesses for their *Monell* claim "overlaps with evidence relevant to his underlying claim." (*Id.* at 12.)

### 2. Analysis: Bifurcation Is Warranted

A district court has broad discretion to bifurcate claims for trial. *Real*, 195 F.R.D. at 620 (whether to bifurcate claims is "committed to the discretion of the district court" and "made on a case by case basis"). For several reasons, the Court finds that bifurcating Hood and Washington's *Monell* claims is appropriate.

As a threshold matter, the Court rejects Hood's argument that Defendants "should not be permitted to orchestrate their perfect world by having it both ways" by simultaneously seeking consolidation of both cases yet also seeking bifurcation of claims. (Dkt. 595 at 2–3.) To be sure, there is a loss of judicial efficiency inherent in bifurcating the *Monell* claims because it requires a separate trial; that fact at least facially cuts against allowing consolidation while bifurcating claims. Consolidation and bifurcation, however, present distinct concerns and require separate analyses. Put another way, that consolidation of cases may be warranted does not necessarily

13

mean, *ipso facto*, that the bifurcation of claims presented in those consolidated cases is necessarily precluded; Hood's goose-and-gander contention fails fully to appreciate that distinction. Accordingly, the Court does not consider itself bound to deny Defendants' bifurcation request merely to ensure superficial consistency with its ruling on consolidation.

On the merits, the risk of unfair prejudice to Defendants justifies bifurcation of Hood and Washington's *Monell* claims. Hood and Washington seek to admit decades of evidence concerning the established misconduct of Burge and his associates. It is possible, perhaps probable, that a jury would, by association, impermissibly tag the Defendant Officers with accountability for the notorious and lurid "Burge era" after having been presented with evidence to that effect. *See Dollard v. Whisenand*, 946 F.3d 342, 359 (7th Cir. 2019) ("[T]he concept of guilt by association is repugnant to our notion of elemental justice and fair play.").

Hood and Washington counter this concern by appealing to the availability of limiting instructions and stipulations. Although it is beyond debate that "limiting instructions are taken very seriously in this Circuit as a tool for reducing or eliminating prejudice, and it has long been the law that juries are presumed to follow them" (Dkt. 587 at 7 (citing *McLaughlin*, 30 F.3d at 870–71; *United States v. Gomez*, 763 F.3d 845, 860–61 (7th Cir. 2014) (en banc) ("Lay people are capable of understanding the foundational principle in our system of justice that 'we try cases, rather than persons.' ") (cleaned up))), there are limits to that rule. *See, e.g.*, *United States v. Chaparro*, 956 F.3d 462, 482 (7th Cir. 2020) (noting that although the usual

14

view is that "limiting instructions cure everything," the Seventh Circuit has "made clear" that "this presumption is rebuttable") (citing *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 834 (7th Cir. 2016)). This case presents one of those perhaps-rare occasions where, in the Court's view, limiting instructions and stipulations are insufficient to ameliorate the potential prejudice to Defendants.[5] More broadly, it bears emphasis that the present decision is not whether to *admit* Burge-era evidence: it is whether Hood and Washington's *Monell* claims should be heard by the same jury that hears the claims against the Defendant Officers. Hood and Washington will still get their day in court on the *Monell* claims.

Under Rule 42(b), the Court may order bifurcation of claims "[f]or convenience, to avoid prejudice, *or* to expedite and economize." Fed. R. Civ. P. 42(b) (emphasis added); *see also Chlopek v. Federal Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007) ("[i]f one of these criteria is met, the district court may order bifurcation as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment."). In view of the finding that bifurcation is warranted to avoid prejudice to Defendants, the Court is not obligated to address convenience or expedition. But addressing those considerations briefly, the Court finds that both Plaintiffs and Defendants have persuasive arguments concerning convenience and expedition. For example,

---

[5] Omitting Commander Burge's name to refer only to a "Chicago police commander" or some similar anonymous formulation, as Plaintiffs suggest, would still fail sufficiently to ameliorate the potential prejudice to the Defendant Officers. Given the notoriety of the Burge-related evidence, there is a significant risk the average juror in this District and Division would put two-and-two together and understand that the evidence and references pertained to Burge. Conversely, bifurcating Plaintiffs' *Monell* claims properly maintains the focus of the case on the Defendant Officers and thus is the safer course.

15

bifurcation allows for a more efficient against the Defendant Officers, but it also opens the possibility of a second trial against the City of Chicago. But even if convenience or expedition entirely favored Hood and Washington, the Court would still find that the avoidance of prejudice is the overriding concern and justifies bifurcation.

Bifurcation cannot be allowed if it results in unfair prejudice to Hood and Washington as the nonmoving parties. *Houseman*, 171 F.3d at 1121. There is, however, no unfair prejudice apparent to the Court. Hood and Washington contend that their apparent social goals in bringing the *Monell* claims should weigh heavily (Dkt. 587 at 10–11), but those interests must be balanced against the Defendant Officers' competing interests. Hood and Washington seek to thrust "this important issue into the public light and [to] allow a cross-section of our society to consider this evidence" (*id.* at 11), but nothing in today's decision will frustrate that goal. Hood and Washington will still have the opportunity for a forum to present their *Monell* evidence; that forum will simply consist of a second, later trial. And although bifurcation might require Hood and Washington to "expend additional resources to conduct two separate trials" when much of the evidence and the witnesses for Hood and Washington's *Monell* claim "overlaps with evidence relevant to his underlying claims" (*id.*), that cost is both justified for the reasons provided above and, to a lesser extent, incidental to Hood and Washington's choice to bring *Monell* claims in this action.

16

Finally, Plaintiffs and Defendants disagree whether the City of Chicago's liability depends on the Defendant Officers' liability. Although determining whether *Heller* or *Thomas* provides the applicable rule might have an effect on the bifurcation analysis, the effect is secondary to the considerations outlined earlier. It remains, moreover, that the rule of *Thomas* concerned the question of law whether a municipality could ever be held liable under *Monell* when individual defendants were found not liable for the underlying episode—not whether that liability should be established in a single trial or separately. *See Thomas*, 604 F.3d at 305 (a municipality "can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict.") (emphasis in original). In any event, the *Heller*-or-*Thomas* issue can be revisited after the Defendant Officers' potential liability is resolved at the first trial.

For these reasons, Defendants' motions to bifurcate for trial Hood and Washington's claims against the Defendant Officers from their *Monell* claims against Defendant City of Chicago (Dkt. 578; 16-cv-01893, Dkt. 362) are granted.

## IV.  CONCLUSION

Defendants' motions to consolidate for trial the *Hood* and *Washington* cases (Dkt. 593; 16-cv-01893, Dkt. 375) are granted. Defendants' motions to bifurcate for trial Plaintiffs' claims against the Defendant Officers from their *Monell* claims against the City of Chicago (Dkt. 578; 16-cv-01893, Dkt. 362) are granted.

SO ORDERED in Nos. 16-cv-01893 and 16-cv-01970.

Date: January 13, 2023

                                              JOHN F. KNESS
                                              United States District Judge